**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>CASHCALL, INC., WS FUNDING, LLC, DELBERT SERVICES CORP., and J. PAUL REDDAM,<br><br>Defendants. | ) | No. 1:13-cv-13167 (GAO) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA OR, IN THE ALTERNATIVE, TO DISMISS ALL CLAIMS AGAINST J. PAUL REDDAM FOR LACK OF PERSONAL JURISDICTION**

Dated: February 28, 2014

Donn A. Randall
Carol E. Kamm
BULKLEY, RICHARDSON AND GELINAS, LLP
125 High Street
Oliver Street Tower, 16th Floor
Boston, MA 02110

Neil M. Barofsky (admitted *pro hac vice*)
Katya Jestin (admitted *pro hac vice*)
Brian J. Fischer (admitted *pro hac vice*)
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022

*Attorneys for Defendants CashCall, Inc., WS Funding, LLC, Delbert Services Corp., and J. Paul Reddam*

**TABLE OF CONTENTS**


PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ..........................................................................................2

A. The Complaint's Allegations ...........................................................................2

B. The Action's Lack of Connection to Massachusetts.............................................3

ARGUMENT ..............................................................................................................6

I. THE ACTION SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA ..........................................................................6

A. Transfer is Warranted To Cure a Defect in Personal Jurisdiction ..........................6

1. Mr. Reddam Lacks the Requisite Jurisdictional Contacts with Massachusetts ..........................................................................8

2. Forcing Mr. Reddam To Litigate Here Would Be Unreasonable.............................................................................10

3. Transfer of the Action is the Most Efficient Outcome ..............................13

B. Transfer is Also Warranted on *Forum Non Conveniens* Grounds.........................15

1. The Chosen Forum Bears an Insignificant Relationship to the Case.......................................................................................16

2. Transfer to California Will Promote Party and Witness Convenience...........................................................................18

3. Transfer to California Will Promote Judicial Efficiency...........................19

II. IN THE ALTERNATIVE, THE CLAIMS AGAINST MR. REDDAM MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION........................20

CONCLUSION...........................................................................................................20

In response to the December 16, 2013 complaint ("Complaint") of plaintiff Consumer Financial Protection Bureau ("Bureau"), defendants CashCall, Inc. ("CashCall"), WS Funding, LLC ("WS Funding"), Delbert Services Corp. ("Delbert") (collectively, "Entity Defendants") and J. Paul Reddam ("Mr. Reddam") (together with Entity Defendants, "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(2)–(3) and 28 U.S.C. § 1404(a), respectfully request that this Court transfer the action to the Central District of California or, in the alternative, dismiss the claims against Mr. Reddam for lack of personal jurisdiction.

**PRELIMINARY STATEMENT**

The Bureau's Complaint alleges that the Entity Defendants made material misstatements and omissions in servicing consumer installment loans to residents of at least eight states ("Subject States"), in violation of the Consumer Financial Protection Act of 2010, *see* 12 U.S.C. §§ 5531(a), 5536(a).[1] In pursuing these claims here, the Bureau has made incompatible choices. One the one hand, it elected to file suit in Massachusetts, based evidently on a miniscule percentage of the loans at issue having been made to Massachusetts residents. On the other hand, the Bureau named the Entity Defendants' owner and principal, Mr. Reddam, as a defendant, despite his California domicile, and despite his lack of any relevant individual contacts whatsoever with Massachusetts during the period at issue.

The Bureau's choice of forum thus carries a cost. Because suit against Mr. Reddam in this distant forum would offend due process, a Massachusetts court may not exercise personal jurisdiction over him. Of course, the claims against Mr. Reddam may be dismissed on this basis. As will be explained, however, the more expeditious course would be to transfer this entire case

[1] The Subject States named in the Complaint are Arkansas, Arizona, Colorado, Indiana, Massachusetts, New Hampshire, North Carolina, and New York.

to the Central District of California, where venue and personal jurisdiction unquestionably exist over all Defendants and, thus, where the action "could have been brought." 28 U.S.C. § 1406(a).

Alternatively, the case should be transferred to the Central District of California for convenience and in the interest of justice. *See id.* § 1404(a). The chosen forum is practically alien to the litigation: no party resides or is located in Massachusetts; counsel for the parties are elsewhere; the pertinent business decisions were made elsewhere; relatively few of the subject debts are owed by Massachusetts residents; and those residents' testimony will be of marginal relevance (if any) to resolution of the issues. By contrast: all Defendants reside or are located in California; the debt collection conduct at issue occurred in California; key witnesses and documents are located in California; and even the Bureau's own attorneys are in California. These facts make the Bureau's choice of forum puzzling.

Thus, whether to remedy a defect in personal jurisdiction or to promote the convenience of parties and witnesses, this Court should transfer the action to the Central District of California. Otherwise, the Court must dismiss the claims against Mr. Reddam. Either way, the Bureau's choice of venue and defendants cannot stand.

