THOMAS J. NOLAN (State Bar No. 66992)
CAROLINE VAN NESS (State Bar No. 281675)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Thomas.Nolan@skadden.com
Caroline.VanNess@skadden.com

JOSEPH L. BARLOON (*Admitted Pro Hac Vice*)
AUSTIN K. BROWN (*Admitted Pro Hac Vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Joseph.Barloon@skadden.com
Austin.Brown@skadden.com

MATTHEW S. HELLMAN (*Admitted Pro Hac Vice*)
JENNER & BLOCK LLP
1099 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 639-6861
Facsimile: (202) 661-4983
MHellman@jenner.com

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>                    Plaintiff,<br><br>   v.<br><br>CASHCALL, INC., WS FUNDING, LLC, DELBERT SERVICES CORPORATION, and J. PAUL REDDAM,<br><br>                    Defendants. | CASE NO.: 2:15-cv-07522-JFW (RAOx)<br><br>(1) DEFENDANTS' NOTICE OF MOTION, MOTION FOR JUDGMENT ON THE PLEADINGS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; (2) REQUEST FOR JUDICIAL NOTICE (filed under separate cover); (3) DECLARATION OF THOMAS J. NOLAN (filed under separate cover); and (4) [PROPOSED] ORDER (lodged under separate cover).<br><br>Date: January 11, 2016<br>Time: 1:30 p.m.<br>Judge: Hon. John F. Walter<br>Ctrm.: 16<br>Pre-Trial Conf.: September 9, 2016<br>Trial: September 27, 2016 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 11, 2016 at 1:30 p.m., or as soon thereafter as the parties may be heard, in the Courtroom of the Honorable John F. Walter in Courtroom 16 of the United States District Court, Central District of California located at 312 North Spring Street, Los Angeles, California 90012, Defendants CashCall, Inc., WS Funding, LLC, Delbert Services Corporation, and J. Paul Reddam will, and hereby do, move this Court for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (the "Motion"). The Motion is made following conferences of counsel, pursuant to C.D. Cal. R. 7-3, which took place on November 9, 2015, and November 16, 2015.

The Motion seeks dismissal with prejudice of the First Amended Complaint filed by plaintiff Consumer Financial Protection Bureau ("Bureau") for failure to state a claim on which relief can be granted because the Bureau, through this action, attempts to exceed the authority granted it under the federal Consumer Financial Protection Act of 2010 ("CFPA") and unlawfully prosecute violations of state law. In addition, the Motion seeks dismissal because the Bureau seeks to establish a usury limit, conduct that Congress expressly prohibited in Section 5517(o) of the CFPA.

The Motion is based on this Notice, the Memorandum of Points and Authorities attached hereto, the Request for Judicial Notice and accompanying Declaration of Thomas J. Nolan, all pleadings and papers filed in this action, and such additional papers and arguments as may be presented at, or in connection with, the hearing.

DATED: 11/18/2015       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____/s/ Thomas J. Nolan_____
*Thomas J. Nolan*
*Attorneys for Defendants CashCall, Inc., WS Funding, LLC, Delbert Services Corporation, and J. Paul Reddam*

---

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................... 1

FACTUAL BACKGROUND AND SUMMARY OF COMPLAINT ...................... 4

STANDARD OF REVIEW ........................................................................ 6

ARGUMENT ......................................................................................... 7

    I.    THE FEDERAL UDAAP LAW DOES NOT FEDERALIZE ALL STATE CONSUMER FINANCE LAW ....................................... 7

        A.    Absent a Clear Indication, Federal Law Is Presumed Not to Incorporate State Law. ................................................. 8

        B.    Congress Did Not Incorporate State Law into the Federal UDAAP Law ................................................................. 12

    II.    THE BUREAU IS PROHIBITED FROM ESTABLISHING AND ENFORCING USURY LIMITS. ............................................ 21

CONCLUSION ....................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Archie v. City of Racine,*
   847 F.2d 1211 (7th Cir. 1988) ................................................................. 10

*Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC,*
   480 F.3d 470 (7th Cir. 2007) ................................................. 10, 13, 14

*BFP v. Resolution Trust Corp.,*
   511 U.S. 531 (1994) ...................................................................................... 8

*Bond v. United States,*
   134 S. Ct. 2077 (2014) .......................................................................... 8, 9, 10

*Bond v. United States,*
   131 S. Ct. 2355 (2011) ............................................................................... 8

*Carter v. Warde Capital Corp.,*
   838 P.2d 327 (Idaho Ct. App. 1992) ................................................. 20

*Chamber of Commerce v. Whiting,*
   131 S. Ct. 1968 (2011) ............................................................................... 9

*Cleveland v. United States,*
   531 U.S 12 (2000) ........................................................................................ 9

*Collier v. General Exchange Ins. Corp.,*
   118 P.2d (Ariz. 1941) ............................................................................... 20

*Commonwealth v. Mayfield,*
   No. 06-270, 2006 WL 2092584 (E.D. Pa. July 25, 2006) ................ 10

*Connally v. General Const. Co.,*
   269 U.S. 385 (1926) ................................................................................... 21

*Continental Mortgage Investments v. Sailboat Key, Inc.,*
   395 So. 2d 507 (1981) ............................................................................... 19

*Erickson v. Boston Scientific Corp.,*
   846 F. Supp. 2d 1085 (C.D. Cal. 2011) .............................................. 6

*F.C.C. v. Fox Television Stations, Inc.,*
   132 S. Ct. 2307 (2012) .............................................................................. 21

*FDA v. Brown & Williamson,*
   529 U.S. 120 (2000) ................................................................................... 9

*Hall v. Montaleone,*
   348 N.E.2d 196 (Ill. Cty. App. Ct. 1976) ......................................... 20

*Illinois v. CMK Investments, Inc.,*
   No. 14 C 2783, 2014 WL 6910519 (N.D. Ill. Dec. 9, 2014) ........... 22

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

*Jones v. United States,*
    529 U.S. 848 (2000) ......................................................................... 8, 9, 21

*Knappenberger v. City of Phoenix,*
    566 F.3d 936 (9th Cir. 2009) ............................................................... 6

*Leiter Minerals, Inc. v. United States,*
    352 U.S. 220 (1957) ......................................................................... 18

*Madison v. Motion Picture Set Painters & Sign Writers Local 729,*
    132 F. Supp. 2d 1244 (C.D. Cal. 2000) .............................................. 6

*Mims v. Arrow Financial Services, LLC,*
    132 S. Ct. 740 (2012) ....................................................................... 21

*Mississippi ex rel. Hood v. AU Optronics Corp.,*
    134 S. Ct. 736 (2014) ....................................................................... 12

*Olive v. Commissioner of Internal Revenue,*
    792 F.3d 1146 (9th Cir. 2015) ........................................................... 15

*Shaffer v. Board of School Directors,*
    730 F.2d 910 (3d Cir. 1984) .............................................................. 18

*Shame on You Prods., Inc. v. Banks*, No. CV1403512MMMJCX,
    -- F. Supp. 3d --, 2015 WL 4885221 (C.D. Cal. Aug. 14, 2015) ....... 6