## STATEMENT OF FACTS

### A. The Complaint's Allegations

This represents the first lawsuit by the Bureau in its publicized quest to regulate on-reservation lending conduct by Indian tribes and tribal members. The unsecured consumer installment loans here at issue were originated by, and purchased from, non-party Western Sky Financial, LLC ("Western Sky"), a tribal-member-owned company operating on the Cheyenne River Indian Reservation within the exterior boundaries of South Dakota. *See* Compl. ¶ 18. Post-origination, pursuant to agreement, the loans were purchased by WS Funding and serviced by CashCall and Delbert. *See id.* ¶ 19.

In its Complaint, the Bureau alleges that the Entity Defendants' servicing of these loans, which carry high interest rates commensurate with their high risk of default, violated *federal* consumer law insofar as assorted *state* laws, were they to apply, would render the loans void or uncollectible or otherwise relieve borrowers of their payment obligations in whole or part. *See* Compl. ¶¶ 24–25, 28–30, 53, 58, 62. By way of illustration, the Complaint identifies eight Subject States, including Massachusetts, and sets forth provisions governing consumer loan licensure and interest-rate requirements in each. *See, e.g., id.* ¶¶ 10–15.

The Bureau's inventive theory—asserting federal law violations solely by virtue of alleged state law violations—suffers from numerous fatal legal flaws. Indeed, the Bureau is barred from imposing *any* state's interest rate on a consumer loan and may not enforce *any* state's lending law. Denying the Bureau "authority to impose usury limit[s]," the Consumer Financial Protection Act states that none of its provisions "shall be construed as conferring authority on the Bureau to establish a usury limit applicable to an extension of credit offered or made by a covered person to a consumer, unless explicitly authorized by law." 12 U.S.C. § 5517(o). Just as this limitation bars the Bureau from crafting a nationwide interest-rate ceiling for consumer loans, it also prohibits the Bureau from circumventing that bar by transforming alleged state usury infractions into federal violations. This and other defects in the Bureau's approach will be exposed in a forthcoming motion seeking dismissal on the merits.

B. The Action's Lack of Connection to Massachusetts

The Bureau's Complaint fails to identify a meaningful connection between the action and Massachusetts. More to the point, it offers no support for why *this* lawsuit claiming nationwide consumer violations was filed in *this* jurisdiction as opposed to any other. In fact, of all Western Sky loans ever serviced by CashCall or Delbert, only 1% were made to Massachusetts residents,

and just 6% of loans to borrowers in the Subject States were made to Massachusetts residents. Affidavit of Daniel Baren ("Baren Aff.") ¶ 6.

Nor does the Complaint establish such a connection between the forum and Mr. Reddam. After acknowledging Mr. Reddam's California residence, and failing to allege his general presence in Massachusetts, the Bureau attempts to premise personal jurisdiction over Mr. Reddam on his role with, and the business activities of, the Entity Defendants. Specifically, the Complaint recites Mr. Reddam's status as "the CEO, president, director, and owner of CashCall; the president, manager, member, and owner of WS Funding; and the director and owner of Delbert." Compl. ¶ 7. It alleges Mr. Reddam's "managerial responsibility" for these entities and states, without elaboration or factual support, that Mr. Reddam "has materially participated in the conduct of their affairs." *Id.* It concludes that "[Mr.] Reddam knew or should have known about the practices of CashCall, WS Funding, and Delbert." *Id.* ¶ 44. This is the sum of the allegations pertaining to Mr. Reddam—jurisdictional or otherwise.

More critical for these purposes are several facts and much detail that the Complaint omits.[2] Mr. Reddam has over 20 years' experience in the consumer and mortgage lending industries. Affidavit of J. Paul Reddam ("Reddam Aff.") ¶ 4. In 2003, he founded CashCall as an unsecured consumer installment lender. Baren Aff. ¶ 4. Since then, the company has grown into a diversified consumer and mortgage lender, at one point employing almost 2,000 people.

---

[2] Of course, "[t]he consideration of materials outside the complaint is appropriate in ruling on a motion to dismiss for lack of personal jurisdiction." *Callahan v. Harvest Bd. Intern., Inc.*, 138 F. Supp. 2d 147, 152–53 (D. Mass. 2001); *see Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998) (stating that evidentiary "mix" on personal jurisdiction motion includes undisputed "facts put forward by the defendants," but does not include plaintiff's conclusory allegations).

*Id.* CashCall is incorporated and based in California, where the company's management, its corporate records, and the overwhelming majority of its employees are located. *Id.* at ¶¶ 4–5.

Delbert was founded in 2008. Affidavit of Cesar Guzman ("Guzman Aff.") ¶ 4. Although incorporated and principally based in Nevada, Delbert maintains a California office, where the company's president and approximately 75% of its employees are located. *Id.* During the relevant period, Delbert serviced a variety of consumer and mortgage loans for approximately 10 to 15 clients, including CashCall. *Id.* ¶ 5.