*United Brotherhood of Carpenters and Joiners of America v. Building and*
    *Construction Trades Department, AFL-CIO,*
    770 F.3d 834 (9th Cir. 2014) ........................................................... 8, 11

*United States v. Bass,*
    404 U.S. 336 (1971) ........................................................................... 9

*Utility Air Regulatory Group v. EPA,*
    134 S. Ct. 2427 (2014) ...................................................................... 9

*Wade v. Regional Credit Association,*
    87 F.3d 1098 (9th Cir. 1996) ............................................................ 14

**FEDERAL STATUTES & RULES**

11 U.S.C. § 522 ...................................................................................... 15

12 U.S.C. § 5511 .............................................................................. 7, 18, 19

12 U.S.C. § 5517 ............................................................................ 3, 21, 22

12 U.S.C. § 5531 .................................................................. 2, 5, 12, 13, 14

12 U.S.C. § 5536 ................................................................................. 1, 5

12 U.S.C. § 5551 .................................................................................. 14

12 U.S.C. § 5552 ........................................................................ 16, 17, 20

iii

12 U.S.C. § 5564 ................................................................................ 16

12 U.S.C. § 5565 ........................................................................... 6, 16

15 U.S.C. § 1692 ......................................................................... 13, 14

18 U.S.C. § 922 ................................................................................ 15

18 U.S.C. § 1961 .............................................................................. 15

28 U.S.C. § 960 ................................................................................ 15

28 U.S.C. § 3372 .............................................................................. 15

42 U.S.C. § 1395 .............................................................................. 15

Fed. R. Civ. P. 12(c) .......................................................................... 6

## STATE STATUTES

Ark. Code § 4-88-113 ....................................................................... 16

Fla. Stat. § 687.03 ............................................................................ 19

Fla. Stat. § 516.02 ............................................................................ 19

N.Y. Gen. Bus. Law § 350-d ............................................................ 16

Ga. Code. Ann. § 16-7-3 .................................................................. 18

Ohio Rev. Code Ann. § 1345.07 ...................................................... 16

Va. Code Ann. § 6.2-305 .................................................................. 16

## OTHER AUTHORITIES

*Establish*, *Black's Law Dictionary* (10th ed. 2014) ......................... 22

CFPB, CFPB Supervision and Examination Manual, Version 2 (2012) .................... 13

*Consumer Financial Protection Bureau*, *Small Business Advisory Review Panel for Potential Rulemakings for Payday, Vehicle Title, and Similar Loans, Outline of Proposals Under Consideration and Alternatives Considered* (2015), http://files.consumerfinance.gov/f/201503_cfpb_outline-of-the-proposals-from-small-business-review-panel.pdf ...................... 17, 18

*How Will the CFPB Function Under Richard Cordray: Hearing Before the Subcommittee on TARP, Financial Services and Bailouts of Public and Private Programs, on Oversight and Government Reform*, 112th Cong. 47 (Jan. 24, 2012) ................................................................ 22

156 Cong. Rec. 8676-77 (2010) ...................................................... 23

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

Special Master Opinion, *State of Georgia ex rel. Olens v. Western Sky Financial, LLC*,
    No. 2013-CV-234310 (Sup. Ct. Fulton Cty. June 16, 2014) ........................... 19

Whitehouse Amendment to Restoring American Financial Stability Act of
    2010, S.Amdt. 3746, 111th Cong. § 1268 (2010) ............................................. 23

Alan Zibel, *CFPB Head: Limited Control Over Online Lending; Agency to Explore Rules for Payday Loans, Director Cordray Says*, Wall St. J.,
    Aug. 22, 2013,
    http://www.wsj.com/articles/SB1000142412788732398060457902921
    1688122516 ...................................................................................................... 17

1  Defendants CashCall, Inc. ("CashCall"), WS Funding, LLC ("WS Funding"),
2  Delbert Services Corporation ("Delbert"), and J. Paul Reddam, pursuant to Fed. R.
3  Civ. P. 12(c), ask this Court to enter a judgment on the pleadings in favor of
4  Defendants and dismiss with prejudice the First Amended Complaint ("Complaint"
5  or "Compl.") of plaintiff Consumer Financial Protection Bureau ("Bureau" or
6  "CFPB") for failure to state a claim on which relief can be granted.

7  **PRELIMINARY STATEMENT**

8  The Bureau's theory in this case is that a loan servicer violates the provision in
9  the Consumer Financial Protection Act of 2010 ("CFPA" or "Act") that prohibits
10  unfair, deceptive, or abusive acts or practices (the "Federal UDAAP Law") by
11  collecting money from a borrower if, in the Bureau's view, the loan was originated
12  in violation of state law. This "State-Law-Violation-Equals-Federal-UDAAP"
13  theory, if ratified in this case, would give the Bureau authority to prosecute alleged
14  violations of potentially thousands of provisions in state consumer financial services
15  laws by alleging the violation of the state law as a predicate to a violation of the
16  Federal UDAAP Law. For the reasons set forth below, the Court should not
17  authorize this novel and elastic theory and instead should dismiss the Complaint with
18  prejudice.

19  A fundamental tenet of federalism is that a federal statute does not incorporate
20  state law unless Congress includes a "clear statement" in the statute saying that it
21  does. Neither the CFPA nor the Federal UDAAP Law suggests (much less clearly
22  states) that Congress intended to federalize state law in the manner contemplated
23  here, and allowing the Bureau's enforcement action to go forward would upset the
24  federal-state balance of power.

25  Defendants do not disagree with the Complaint's contention that
26  12 U.S.C. § 5536 prohibits "unfair, deceptive, or abusive acts or practices." Nor do
27  Defendants take issue with the Bureau's authority to "prevent a covered person or
28  service provider from committing or engaging in an unfair, deceptive or abusive act

1

1   or practice under Federal law," as set forth in 12 U.S.C. § 5531.  But that is not what

2   the CFPB is seeking to do in this case.  Instead, the Bureau seeks to impose federal

3   penalties for servicing loans based solely on the Bureau's contention that those loans

4   did not comply with some 47 separate licensing and usury laws enacted by the

5   legislatures of 16 separate states.[1]

6       The Bureau offers a deceptively simple syllogism to justify its enforcement of

7   state law under the umbrella of the Federal UDAAP Law: (1) the Act prohibits

8   "unfair, deceptive, or abusive act[s]"; (2) acting in violation of state law is "unfair,

9   deceptive, or abusive"; (3) therefore, violating state law violates the CFPA.  (*See*

10  Compl. ¶¶ 59-61.)  If the Bureau's interpretation of the Federal UDAAP Law were

11  accepted, however, innumerable actions prohibited by state consumer finance law

12  could be deemed unfair, deceptive, or abusive by the Bureau and transformed into a

13  federal case.  Indeed, four months before this suit commenced, CFPB Director

14  Richard Cordray confirmed the limits of the Bureau's authority with the common-

15  sense statement, "State authorities enforce state law, we enforce federal law."  In the

16  test case before this Court, however, the Bureau *does* seek to enforce state law, and it

17  attempts to do so by declaring that violations of state usury and licensing laws are

18  *ipso facto* a violation of the Federal UDAAP Law.