Mr. Reddam resides in California. Reddam Aff. ¶ 1. He does not now live, nor has he ever lived, in Massachusetts. *Id.* ¶ 5. Indeed, he has never even set foot in Massachusetts, including in its airports. *Id.* Mr. Reddam owns no real or personal property located in Massachusetts. *Id.* He possesses no ownership interest in any business enterprise that is based or incorporated in Massachusetts, nor does he sit on the board of directors of any Massachusetts-based company. *Id.*

Mr. Reddam has no personal business dealings in Massachusetts. *Id.* ¶ 6. In particular, he made no decision whether to fund any Western Sky loan to a resident of Massachusetts (nor is he even alleged to have made any such decision). *Id.* To his knowledge, he has never interacted with any Western Sky borrower (in Massachusetts or elsewhere) whose loan was serviced by CashCall or Delbert, nor has he personally collected or initiated, electronically or otherwise, any loan payment by such a borrower. *Id.* Mr. Reddam is not personally involved in CashCall's or Delbert's loan servicing operations, except to instruct CashCall and Delbert managers and supervisors to ensure that all applicable laws are obeyed. *Id.*

## ARGUMENT

The Bureau's selection of a venue with the faintest of connections to the lawsuit's parties and subject matter demands transfer to a district with a stronger association to the action. Indeed, the Bureau's choice fatally collides with its naming Mr. Reddam as a defendant. Accordingly, this Court should transfer the action to the Central District of California or, if it elects to retain the case, dismiss the claims against Mr. Reddam outright.

### I. THE ACTION SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA

This Court should transfer the entire action to the Central District of California for two independently sufficient reasons. One, the exercise of personal jurisdiction over Mr. Reddam by a Massachusetts court would offend due process; and because the claims against Mr. Reddam appear identical to those asserted against the Entity Defendants, the Court should transfer the whole action to the Central District of California—where it "could have been brought," 28 U.S.C. § 1406(a)—to obviate the Bureau's re-filing against Mr. Reddam alone in California and forcing Defendants to litigate the same case piecemeal on opposing shorelines. Two, given the relatively insignificant connection between forum, Defendants, and controversy and the overall inefficiency of litigating in Massachusetts—undermined further by an inescapable inference of Bureau forum shopping—the Court should transfer the action to the Central District of California "[f]or the convenience of parties and witnesses" and "in the interest of justice." *Id.* § 1404(a).

#### A. <u>Transfer is Warranted To Cure a Defect in Personal Jurisdiction</u>

With exceptions not relevant here, a federal district court has personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where

the district court is located." Fed. R. Civ. P. 4(k)(1)(A).[3] Accordingly, "notwithstanding that this is a federal question case," the "inquiry must focus on Massachusetts law concerning personal jurisdiction," including related federal constitutional constraints. *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1086 (1st Cir. 1992).

Specifically, where, as here, a non-resident's alleged contacts are not so pervasive as to support personal jurisdiction over any claim whatsoever, *see Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014); *Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 25–26 (1st Cir. 2007), the exercise of personal jurisdiction must comport with Massachusetts' long-arm statute, *see* Mass. Gen. Laws. ch. 223A, § 3(a), (d). It must also be "consistent with basic due process requirements." *Morris v. UNUM Life Ins. Co. of Am.*, 850 N.E.2d 597, 601 (Mass. App. Ct. 2006) (quotation marks omitted); *see Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008) (collapsing statutory and constitutional questions).

The First Circuit employs "a tripartite test for the ascertainment of specific jurisdiction": (1) the claim "must directly arise out of, or relate to, the defendant's forum-state activities"; (2) the "in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state"; and (3) "the exercise of jurisdiction must, in light of [certain] Gestalt factors, be reasonable." *163 Pleasant St. Corp.*, 960 F.2d at 1089. The Bureau bears "the ultimate burden" of establishing each of these requirements for every defendant. *Adams v. Adams*, 601 F.3d 1, 4 (1st Cir. 2010). The Complaint falls well short of making the required showing as to Mr. Reddam.

[3] The Entity Defendants do not challenge personal jurisdiction over them in this lawsuit.

1. Mr. Reddam Lacks the Requisite Jurisdictional Contacts with Massachusetts

Given his dearth of individual contacts with Massachusetts, the claim of personal jurisdiction over Mr. Reddam fails at the first step of analysis. The "proper lens" through which to view personal jurisdiction is "whether the *defendant's* actions connect him to the *forum*." *Walden v. Fiore*, No. 12-574, 571 U.S. __, slip op. at 11 (Feb. 25, 2014). Critically, Massachusetts adheres to the general rule "that jurisdiction over a corporate officer may not be based on jurisdiction over the corporation itself." *Interface Grp.-Mass., LLC v. Rosen*, 256 F. Supp. 2d 103, 105 (D. Mass. 2003). "Rather, the question of personal jurisdiction over [corporate employees and officers] is to be decided on the basis of the nature and extent of their individual contacts with Massachusetts." *UNUM Life Ins. Co.*, 850 N.E.2d at 601; *see id.* at 601–03 (affirming dismissal for lack of personal jurisdiction over non-resident corporate employees who allegedly "participated in a scheme" with corporation to injure plaintiff, but whose in-state contacts were "isolated"); *see also Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 906 (1st Cir. 1980) (noting non-imputation rule and requiring allegation that individuals "have transacted personal business within" forum or that they "have engaged in personal business activities using the corporate form as a shield").