19      Likewise, the Bureau has already acknowledged that the 16 "Subject States" at

20  issue in this matter may bring their own actions under state law for the alleged

21  conduct.  Indeed, eight of these 16 states have brought actions based on the same

22  facts at issue here, seeking to enforce the same state laws that the Bureau through

23  this Complaint seeks to enforce for itself.  The other eight states have chosen not to

24  bring claims for purported violations of the state laws upon which the Complaint

25  rests – either in the exercise of their prerogative as sovereign, or because they simply

26

27  [1]   The Subject States are Alabama, Arizona, Arkansas, Colorado, Illinois, Indiana,
      Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey,
28    New Mexico, New York, North Carolina, and Ohio.  (Compl. ¶ 18.)

do not agree with the Bureau's interpretation of their own laws.  That *no* Subject State has elected to join this suit – despite express statutory authorization to do so – underscores that the Bureau here seeks to trammel on traditional state prerogatives.

The Bureau's sweeping interpretation of the Federal UDAAP Law presents quintessential federalism concerns.  Business licensing and usury rates have long been the subject of state regulation, yet, through this action, the Bureau transforms itself into the enforcer of state law, with the power to declare what does and does not violate state law – and when and how those state laws should be enforced.  And despite Congress's stated intent in the CFPA to create a *consistent* body of federal consumer finance law, the Bureau would have the legality of conduct under Federal UDAAP Law turn on the law of the particular state in which the conduct took place. From the Bureau's perspective, a phone call to collect on a loan to a Colorado resident would be a violation of federal law, subject to federal fines of up to *$1,000,000 per day*, because it would violate Colorado law.  In sharp contrast, the same phone call to collect on the same loan with the same terms to an Arizona resident would be permissible under the Federal UDAAP Law because it would not violate Arizona law.  That is not how a consistent body of federal law is supposed to work.

There is more.  The Act contains a specific affirmative prohibition that the Bureau has "[n]o authority to impose [a] usury limit."  12 U.S.C. § 5517(o) ("Section 5517(o)").  As other courts have recognized, this prohibition bars action by the Bureau that regulates usury directly or indirectly.  Indeed, Congress adopted the prohibition against imposing a usury limit after considering (and rejecting) amendments to the CFPA that would have established federal usury law restrictions based on state usury law.  Yet that is exactly what the Bureau seeks to do here, by treating a violation of a state interest rate cap to be a violation of the Federal UDAAP Law, subject to the draconian penalties of that law.  For these reasons, set

1  forth in detail below, the Court should dismiss the Bureau's Complaint with
2  prejudice.

3  **FACTUAL BACKGROUND AND SUMMARY OF COMPLAINT**

4  Western Sky Financial, LLC ("Western Sky") is a company owned by a
5  member of the Cheyenne River Sioux Tribe that, at all relevant times, operated
6  within the boundaries of the tribe's reservation. Western Sky, which is not a party to
7  this lawsuit, originated the unsecured consumer loans at issue in the Complaint. (*See*
8  Compl. ¶ 19.) Defendant WS Funding subsequently purchased the loans from
9  Western Sky, and CashCall and Delbert serviced the loans. (*Id.* ¶ 21.) The loan
10 documents contained provisions stating that the loans were subject to the law of the
11 Cheyenne River Sioux Tribe, where the loans were originated, and were not subject
12 to state laws. (*Id.* ¶ 33.) The interest rates on the loans were high, commensurate
13 with the risk of default, and the terms of most of the loans ranged from 12 months to
14 36 months. (*See id.* ¶ 23.)

15 On December 16, 2013, after 16 states had already initiated actions against
16 Defendants alleging that the Western Sky Loans violated state law, the Bureau filed
17 its initial complaint, alleging that Defendants violated the Federal UDAAP Law by
18 seeking to collect on consumer loans that the Bureau alleged to be void under the
19 laws of eight different states. (ECF No. 1.)[2] On March 21, 2014, the Bureau filed an
20 amended complaint, identifying numerous laws enacted by eight additional states on
21 which it predicated its theory of federal liability. (ECF No. 27.)[3]

22

23

---

24 [2] All cites to "ECF No." refer to the Electronic Case Filing number of documents
25 filed in this action.

26 [3] The Bureau filed the Complaint in the District of Massachusetts and the case was
    assigned to Judge O'Toole. On September 23, 2015, Judge O'Toole granted
    Defendants' motion and transferred the case to the Central District of California.
27 (ECF No. 62.) On October 7, 2015, Defendants filed an Answer to the
    Complaint, denying that they violated the CFPA and raising numerous defenses
28 to the claims. (ECF No. 84.)

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

The Complaint alleges that servicing the Western Sky Loans constitutes a violation of the Federal UDAAP Law, *see* 12 U.S.C. §§ 5531(a), 5536(a), because the Western Sky Loans would be void or uncollectable in whole or in part under the state laws of the 16 Subject States.  (*See* Compl. ¶¶ 58-71.)   According to the Complaint, Western Sky Loans made to residents of the Subject States are void or voidable because they violate the Subject States' usury limits and/or because Defendants did not "comply with licensing requirements" in the Subject States.  (*Id.* ¶ 18.)[4]  Specifically, the Complaint cites to no fewer than 47 separate state statutes, alleging that Western Sky Loans violate the usury limits of six Subject States (Arkansas, Colorado, Minnesota, New Hampshire, New York, and North Carolina) and that servicing the Western Sky Loans violated the licensing requirements of all Subject States, with the exception of Arkansas.  (Compl. ¶¶ 11-16, 26-31.)

Based on these alleged violations of state law—and based *only* on these alleged violations of state law—the Bureau claims that Defendants' collection activities  have violated the Federal UDAAP Law.  12 U.S.C. § 5536(a)(1)(B).  *First*, the Bureau alleges unfairness as a result of Defendants' "collecting on those [Western Sky] Loans or portions of [Western Sky] Loans that laws in the Subject States render void or limit the consumer's obligation to repay."  (Compl. ¶ 60.)  *Second*, the Bureau alleges deceptiveness due to Defendants' failure "to disclose that the loans, or some parts thereof, were void or not subject to a repayment obligation under the applicable laws of the Subject States."  (*Id.* ¶ 65.)   *Third*, the Bureau alleges abusiveness from Defendants' taking "unreasonable advantage of consumers' lack of understanding about the impact of applicable state laws on the parties' rights and obligations regarding [Western Sky] Loans."  (*Id.* ¶ 70.)  In other words, *but for* the violation of state law, there would be no alleged unfair, deceptive or abusive conduct in this case.

---

[4]  Defendants deny that state law applies to Western Sky Loans.  (Defs.' Answer to Compl. ¶¶ 11-18, 26-31, ECF No. 84.)