The Bureau will undoubtedly respond by citing Mr. Reddam's "managerial responsibility" for the Entity Defendants, Compl. ¶ 7, an assertion no one contests. But this is far from enough. Predicating personal jurisdiction on "managerial responsibility"—common to the executives of nearly every company—forces a defendant who has "no contacts with the forum state" to defend suit there "merely because of the position which the defendant holds with the corporation." *Yankee Group, Inc. v. Yamashita*, 678 F. Supp. 20, 22 (D. Mass. 1988). It also contravenes the maxim that "[e]ach defendant's contacts with the forum State must be assessed

individually." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (holding that personal jurisdiction over magazine's founder, owner, and editor-in-chief did "not automatically follow from jurisdiction over the corporation which employs him"); *accord Calder v. Jones*, 465 U.S. 783, 789–90 (1984); *see also Gen. Signal Corp. v. Donallco Inc.*, 649 F.2d 169, 170 (2d Cir. 1981) (holding personal jurisdiction lacking over "California resident [who was] President and sole stockholder of" entity that allegedly harmed plaintiff's business, despite existence of personal jurisdiction over entity).

Of greater relevance, Mr. Reddam did not visit Massachusetts in connection with the Entity Defendants' business, aimed no discrete personal conduct at Massachusetts, made none of the relevant funding decisions, communicated with no Western Sky borrower in Massachusetts, and was not personally involved at all with the Entity Defendants' interactions with those same borrowers. *See supra* at 4–5; *see also Walden*, slip op. at 11 (rejecting claim of personal jurisdiction over non-resident who "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" forum).[4] Indeed, because Mr. Reddam has undertaken no forum activities whatsoever, the claims against him by definition cannot arise out of, or relate to, those activities. *See Interface Grp.-Mass.*, 256 F. Supp. 2d at 107–08 (holding individual's role as Chairman and CEO of entity insufficient to support personal jurisdiction, absent nexus between individual's "specific Massachusetts contacts" and claimed injury).

---

[4] This stands in stark contrast to those cases upholding personal jurisdiction based on corporate principals' in-state activities. *See Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics Inc.*, 901 F. Supp. 2d 255, 264 (D. Mass. 2012) (company officer was "active participant" in soliciting, contacting, and directing activities of members of Massachusetts law firm that later sued for unpaid fees); *Kleinerman v. Morse*, 533 N.E.2d 221, 224–25 (Mass. App. Ct. 1989) (president of Massachusetts subsidiary, "principal actor" in wrongful discharge controversy, had engaged in "active entrepreneurial or managerial conduct in the State").

The Bureau may also attempt to establish jurisdiction through "disregard [of] the corporate form." *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 139 (1st Cir. 2006). This, too, would not succeed. It impermissibly "shift[s] the analytical focus" from Mr. Reddam's contacts with the forum to his relationship with third parties, *i.e.*, the Entity Defendants. *Walden*, slip op. at 11. In any event, in this Circuit, "litigants who insist that the corporate veil be brushed aside must first prove three things: lack of corporate independence, fraudulent intent, and manifest injustice." *163 Pleasant St. Corp.,* 960 F.2d at 1092–93 (setting forth "federal common law standard of corporate separateness" to govern claims of personal jurisdiction over parent company).

The Complaint does not even attempt to meet any of these criteria, nor could it. Honoring the corporate form would work no injustice. The Bureau is not an injured private party being asked to file multiple expensive lawsuits or to follow a solvent parent company to an inconvenient forum across the country or globe to achieve compensation. Rather, it is a government agency with no palpable link to Massachusetts seeking monetary and equitable relief against an individual defendant on behalf of a *de facto* class of eight states' residents. Whatever this claim's merits, the Bureau is free to pursue it against Mr. Reddam—and all other Defendants—in California. *See Harlow v. Children's Hosp.*, 432 F.3d 50, 69 (1st Cir. 2005) ("The question is not whether hospitals may be held responsible in lawsuits for their activities, but whether they may be haled into court out of state because they accept out-of-state patients.").

2. Forcing Mr. Reddam To Litigate Here Would Be Unreasonable

Even assuming the Entity Defendants' forum state contacts are attributable to Mr. Reddam (which they are not), the exercise of personal jurisdiction must be constitutionally reasonable, an inquiry controlled by the "gestalt" factors:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 209 (1st Cir. 1994) (holding libel suit in Massachusetts unreasonable as against California-based attorney).[5] The scale is sliding: "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* at 210; *accord Harlow*, 432 F.3d at 67. Here, the gestalt factors further confirm the absence of personal jurisdiction over Mr. Reddam.