1   The Bureau seeks a broad array of federal remedies including (1) a nationwide
2   permanent injunction covering federal consumer law violations; (2) damages and
3   other monetary relief; (3) restitution in the amount of interest, fees, and principal
4   collected from consumers whose Western Sky loans were void or voidable under
5   state law; (4) disgorgement; (5) civil monetary penalties; and (6) costs.  (Compl. at p.
6   28); *see also* 12 U.S.C. § 5565 (relief available under CFPA).

7                               **STANDARD OF REVIEW**

8        Under Rule 12(c), a party may move for judgment on the pleadings any time
9   after the pleadings have closed and early enough not to delay trial.  Fed. R. Civ. P.
10  12(c).  "Judgment on the pleadings is properly granted when, taking all allegations in
11  the pleading as true, the moving party is entitled to judgment as a matter of law."
12  *Knappenberger v. City of Phoenix*, 566 F.3d 936, 939 (9th Cir. 2009); *see also*
13  *Erickson v. Boston Sci. Corp.*, 846 F. Supp. 2d 1085, 1089 (C.D. Cal. 2011) ("If the
14  complaint fails to articulate a legally sufficient claim, the complaint should be
15  dismissed or judgment granted on the pleadings.").[5]  Though the court "must assume
16  that the facts alleged by the non-moving party are true," it "need not assume the truth
17  of legal conclusions pleaded in the complaint merely because they take the form of
18  factual allegations."  *Madison v. Motion Picture Set Painters & Sign Writers Local*
19  *729, 132 F. Supp. 2d 1244, 1259 (C.D. Cal. 2000).*  "It is well-settled that . . . matters
20  that are subject to judicial notice may be considered in evaluating a motion for
21  judgment on the pleadings."  *Shame on You Prods., Inc. v. Banks*, No. CV 14-03512
22  *MMM (JCX), -- F. Supp. 3d --, 2015 WL 4885221, at *10 (C.D. Cal. Aug. 14,*
23  *2015).*

24

25

26

27  [5]  Unless otherwise noted, all internal alterations, citations and quotation marks are
      omitted.  All "Ex." references are to exhibits attached to the concurrently filed
28    Declaration of Thomas J. Nolan.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

## ARGUMENT

The Complaint fails to state a claim upon which relief can be granted because the Federal UDAAP Law does not encompass a claim predicated solely upon a violation of state law.  The Supreme Court has made clear that a federal law incorporates state law only if Congress expressly stated such an intent on the face of the statute.  The text and purpose of the Federal UDAAP Law, as well as the structure of the entire CFPA, demonstrate that Congress did not do so in the Federal UDAAP Law.  The Bureau, therefore, lacks the power that it claims here.  In addition, the Complaint seeks to establish a usury limit, an action that Congress expressly prohibited in Section 5517(o) of the Act.

## I.    THE FEDERAL UDAAP LAW DOES NOT FEDERALIZE ALL STATE CONSUMER FINANCE LAW.

The Bureau alleges that Defendants have violated the Federal UDAAP Law because—and *only* because—the loans at issue allegedly violated state law.  (Compl. ¶¶ 60, 65, 70.)  As the Bureau puts it, the alleged state-law licensing and usury violations "predicate the CFPA violations alleged here."  (Pl.'s Opp'n to Defs.' Renewed Mot. to Transfer Venue at 15, ECF No. 41; *accord id.* at 17.)  Under well-established precedent, however, a violation of state law does not establish a violation of federal law unless Congress clearly says it intends to incorporate state law.  Neither the CFPA generally, nor the Federal UDAAP Law specifically, contains any such statement of incorporation.  To the contrary, Congress expressly limited the Bureau to enforcing "Federal" law and required it do so "consistently."  12 U.S.C. § 5511(a).  This action, which turns solely on whether the loans Defendants purchased and collected violated state law in 16 states, is not within the Bureau's proper powers and it should be dismissed.

A.   **Absent a Clear Indication, Federal Law Is Presumed Not to Incorporate State Law.**

The State-Law-Violation-Equals-Federal-UDAAP theory rests on an assumption that the Federal UDAAP Law *sub silentio* transformed the Bureau into a roving enforcer of state consumer finance law – and assumption that turns the normal presumption of federalism on its head.  "In our federal system . . . [t]he States have broad authority to enact legislation for the public good" while "the National Government possesses only limited power." *Bond v. United States*, 134 S. Ct. 2077, 2086 (2014) ("*Bond II*").  To be sure, Congress sometimes legislates in areas of state concern, but if it intends to do so, Congress must make that intent *clear*.  As the Supreme Court has repeatedly explained, "those charged with the duty of legislating must be reasonably explicit about it" if they wish to federalize an area of state regulation – lest the "constitutional balance" between the federal government and states be disturbed, thereby eviscerating federalism's "protect[ion] [of] the liberty of the individual from arbitrary power." *Id.* at 2089, 2091 (quoting *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 544 (1994), *Bond v. United States*, 131 S. Ct. 2355, 2364 (2011)).  In applying *Bond II*, the Ninth Circuit has noted that *even when* a federal statute expressly states that a violation can be predicated on a violation of state law, which is not the case here, great care is needed to ensure that the court does not "transform innumerable state crimes and torts into federal crimes" and thereby "alter sensitive federal-state relationships." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't, AFL-CIO*, 770 F.3d 834, 840 n.4 (9th Cir. 2014) ("*United Brotherhood*").

That clear-statement principle is at its zenith when areas of long-standing state regulation are concerned.  For example, the Supreme Court refused to construe a federal arson statute such that it would transform "virtually every arson in the country [into] a federal offense." *Jones v. United States*, 529 U.S. 848, 859 (2000).  Because arson was a "paradigmatic common-law state crime," Congress had to

8

1   "convey[] its purpose clearly" if it intended to make a federal crime out of a state law

2   arson offense. *Id.* at 858. So too in *United States v. Bass* where the Supreme Court

3   rejected a reading of a federal firearm statute that would "render[] traditionally local

4   criminal conduct a matter for federal law enforcement." 404 U.S. 336, 350 (1971).

5   And as the Court put it in one of its most recent federalism decisions, we "insist on a

6   clear indication that Congress meant to reach purely local crimes, before interpreting

7   the statute's expansive language in a way that intrudes on the police power of the

8   States." *Bond II*, 134 S. Ct. at 2090.

9        Like state criminal laws, business licensing regimes like those at issue here

10   have long been recognized to fall firmly within the heart of the state police power.

11   *Chamber of Commerce v. Whiting*, 131 S. Ct. 1968, 1983 (2011) ("Regulating in-

12   state businesses through licensing laws has never been considered . . . an area of

13   dominant federal concern."). Because state licensing laws are integral to the basic

14   operation of businesses throughout the country, the Supreme Court "expect[s]

15   Congress to speak clearly if it wishes to assign to an agency decisions of vast

16   'economic and political significance.'" *Utility Air Regulatory Grp. v. EPA*, 134 S.