*First*, "[t]he burden associated with forcing a California resident to appear in a Massachusetts court is onerous in terms of distance," a concern "entitled to substantial weight in calibrating the jurisdictional scales." *Ticketmaster*, 26 F.3d at 210–11 (noting courts' obligation to "guard against harassment" by lawsuits far from defendant's place of residence or business).

*Second*, insofar as any state may have an interest in remediating alleged consumer harm, "the forum has a milder than usual interest" in this case. *Id.* at 211. Loans to Massachusetts residents account for just 1% of Western Sky loans to borrowers nationwide and merely 6% of total loans made by Western Sky to borrowers in the eight Subject States. *See* Baren Aff. ¶ 6. If

---

[5] Although the Bureau pleads venue under the Consumer Financial Protection Act's venue provision, *see* 12 U.S.C. 5564(f) (allowing suit in federal or state court "in a district in which the defendant is located or resides or is doing business"), that statute does not authorize suit by the Bureau over any defendant anywhere in the country, *see* Mark Totten, *Credit Reform and the States: The Vital Role of Attorneys General after Dodd-Frank*, 99 Iowa L. Rev. 115, 146–47 (2013) (observing that although federal statute may authorize "nationwide service of process, Congress did not give federal courts this power under [§ 5564(f)]"). Nonetheless, because "the First Circuit has never addressed which factors to use in determining whether the exercise of jurisdiction in a nationwide service of process case comports with due process," this Court should apply the same gestalt criteria regardless of the Bureau's personal jurisdiction theory. *In re Lernout & Hauspie Sec. Litig.*, 337 F. Supp. 2d 298, 318 (D. Mass. 2004). Those criteria unanimously counsel against jurisdiction.

the Bureau amends its complaint to add more states, as it has told Defendants it may do, then the latter percentage will only decrease. To the extent the Bureau seeks injunctive and other equitable relief for alleged violation of Massachusetts' small loan laws, *see* Compl. ¶ 29 (citing Mass. Gen. Laws ch. 140, §§ 96, 110), the Massachusetts Supreme Court has squarely held such relief unavailable to State agencies, *see Commonwealth v. Stratton Fin. Co.*, 310 Mass. 469, 472, 474–75 (1941) (barring civil enforcement suit claiming, as here, that loans made in violation of §§ 96 and 110 "be declared void; and that the defendants be enjoined from collecting them"). The forum state's interest in resolving equitable claims based on alleged small loan violations is thus conspicuously small.[6]

*Third*, there is no indication that "trying the case in Massachusetts would be more convenient for plaintiff than trying it in California." *Ticketmaster*, 26 F.3d at 211. Apart from its being a federal agency with nationwide litigation authority, the Bureau displays no tangible connection to Massachusetts. In fact, the Bureau so far has litigated this case through its enforcement attorneys in California, New York, and Washington, D.C.—but not in Massachusetts. These realities render any Bureau claim to forum convenience nil. *See Prairie Eye Ctr.*, 530 F.3d at 30 (holding exercise of specific jurisdiction unreasonable where, as here, defendant's headquarters and witnesses were located elsewhere and plaintiff, despite having "retained a Massachusetts lawyer," had no "ongoing connection to Massachusetts").

---

[6] On April 4, 2013, the Massachusetts Division of Banks ("Division") issued an *ex parte* Cease Order directing CashCall and WS Funding to halt collections on Western Sky loans made to Massachusetts residents and to refund all payments received. The Cease Order is being challenged on appeal before the Massachusetts Superior Court. If the court ignores *Stratton* and affirms the Cease Order, then Massachusetts' interest will be fully (though wrongly) vindicated. Whether the order is affirmed or vacated, or the parties ultimately settle, Massachusetts will have no proverbial dog left in this fight. It is notable that the Division itself, in pursuing such relief, did not name Mr. Reddam as a defendant or otherwise attempt to claim that Massachusetts enjoyed personal jurisdiction over Mr. Reddam.

*Fourth*, the systemic interest in efficient resolution of the controversy has already been stymied by the Bureau's suing Mr. Reddam in Massachusetts. That risky choice invited a predictable skirmish regarding personal jurisdiction and venue, diverting the parties' and Court's resources. None of this would have occurred in California, where the Bureau has previously filed suit against California residents it has accused of nationwide misconduct, *see infra* at 17, and where it may yet pursue a comprehensive resolution of the claims asserted in the Complaint.

*Fifth*, the common interests of all sovereigns (if such exist) would be similarly vindicated by suit just about anywhere, insofar as the laws of many states are purportedly relevant to whether Defendants have engaged in federally actionable unfair, deceptive, or abusive conduct. *See* Compl. ¶¶ 24–25, 28–30, 53, 58, 62. Whatever court ultimately presides will have to sift through the lending laws of the multiple states named in the Complaint. Moreover, no federal forum has greater expertise than any other in construing federal statutes as a matter of first impression. Indeed, given the "sliding scale" by which reasonableness is assessed against forum state contacts, *e.g.*, *Ticketmaster*, 26 F.3d at 210, suit in California, the one state with certain authority over all Defendants, seems the *most* reasonable choice.