17   Ct. 2427, 2444 (2014) (quoting *FDA v. Brown & Williamson*, 529 U.S. 120, 160

18   (2000)). Thus, in *Cleveland v. United States*, 531 U.S. 12 (2000), the Court refused

19   to apply the federal mail fraud statute to false statements made in a state licensing

20   application in part because it found that the issuance of licenses and permits

21   concerned "conduct traditionally regulated by state and local authorities," and the

22   Court would not "approve a sweeping expansion of federal criminal jurisdiction in

23   the absence of a clear statement by Congress." *Id.* at 24.

24        In this case, the Bureau acknowledges that state licensing laws "reflect the

25   *states'* strong public polic[ies]." (Compl. ¶ 14.) Indeed, the Bureau explained its

26   rationale for its choice of the Subject States on the basis that the Subject States "have

27   demonstrated their deep concern about how these high-interest, small-dollar loans

28   affect consumers living in their state . . . by taking the extreme measure of rendering

1   loans void – not just illegal or uncollectible, but void – when they were made or

2   purchased without regard to the relevant consumer protections." (Tr. of Mot. Hr'g at

3   16:12-17, 17:6-8 (Sept. 16, 2015), ECF No. 60.)[6]  But each of the 16 Subject States

4   in the CFPB's complaint have made *their own* enforcement decisions:  half have

5   elected to file suit, and half have decided not to take any action whatsoever against

6   the Defendants.  The Bureau's explanation for taking action on its own indicates that

7   it is dissatisfied with the states' responses to the loans at issue.  Yet by seeking to

8   enforce these states' laws *for the states*, when all presumably have reached deliberate

9   and considered decisions on how to enforce their own laws, the CFPB is treading on

10   the core legal principle – clearly articulated in *Bond II* – that the Federal Government

11   may not "displace" the public policy of the states.  *Bond II*, 134 S. Ct. at 2092-93

12   ("[W]e have traditionally viewed the exercise of state officials' prosecutorial

13   discretion as a valuable feature of our constitutional system.").  *See also Archie v.*

14   *City of Racine*, 847 F.2d 1211, 1218 (7th Cir. 1988) ("[A] rule created by the states

15   should be enforced by the states."); *Commonwealth v. Mayfield*, No. 06-270, 2006

16   WL 2092584, at *1 (E.D. Pa. July 25, 2006) ("One of the defining ingredients of the

17   sovereignty of the several states is that each state has the prerogative, and the

18   corresponding responsibility, of enforcing its own laws, criminal and civil, in its own

19   courts.").  Deciding when and how state laws should be enforced, as the CFPB is

20   attempting to do here, belongs to the sovereign state itself, absent a clear statement

21   from Congress to the contrary.  *See, e.g., Beler v. Blatt, Hasenmiller, Leibsker &*

22
_____

23   [6]   The Bureau has further indicated that it seeks to use Federal UDAAP Law to
      enforce state law because it does not believe state law provides sufficient

24   penalties for state law violations.   In arguing that a settlement by the
      Commonwealth of Massachusetts of claims that the Defendants had violated

25   Massachusetts law should not affect whether the case should remain in the
      District of Massachusetts, Bureau counsel stated, "[W]e're here suing under

26   federal law, under the Consumer Financial Protection Act of 2010, and that law
      carries with it different remedies and different relief than are available at the state

27   level.   We have civil money penalties, we have equitable relief, we have
      injunctive conduct relief that we're seeking to implement here, and nothing in

28   the potential settlement with Massachusetts would provide the relief that we're
      seeking through our federal action here." (*Id.* at 19:10-18.)

1   *Moore, LLC*, 480 F.3d 470, 475 (7th Cir. 2007) (Easterbrook, J.) ("[F]ederal judges

2   ought not use this ambulatory language [in a federal statute] to displace decisions

3   consciously made by state legislatures and courts about how [to enforce state law].").

4        The Ninth Circuit's decision in *United Brotherhood* – in which it interpreted

5   the Racketeer Influenced and Corrupt Organizations Act ("RICO"), a federal statute

6   that expressly incorporates state law – underscores the constitutional flaws inherent

7   in the Bureau's position.   In *United Brotherhood*, the plaintiffs (the Carpenters)

8   argued that they had sufficiently alleged "racketeering activity" under RICO, *i.e.*,

9   "any act or threat involving . . . extortion, . . . which is chargeable under State law."

10   770 F.3d at 837.   Because they had alleged violations of twelve states' extortion

11   statutes, the Carpenters contended that it necessarily followed that they had

12   adequately pled "any act or threat involving . . . extortion." *Id.*   The Ninth Circuit,

13   however, rejected the Carpenters' efforts to "expand that definition [of extortion

14   under the RICO statute] to include any conduct labeled 'extortion' under any state

15   statute." *Id.* at 843.   "Even if a state labels particular conduct extortion," the Court

16   explained, "it cannot qualify as a predicate offense for a RICO suit unless it is

17   capable of being generically classified as extortionate" under federal law. *Id.*

18        The same result is compelled here.   The Bureau anchors its claims against

19   Defendants *solely* in violations of several state laws.   There is no allegation that any

20   of Defendants' activities would be considered by the Bureau to have violated any

21   law if the Bureau's conclusion about the applicability of state law were incorrect.

22   But, as *United Brotherhood* makes clear, simply alleging that a practice is unfair,

23   deceptive, or abusive under *state* law does not suffice to allege a violation of *federal*

24   law.   This is true even where – as in the RICO statute in *United Brotherhood*, but

25   decidedly *not* in the CFPA – the federal statute expressly incorporates state law.

26   Rather, the Bureau must go further and establish that the conduct could qualify as

27   unfair, deceptive, or abusive under the independent *federal* definition of the terms.

28

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

1 Because the Bureau has not done, and cannot do so, here, the Court should enter
2 judgment in favor of Defendants.

3       **B.      Congress Did Not Incorporate State Law into the Federal UDAAP
4               Law.**

5       The Complaint hinges on a conclusion that Congress intended to federalize
6 violations of state consumer finance law through the Federal UDAAP Law.
7 According to the logic of the Complaint, to the extent (and only to the extent) that
8 state law prohibits certain conduct regarding lending, such conduct is unfair, abusive,
9 and deceptive under federal law.  As demonstrated above, under the Constitution's
10 carefully calibrated system of federalism, federal law does not sweep in state law
11 unless Congress expresses that intent clearly.  Here, Congress said the opposite:  the
12 CFPA's text, structure, and purpose establish that Congress did not intend to enable
13 every violation of state law to serve as the predicate for a violation of the Federal
14 UDAAP Law.

15      *1.     Text.*  Statutory interpretation "begins with the statutory text."
16 *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 741 (2014).  Each of
17 the Complaint's three counts alleges a violation of the Federal UDAAP Law, which
18 not only makes no mention of state law, but is expressly framed in terms of federal
19 law.