Accordingly, even if this Court were to attribute the Entity Defendants' conduct to Mr. Reddam (which it should not), the "fail-safe device" of due process balancing would nevertheless preclude suit against Mr. Reddam in Massachusetts. *Id.* at 212.

### 3. Transfer of the Action is the Most Efficient Outcome

Upon a ruling that it lacks personal jurisdiction over Mr. Reddam, the Court may (and here, respectfully, ought to) transfer the whole case to the Central District of California pursuant to 28 U.S.C. §§ 1406(a) and 1631. As a threshold matter, and as demonstrated above, this action could have been brought initially in that district, where all Defendants reside, are located, or are

doing business. *See Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960) (requiring that venue and jurisdiction be independently proper in transferee district); *supra* at 4–5.

Moreover, although § 1406(a) by its terms "applies in cases where venue [is] improper," the statute "has also been interpreted to permit transfer for lack of personal jurisdiction." *Pedzewick v. Foe* , 963 F. Supp. 48, 50 (D. Mass. 1997) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962)); *accord Cioffi v. Gilbert Enters.*, --- F. Supp. 2d ----, 2012 WL 6195772, at *7 (D. Mass. 2012); *W. Inv. Total Return Fund Ltd. v. Bremner*, 762 F. Supp. 2d 339, 341 (D. Mass. 2011). Similarly, although it has yet to decide the question, the First Circuit has stated that it is "inclined" to construe the term "jurisdiction" in § 1631—"Transfer to cure want of jurisdiction"—to include personal jurisdiction, permitting transfer for lack of personal jurisdiction under that statute as well. *Cimon v. Gaffney*, 401 F.3d 1, 7 n.21 (1st Cir. 2005); *see also Bremner*, 762 F. Supp. 2d at 341 (canvassing authority before agreeing that § 1631 permits transfers to cure lack of personal jurisdiction).

Relevant here, the First Circuit favors transfer over dismissal of an improperly laid action. *See, e.g.*, *Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41, 43 (1st Cir. 2006). In every case, however, a court must "consider the consequences of both transfer and dismissal in deciding which course of action to follow." *Britell v. United States*, 318 F.3d 70, 75–76 (1st Cir. 2003). Such examination here makes plain that "transfer, rather than dismissal, is the option of choice." *Id.* at 74. Dismissal of claims against Mr. Reddam—although welcome—invites a new proceeding against him in California, the type of "inordinately wasteful . . . double filing" and duplicative litigation that the transfer statutes are designed to prevent. *Id.* The parties should not be put to the worry and expense of litigating the exact same case on two coasts at once. Further, although some courts have interpreted §§ 1406(a) and 1631 to permit transfer of fewer than all

claims, a transfer to California of only the claims against Mr. Reddam would in effect be no different than if the claims were dismissed and then re-filed by the Bureau in California. Either scenario would result in inefficient, parallel adjudication of competing motions to dismiss and, if necessary, discovery disputes, summary judgment motions, and trials.[7]

Accordingly, a complete transfer is in the interests of justice. *See, e.g.*, *Stars for Art Prod. FZ, LLC v. Dandana, LLC*, 806 F. Supp. 2d 437, 449 (D. Mass. 2011) (transferring case to district that "would have personal jurisdiction over all Defendants and be an appropriate venue," where Massachusetts lacked personal jurisdiction over some defendants).

B. Transfer is Also Warranted on *Forum Non Conveniens* Grounds

Alternatively, this Court can exercise its broad discretion over case management to transfer the action to the Central District of California "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a); *see Karmaloop, Inc. v. ODW Logistics, Inc.*, 931 F. Supp. 2d 288, 290 (D. Mass. 2013) (reiterating § 1404(a)'s conferral of "broad discretion in making transfer decisions").

The public and private interests informing a *forum non conveniens* decision favor such a transfer. *See Atari v. UPS*, 211 F. Supp. 2d 360, 362 (D. Mass. 2002) (listing factors set forth in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Private considerations include the convenience of parties and witnesses, the relative ease of access to proof, the ability to secure testimony of non-party witnesses, and any hurdles to proceeding expeditiously and

[7] Further militating against severance, the transfer statutes reference an entire "case" (§ 1406) or "action" (§ 1631). *See, e.g.*, *Hill v. United States Air Force*, 795 F.2d 1067, 1070-71 (D.C. Cir. 1986) (observing that § 1631 "directs a court to transfer an 'action' over which it lacks jurisdiction, rather than an individual claim"); *Freund v. Fleetwood Enters., Inc.*, 745 F. Supp. 753, 755 n.5 (D. Me. 1990) (dismissing claim against one defendant for lack of personal jurisdiction, while expressing "grave doubts" that § 1406 allows transfer of "only part of a case brought against multiple defendants").

inexpensively. *See id.* Public considerations include avoidance of unnecessary problems in conflicts of laws, the local interest in having localized controversies decided by local courts and juries, and any administrative difficulties flowing from court congestion. *See id.*