20      Specifically, the Federal UDAAP Law authorizes the Bureau to "prevent a
21 covered person or service provider from committing or engaging in an unfair,
22 deceptive, or abusive act or practice *under Federal law* in connection with any
23 transaction with a consumer for a consumer financial product or service."
24 12 U.S.C. § 5531(a).[7]  Congress could hardly have been clearer in specifying that the

25 _____
   [7]   Nor is there any mention of state law in the Act's specific definitions of the terms
26 "unfair," "abusive," or "deceptive."  To be "unfair," the Bureau must have a
   "reasonable basis to conclude" an act or practice:

27

28           (A) . . . causes or is likely to cause substantial injury to consumers
                which is not reasonably avoidable by consumers; and

*(cont'd)*

CFPA does not incorporate state law.  Instead, the CFPA prohibits conduct that violates federal standards and federal enactments.  If Congress had wanted to prohibit conduct simply because it violates state law, it would have said so rather than saying the opposite.

Indeed, in a closely analogous context, at least one court has held that a federal statute regulating "unfair" practices does not silently federalize alleged violations of state law.  The Fair Debt Collection Practices Act ("FDCPA") prohibits "unfair and unconscionable" practices in the collection of a debt.  15 U.S.C. § 1692f.  In *Beler*, the plaintiff contended that it was "unfair" under the FDCPA to "violate any other rule of positive law," such as the Illinois debt collection law that was at issue in that case.  *Beler*, 480 F.3d at 473.  The Seventh Circuit, in an opinion written by Judge Easterbrook, rejected that argument, affirming that the FDCPA "does not so much as

_____
(cont'd from previous page)

> (B) such substantial injury is not outweighed by countervailing benefits to consumers or to competition.

12 U.S.C. § 5531(c)(1).

To be "abusive," the Bureau must have a "reasonable basis to conclude" an act or practice:

> (1) materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service; or
> (2) takes unreasonable advantage of—
>
> (A) a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service;
> (B) the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service; or
> (C) the reasonable reliance by the consumer on a covered person to act in the interests of the consumer.

12 U.S.C. § 5531(d).  "Deceptive" is not specifically defined in the statute, but the Bureau's Examination Manual contains a definition that likewise has no reference to state law.  (*See* Ex. 5 (CFPB, CFPB Supervision and Examination Manual, Version 2 (2012)).)

hint at being an enforcement mechanism for other rules of state . . . law." *Id.* at 474. So too here: under the CFPA, the Bureau may take enforcement action only to "prevent a covered person . . . from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law." *See* 12 U.S.C. § 5531. As Judge Easterbrook put it so succinctly, if the Defendants violated state law, "that statute's rules should be applied." *Beler*, 480 F.3d at 474. The Bureau may not, as it has done here, "take a state-law dispute and move it to federal court." *Id.*

Like the Seventh Circuit, the Ninth Circuit has made it clear that not every violation of state law constitutes a violation of the FDCPA. In *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098 (9th Cir. 1996), the Ninth Circuit held that the defendant's "collection efforts, although apparently in violation of state law, were innocuous and not in violation of the FDCPA," and stressed that in an FDCPA case the court "must determine not whether [the defendant] violated the state statute, but whether it violated the federal Act." *Id.* at 1100. This distinction must be made even though Congress *did* incorporate state law to a degree in the FDCPA, by prohibiting false representations of "the legal status of any debt." 15 U.S.C. § 1692e(2). The CFPA's prohibition of "an unfair, deceptive, or abusive act or practice under Federal law," 12 U.S.C. § 5531, does not  incorporate state law at all, let alone to a degree greater than the FDCPA's reference to "the legal status of any debt" such that every violation of a state statute would serve as the predicate for a violation of the Federal UDAAP Law.

It is also telling that there is no hint of an intent to incorporate state law in the section of the CFPA entitled "Relation to State Law." 12 U.S.C. § 5551. That provision expressly states that the CFPA "may not be construed as annulling, altering, or affecting . . . the statutes . . . in any State, except to the extent that any such provision of law is inconsistent with the provisions of this title, and then only to the extent of the inconsistency." *Id.* In other words, the CFPA does not affect state law at all unless it is directly inconsistent with federal law. Again, if Congress had

14

1  wanted to incorporate state law, it would have said so, rather than expressly
2  providing that state law is entirely unaffected by the CFPA absent a direct conflict
3  between the two.

4  The absence of any direct incorporation of state law is striking because in
5  other statutes Congress *has* said when it wants to incorporate state law into federal
6  law.  For example, RICO expressly provides that "any act or threat involving . . .
7  extortion . . . chargeable under State law" may serve as a RICO predicate.
8  18 U.S.C. § 1961(1)(A), (B).[8]   Likewise, the federal criminal code includes
9  numerous explicit references to state law.  *See, e.g.*, 18 U.S.C. § 922(b)(2)
10  (prohibiting the sale or delivery of "any firearm to any person in any State where the
11  purchase or possession by such person of such firearm would be in violation of any
12  State law"); 28 U.S.C. § 3372(a)(2)(A) (prohibiting the purchase of "any fish or
13  wildlife taken, possessed, transported, or sold in violation of any law or regulation of
14  any State.").  The CFPA, with its exclusive references to federal law, looks nothing
15  like these statutes, and should be construed accordingly not to incorporate state law.
16  *Olive v. Comm'r of Internal Revenue*, 792 F.3d 1146, 1150 (9th Cir. 2015)
17  ("Application of the statute does not depend on [] illegality . . . under state law; the

---

8  There are numerous other examples where Congress expressly incorporated state law into the United States Code.  Among those are the following: 42 U.S.C. § 1395dd(d)(2)(A) ("Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief is appropriate."); 28 U.S.C. § 960(a) ("Any officers and agents conducting any business under the authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation."); 11 U.S.C. § 522(b)(2) ("Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.").

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

1   only question Congress allows us to ask is whether [the conduct is] 'prohibited by

2   Federal law.'").

3       **2.      *Structure.*** While the plain text of the CFPA definitively establishes that

4   Congress did not intend to incorporate state law, the Act's structure provides further

5   confirmation.  For one thing, the Act contains its own statute of limitations and

6   remedial provisions—provisions that would substantially, and in some cases

7   dramatically, change the terms of liability and exposure for state-law conduct if they

8   were applied as the Bureau urges.

9       The CFPA provides that "no action may be brought under this title more than

10  3 years after the date of discovery of the violation to which an action relates."

11  12 U.S.C. § 5564(g)(1).  By contrast, many states have shorter statutes of limitations.

12  *See*, *e.g.*, Ohio Rev. Code Ann. § 1345.07(E) (two years after violation); Va. Code

13  Ann. § 6.2-305(A) (two years after earlier of date of last scheduled loan payment or

14  date of payment of loan in full).  Likewise, the CFPA authorizes penalties of up to

15  *$1,000,000 per day*, which dwarfs the penalties authorized under state law for the

16  same conduct.  *Compare* 12 U.S.C. § 5565(c)(2)(C) (authorizing fines up to

17  $1,000,000 per day), *with*, *e.g.*, Ark. Code § 4-88-113(a)(3) (authorizing fines up to

18  $10,000 per violation), *and* N.Y. Gen. Bus. Law § 350-d (authorizing fines up to

19  $5,000 per violation).