1. The Chosen Forum Bears an Insignificant Relationship to the Case

As an initial matter, "where the plaintiff is not bringing suit on its 'home turf,' plaintiff's choice of forum carries little weight." *Transamerica Corp. v. Trans-Am. Leasing Corp.*, 670 F. Supp. 1089, 1093 (D. Mass. 1987). The Bureau, through its counsel, litigates this action from New York, California, and the District of Columbia. Among feasible locales, therefore, California "seems to be as convenient for plaintiff as Massachusetts"—if not far more. *Id.*; *see also SEC v. Kasirer*, 2005 WL 645246, at *3 (N.D. Ill. 2005) (observing that burden to agency of litigating from its California office was "far less than the burden imposed on in the individual defendants in litigating nearly two thousand miles from their home district").

A relatively meager connection to "the operative facts of the case" further limits a chosen forum's presumptive force. *Ondis v. Woonsocket*, 480 F. Supp. 2d 434, 437 (D. Mass. 2007) (quotation marks omitted). Whether or not that connection here is "substantial" within the meaning of § 1391(b), *see Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42–43 (1st Cir. 2001) (discussing substantiality requirement), it is too insubstantial to *require* suit in Massachusetts in the face of a sensible transfer request. As already noted, Massachusetts accounts for only 6% of Western Sky loans to borrowers in the Subject States (a figure set to decrease upon the Complaint's potential amendment) and 1% of Western Sky loans overall. *See* Baren Aff. ¶ 6.[8] Literally nothing more connects Massachusetts to the action. *Cf. Daniel v. Am.*

[8] Of the Subject States, more Western Sky loans were made to borrowers in each of Arizona, Colorado, Indiana, North Carolina, and New York than Massachusetts. *See* Baren Decl. ¶ 6. As with Massachusetts, however, due to the lack of personal jurisdiction over Mr. Reddam in each,

*Bd. of Emergency Med.*, 428 F.3d 408, 433–34 (2d Cir. 2005) (holding antitrust venue improper under § 1391(b)(2) where 6 of 176 (3.5%) of identified job applicants received rejection letters in district and alleged anti-competitive decisions were made elsewhere); *Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947, 955–56 (1st Cir. 1984) (holding Massachusetts venue improper under precursor to § 1391(b) for claim of infringing "sales throughout the country," of which "Massachusetts sales amounted to only six to fourteen percent," because "[v]irtually all of the decisions and actions" by defendants occurred elsewhere).

The unnatural venue choice compels a conclusion of Bureau forum shopping. The Bureau has routinely litigated wherever defendants are located, including California. *See* Compl. ¶¶ 5–6, *CFPB v. Morgan Drexen*, No. 13-cv-1267 (JLS) (C.D. Cal.); Compl. ¶¶ 7–12, *CFPB v. Gordon*, No. 12-cv-6147 (RSWL) (C.D. Cal.); Compl. ¶¶ 9–12, *CFPB v. Jalan*, No. 12-cv-2088 (AG) (C.D. Cal.); *see also* Compl. ¶¶ 5–6, *CFPB v. Am. Debt Settlement Solutions*, No. 13-cv-80548 (DMM) (S.D. Fla.); Compl. ¶ 16, *CFPB v. ITT Educ. Servs., Inc.*, No. 14-cv-292 (SEB) (S.D. Ind.); Compl. ¶¶ 5–6, *CFPB v. Meracord*, No. 13-cv-05871 (RBL) (W.D. Wash.). In this case, however, for reasons altogether unclear, the Bureau has selected a forum nowhere near and, indeed, thousands of miles away from Defendants' principal places of business.

Not only has the Bureau elected to bring what amount to multiple state law claims in a federal forum, but it has chosen an arbitrary group of sample states and an arbitrary state within that group in which to sue. In fact, no Western Sky loan collection has occurred at all in Massachusetts since April 2013. *See supra* note 7. But perhaps the choice was *not* arbitrary: there are more than 400 federally recognized Indian tribes located in the Ninth Circuit, as

---

none is a district in which the case might have been brought so as to allow a transfer there. *See Hoffman*, 363 U.S. at 343–44.

compared to just seven in the First Circuit, and this may be the first of many Bureau actions relating to on-reservation online lending. *See In re Great Plains Lending, LLC*, 2013-MISC-Great Plains Lending-0001 (CFPB Sept. 26, 2013) (rejecting petitions by tribally owned payday lending companies to quash Civil Investigative Demands). The venue provisions are not meant, however, to "permit[ ] test cases far from the site of the actual controversy." *Clegg v. U.S. Treasury Dep't*, 70 F.R.D. 486, 490 (D. Mass. 1976) (quotation marks omitted); *see also Symbol Techs., Inc. v. Quantum Assocs., Inc.*, 2002 WL 225934, at *2–*3 (D. Mass. 2002) (transferring case to California, dispute's "center of gravity" and where plaintiff had offices, given "strong indication" that Massachusetts filing constituted "forum shopping").[9] Such concerns might have rendered Massachusetts a "safe" forum, but they cannot make Massachusetts a convenient—much less a sensible—one.