20      If Congress had wished to allow federal suits based on state-law violations that

21  were time-barred under state law, and to impose penalties for that state-law conduct

22  that far outstrip state-law penalties for the very same conduct, it would have said so

23  expressly.  This Court should not interpret the Federal UDAAP Law to interfere with

24  state consumer finance regimes without an express indication that Congress intended

25  that result.

26      The federalism consequences of the Bureau's position are especially intrusive

27  because the CFPA authorizes state attorneys general to bring actions under the

28  CFPA.  *See* 12 U.S.C. § 5552(a)(1).  If a violation of the Federal UDAAP Law could

be predicated solely upon a violation of state law, state enforcement officials could end-run the limits that their own legislatures have authorized by charging conduct allegedly violating state law as a violation of the Federal UDAAP Law.  In other words, state enforcement officials, simply by invoking the Federal UDAAP Law, would empower themselves to obtain penalties ten – or even one hundred times higher – than what their own state legislatures were willing to authorize for violations of the same state law.  To be sure, Congress theoretically could choose to incorporate state law into federal law and authorize heightened federal penalties for violations of state law, but Congress should not be presumed to have upset the balance of power between state legislatures and state executives absent a clear statement that it intended to do so.

None of this is to say that the Bureau could not adopt its own *federal* standards in the area of consumer lending.  Indeed, earlier this year, the Bureau released an Outline of Proposals to regulate payday and other high-interest consumer loans.  (*See* Ex. 3 (CFPB, Small Business Advisory Review Panel for Potential Rulemakings for Payday, Vehicle Title, and Similar Loans, Outline of Proposals Under Consideration and Alternatives Considered (2015), http://files.consumerfinance.gov/f/201503_cfpb_outline-of-the-proposals-from-small-business-review-panel.pdf ("Outline")).)  The Outline suggested proposals that would apply based on a loan's terms and the borrower's ability to repay, including, for example, imposing a number of restrictions and requirements on certain longer-term loans with an annual percentage rate that exceeds 36 percent.

But what the Bureau cannot do is claim the right to enforce state law violations, as it itself has recognized since its inception.  (*See, e.g.*, Ex. 7 (Alan Zibel, *CFPB Head: Limited Control Over Online Lending; Agency to Explore Rules for Payday Loans, Director Cordray Says*, Wall St. J. Online (Aug. 22, 2013), http://www.wsj.com/articles/SB10001424127887323980604579029211688122516) (recounting Director Cordray's statement that "[s]tate authorities enforce state law,

17

we enforce federal law").)  And, indeed, far from expressing the position (as it does here) that the Act incorporates state law, the Bureau explicitly described its proposals in the Outline as providing a "federal floor" separate and apart from state law.  (Ex. 3 at 4.)  The Bureau's authority to promulgate regulations establishing such a floor shows that it is not necessary for the Bureau to bootstrap a state-law claim into a violation of the Federal UDAAP Law in order to accomplish its policy goals, and highlights the impermissibility of converting state law claims to federal law claims.

**3.   *Purpose.***  The Bureau's interpretation is also inconsistent with the stated purpose of the CFPA:  To "seek to implement and, where applicable, enforce *Federal* consumer financial law consistently."  12 U.S.C. § 5511(a).  Far from furthering Congress's purpose to create a consistent body of *federal* law, the CFPB's theory of state-law incorporation would turn the agency into the chief enforcer of *state* law – a result inconsistent both with the CFPA and core principles of federalism.  Indeed, the CFPB's approach would require federal courts to resolve in the first instance open and difficult questions of state law that are properly the province of state officials and state courts.  *See, e.g.*, *Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 229 (1957) (reiterating that "federal courts do not decide" federal questions "on the basis of preliminary guesses regarding local law"); *Shaffer v. Bd. of Sch. Dirs.*, 730 F.2d 910, 913 (3d Cir. 1984) ("[W]here the underlying issue of state law is a question of first impression with important implications . . . factors weighing in favor of state court adjudication certainly predominate.").  However, if the Federal UDAAP Law can be predicated upon violations of state law, CFPA actions brought by the Bureau will end up forcing federal courts to adjudicate multiple open questions regarding the scope and content of state-law prohibitions.  This concern is hardly hypothetical, and even a brief survey of state consumer finance laws reveals multiple unsettled questions.  For example:

- Georgia's payday-lending regime purports to void small-dollar loans exceeding certain interest rates.  *See* Ga. Code. Ann. § 16-7-3.  But

---

18

whether that remedy applies in enforcement actions is unclear, as is the statute's application to out-of-state lenders altogether.   These difficult questions are considered in the opinion of Georgia's former Attorney General, appointed as Special Master, recommending dismissal of a state law-enforcement action against some Defendants here.  (*See* Ex. 6 (Special Master Opinion, *State of Georgia ex rel. Olens v. Western Sky Fin., LLC*, No. 2013-CV-234310 (Sup. Ct. Fulton Cty. June 16, 2014)).)   The issues in the Special Master's opinion are currently being litigated in Georgia state courts.

- Florida law limits small-loan interest rates to 18% per year.  *See* Fla. Stat. §§ 516.02(2)(a), 687.03(1).   Yet, according to the Supreme Court of Florida, the usury statutes fail to "establish[] a strong public policy" that will override a contractual choice of other law "where interstate loans are concerned."   *Cont'l Mortg. Inv'rs v. Sailboat Key, Inc.*, 395 So. 2d 507, 509 (Fla. 1981).   Whether loans in Florida with an interest rate greater than 18% should be considered usurious and therefore void is a matter best weighed by Florida courts.

Were the Bureau's position accepted, federal courts would have to determine in the first instance whether there was actually a predicate violation of state law in order to decide the ultimate question of whether there was a violation under the CFPA.  Taking on that task of resolving questions of the laws of all 50 states is not in keeping with the Act's stated purpose of enforcing "Federal consumer financial law."   *See* 12 U.S.C. § 5511(a).   Quite the contrary, the Bureau's position is inconsistent with its responsibility to define, explicate, and enforce a federal interpretation of "unfair, deceptive, or abusive acts or practices."

1  The CFPB's theory of state-law incorporation also would lead to anything but

2  consistent federal consumer finance law.  For example:

3  • In many states, "[t]he word 'void' frequently means in reality 'voidable' at

4     the option of the injured party." *Collier v. Gen. Exch. Ins. Corp.*, 118 P.2d

5     74, 77 (Ariz. 1941); *see also, e.g.*, *Hall v. Montaleone*, 348 N.E.2d 196,

6     198 (Ill. Cty App. Ct. 1976) ("[E]ven as to the borrower, for whose benefit

7     the statute was enacted, a usurious contract is not void but only voidable.").

8     Consequently, consumers in these states would enjoy the benefit of

9     consumer finance law only after taking affirmative steps to protect

10    themselves.