2. Transfer to California Will Promote Party and Witness Convenience

Although § 1404(a) mentions "the convenience of parties," a dominant "purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84 (1979) (commenting that plaintiff's venue choice is not "unfettered"). Here, the Bureau has not merely chosen a forum that is alien to all parties, but one that is *on the opposite end of the country* from all Defendants. No countervailing benefit justifies this grave inconvenience.

In fact, California is a more convenient venue for nearly all witnesses. *See Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d 102, 116 (D. Mass. 2003) (labeling witness convenience "probably the most important factor" in § 1404(a) analysis). In this case,

[9] Of course, the very idea for a consumer financial protection bureau was born in Massachusetts as the signature proposal of then Professor and now Senator Elizabeth Warren, and her role in its formation was a very public part of her campaign for the Senate. The impact of that campaign may also have been a part of why the Bureau selected Massachusetts.

not just some, but *all* conceivable party witnesses currently live and work in California. *See* Baren Aff. ¶ 8; Guzman Aff. ¶ 7.

Further, although the Bureau may intend to call Massachusetts borrowers as witnesses, these witnesses will be no more vital (if necessary at all) than a witness from any other Subject State. Indeed, if this case survives a motion to dismiss, its outcome will hinge on application of legal principles to undisputed contractual language and to the "formulation and implementation" of defendants' loan servicing practices, and much less (if at all) on the testimony of any borrowers. *Johnson v. N.Y. Life Ins. Co.*, 2013 WL 1003432, at *2 (D. Mass. 2013) (according minimal weight to existence of Massachusetts witnesses in transfer analysis given focus on defendants' practices and policies elsewhere). In sum, whatever the burden of the Bureau's locating and calling borrower witnesses nearer to California, "it would be far more costly for Defendant[s] to proceed with this action in Massachusetts." *Malekniaz v. N.Y. Univ.*, 2006 WL 2521406, at *3 (D. Mass. 2006) (transferring case under § 1404(a) where nearly all prospective party witnesses were defendant's employees located in transferee district).

3. Transfer to California Will Promote Judicial Efficiency

Transfer "would bring about an earlier resolution of the matter than would [occur in] the overburdened Massachusetts court." *Ashmore v. Ne. Petroleum Div*., 925 F. Supp. 36, 39–40 (D. Me. 1996). Civil cases in this district average 31 months from filing to trial, as compared with two-thirds that long in the Central District of California. *See* U.S. Courts, Federal Court Management Statistics (Sept. 2013), http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-september-2013.aspx (visited Feb. 27, 2014). Moreover, a transfer would not unduly sacrifice local competence because "either district court will have to apply the law of another state to one or more of the claims asserted." *Princess House v. Lindsey*,

136 F.R.D. 16, 23 (D. Mass. 1991) (deeming "fact that Massachusetts law govern[ed] one claim of several" insufficiently "compelling" to deter transfer).

Finally, where, as here, allegations of personal jurisdiction over a defendant are "problematic," a transfer "avoid[s] having to ultimately decide an extremely close constitutional issue." *Blue Mako, Inc. v. Minidis*, 472 F. Supp. 2d 690, 702 (M.D.N.C. 2006) (basing transfer in part on lack of evidentiary support for imputing forum contacts of closely held corporation to principal); *see also Leroy*, 443 U.S. at 181 (bypassing unsettled personal jurisdiction question in favor of venue analysis); *Mathis v. Geo Grp., Inc.*, 535 F. Supp. 2d 83, 86 (D.D.C. 2008) (same).

## II. IN THE ALTERNATIVE, THE CLAIMS AGAINST MR. REDDAM MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

If the Court were to hold that it lacks personal jurisdiction over Mr. Reddam, but were disinclined to transfer the action on that (or any other) basis, then the claims against Mr. Reddam must be dismissed for the reasons advanced in Part I.A.1–2.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court transfer the action to the Central District of California or, in the alternative, dismiss the claims against Mr. Reddam for lack of personal jurisdiction.

Dated: February 28, 2014

Respectfully submitted,

*/s/ Donn A. Randall*
Donn A. Randall (BBO #631590)
Carol E. Kamm (BBO #559252)
BULKLEY, RICHARDSON AND GELINAS, LLP
125 High Street
Oliver Street Tower, 16th Floor
Boston, MA 02110
Phone: (617) 368-2520
Fax: (617) 368-2525
Email: drandall@bulkley.com

*/s/ Neil M. Barofsky*
Neil M. Barofsky (admitted *pro hac vice*)
Katya Jestin (admitted *pro hac vice*)
Brian J. Fischer (admitted *pro hac vice*)
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Phone: (212) 891-1600
Fax: (212) 909-0608
Email: nbarofsky@jenner.com

*Attorneys for Defendants CashCall, Inc., WS Funding, LLC, Delbert Services Corp., and J . Paul Reddam*