11 • Residents of Idaho, where state law imposes no licensing requirements and

12    provides no penalty for usury, would have no consumer protections at the

13    federal level.  *See, e.g.*, *Carter v. Warde Capital Corp.*, 838 P.2d 327, 329

14    (Idaho Ct. App. 1992) (acknowledging "the repeal of the usury statute in

15    1983").

16    Finally, that the Bureau's action here is inconsistent with the purpose of the

17 CFPA is also evident by the provisions in the Act encouraging the Bureau and state

18 attorneys general to work together.  *See* 12 U.S.C. § 5552(b).  Indeed, the Bureau has

19 filed an enforcement action jointly with one or more states in at least six instances

20 alleging violations of the Federal UDAAP Law.  Here, however, not one of the 16

21 states whose laws the Bureau seeks to enforce has joined the Bureau's complaint.

22                                *       *       *

23    As the Bureau alleges no wrongful conduct other than collecting on loans that

24 the Bureau alleges to have been originated in violation of state law, the Bureau's

25 theory provides no avenue for the Bureau to prevail without a determination that

26 Defendants violated some or all of the 47 state statutes in the Complaint.  But this

27 State-Law-Violation-Equals-Federal-UDAAP theory hinges on a conclusion that

28 Congress enacted a law that federalized the consumer lending laws of every state —

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

a conclusion that is utterly without basis. "Instead, it enacted detailed, uniform, federal substantive prescriptions and provided for a regulatory regime administered by a federal agency." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 751 (2012). And given the profound constitutional concerns that would be presented were the CFPA interpreted to federalize state law, the doctrine of constitutional avoidance further counsels in favor of interpreting the federal statute not to have incorporated state law. *See, e.g.*, *Jones*, 529 U.S. at 858 (interpreting federal statute in a way "to avoid the constitutional question that would arise" were the Court to construe it as "render[ing] the 'traditionally local criminal conduct' in which petitioner Jones engaged 'a matter for federal enforcement'").[9]

## II.   THE BUREAU IS PROHIBITED FROM ESTABLISHING AND ENFORCING USURY LIMITS.

Not only does the CFPA not incorporate state law generally, it specifically and expressly forbids the CFPB from regulating usury in particular, which is exactly what the Bureau is attempting to do here. Section 5517(o) speaks in definite terms:

> **No authority to impose usury limit.** No provision of this title shall be construed as conferring authority on the Bureau to establish a usury limit applicable to an extension of credit offered or made by a covered person to a consumer, unless explicitly authorized by law.

This prohibition plainly bars the CFPB's claims alleging that Defendants have violated the Federal UDAAP Law by charging interest in excess of state usury limits,

---

[9] Because neither the Bureau nor any court had previously stated that the Federal UDAAP Law encompassed violations of state usury or licensing laws, the Complaint raises due process concerns as well. *See F.C.C. v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012) ("A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."); *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."); (*see also* Ex. 7).

1    and it also bars the CFPB's related claims that the Defendants have violated state

2    laws that require a license to lend money in excess of certain rates.   The   plain

3    language of Section 5517(o)—including its key word, "establish"—dictates that the

4    Bureau may not impose or enforce usury limits under any guise.  *See Establish*,

5    *Black's Law Dictionary* (10th ed. 2009) (defining "establish" in three ways: "1. To

6    settle, make, or fix firmly; to enact permanently . . . 2. To make or form; to bring

7    about or into existence . . . [and] 3. To prove; to convince").   At least one court has

8    agreed, holding that the provision is not limited solely to allegations by the CFPB

9    that loans are usurious but also covers other types of enforcement actions where the

10   interest rates of loans are challenged by implication.

11        In an action to enforce the Federal UDAAP Law, the Illinois Attorney General

12   alleged that the defendant credit provider had charged an "Account Protection Fee"

13   that should have been considered interest, rendering the extension of credit usurious

14   under state law.  *See generally Illinois v. CMK Invs., Inc., No. 14 C 2783, 2014 WL*

15   *6910519 (N.D. Ill. Dec. 9, 2014)*.   On a motion to dismiss, the court, parsing the

16   regulator's theory of CFPA violations, stated that the CFPB could not "challenge the

17   account protection fee under the [CFPA] for being usurious, for the [Bureau] has no

18   authority 'to establish a usury limit applicable to an extension of credit.'"  *Id.* at *7

19   *n.5* (citing Section 5517(o)).   The court permitted the claim regarding the account

20   protection fee to proceed, but only "to the extent they do not challenge the account

21   protection fee as being undisclosed interest or usurious."   *Illinois*, 2014 WL

22   *6910519, at *7 n.5*; (*see also* Ex. 1 (*How Will the CFPB Function Under Richard*

23   *Cordray*:   *Hearing Before the H. Subcomm. on TARP, Financial Services and*

24   *Bailouts of Public and Private Programs of the Comm. on Oversight and*

25   *Government Reform*, 112th Cong. 47 (2012) (statement of Richard Cordray,

26   Director, CFPB)) ("[W]e do not have the authority as a Bureau, the Statute is very

27   clear, to cap any interest rates on any financial products.")).

28

1   This limitation on the Bureau's powers was no accident.  Congress considered
2   and rejected an amendment to the CFPA that would have established a federal usury
3   rate that would be the same as the usury rate in the state where a borrower resided.
4   (Ex. 4 (Whitehouse Amendment to Restoring American Financial Stability Act of
5   2010, S.Amdt. 3746, 111th Cong. § 1268 (2010)); Ex. 2 (156 Cong. Rec. 8676-77
6   (2010)).)  Despite Congress's considered decision to withhold from the Bureau the
7   power to regulate usury, the Bureau has sought to do exactly that in this action
8   because all of its claims hinge on whether Defendants have violated state usury laws.
9   The Bureau expressly alleges usury violations in six Subject States (*see*
10  Compl. ¶¶ 11-12, 26-27), and the Bureau alleges licensing violations in several
11  Subject States where a lender must be licensed only when its loans exceed certain
12  interest rates (*see id.* ¶¶ 15-16, 30-31).  Both of these categories—the first explicitly
13  and the second implicitly—place the Bureau in the position of seeking to establish a
14  limit on the interest rates charged on loans.  That is precisely the power Congress
15  denied to the Bureau.

16                              *       *       *

17  The Complaint makes plain that the Bureau seeks to create a violation of the
18  Federal UDAAP Law by means of nothing more than alleged violations of state law.
19  This it cannot do.  Broad though the Federal UDAAP Law may be, the text and
20  structure of the CFPA and constitutional principles of federalism, dictate that it
21  cannot be interpreted so broadly as to encompass the laws of all fifty states and
22  thereby afford the Bureau the power to displace the states in the enforcement of state
23  law.  The Court, therefore, should dismiss the Complaint with prejudice.
24  //
25  //
26  //
27  //
28  //

23

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court enter a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and dismiss the Complaint in its entirety with prejudice.

DATED: 11/18/2015          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  _____ */s/ Thomas J. Nolan*_____
                                        Thomas J. Nolan
                     *Attorneys for Defendants CashCall, Inc., WS Funding,*
                     *LLC, Delbert Services Corporation, and J. Paul Reddam*

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS