LISA D. ROSENTHAL (CA Bar #179486)
lisa.rosenthal@cfpb.gov
CHRISTINA S. COLL (CA Bar #250712)
christina.coll@cfpb.gov
LEANNE E. HARTMANN (CA Bar #264787)
leanne.hartmann@cfpb.gov
PAULA A. TUFFIN (NY Bar #2285955)
(*Pro Hac Vice application pending)*
paula.tuffin@cfpb.gov
CONSUMER FINANCIAL PROTECTION BUREAU
1700 G Street NW
Washington, DC 20552
Telephone: (415) 633-1326
Fax: (202) 435-7722

Attorneys for Plaintiff
Consumer Financial Protection Bureau

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>CASHCALL, INC., et al.<br><br>Defendants. | CASE NO.: 2:15-cv-07522-JFW (RAOx)<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>Date: January 11, 2016<br>Time: 1:30 p.m.<br>Judge: Hon. John F. Walter<br>Courtroom: 16<br>Pretrial Cnf.: September 9, 2016<br>Trial: September 27, 2016 |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

SUMMARY OF COMPLAINT .......... 2

ARGUMENT .......... 4

I. Defendants fail to meet their burden, given the standard of review and the fact that the CFPA is a remedial statute. .......... 4

II. The Complaint alleges that Defendants' conduct satisfies the elements of the CFPA's prohibition of unfair, deceptive, and abusive practices. .......... 6

A. The Complaint alleges that Defendants' conduct satisfies each element of the CFPA UDAAP claims. .......... 6

B. State-law violations may undergird federal-law violations. .......... 9

1. The debt-collection context provides analogous case law. .......... 9

a. Collecting amounts not authorized under state law can predicate FDCPA violations. .......... 10

b. Other state-law violations can predicate FDCPA violations. .......... 11

2. Various federal-law violations can be predicated on state law. .......... 14

3. Predicating UDAAP violations on state law is consistent with federalism. .......... 15

C. Collecting unowed debt is routinely treated as a UDAAP violation. .......... 17

IIII. Pursuing UDAAP violations for taking and demanding unowed money does not implicate the CFPA's usury-setting proscription. .......... 18

CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 5

*Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLP*, 480 F.3d 470 (7th Cir. 2007) 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 4, 5

*Brown v. Nutsch*, 619 F.2d 758 (8th Cir. 1980) ........ 15

*Buchanan v. Northland Group, Inc.*, 776 F.3d 393 (6th Cir. 2015) ........ 13

*CFPB v. Gordon*, No. 12-6147 (C.D. Cal. June 26, 2013) ........ 8

*CFPB v. Hanna & Assocs., P.C.*, No. 1:14-CV-221, 2015 WL 4282252 (N.D. Ga. July 14, 2015) ........ 20

*CFPB v. Moseley et al.*, 4:14-CV-00789 (W.D. Mo. Sept. 9, 2014) ........ 17

*Currier v. First Resolution Inv. Corp.*, 762 F.3d 529 (6th Cir. 2014) ........ 13

*Daniels-Hall v. Nat'l Ed. Ass'n*, 629 F.3d 992 (9th Cir. 2010) ........ 17

*Draper v. Coombs*, 792 F.2d 915 (9th Cir. 1986) ........ 14

*Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188 (9th Cir. 1989) ........ 4

*Fiorenzano v. LVNV Funding, LLC*, No. 11-178M, 2012 WL 2562415 (D.R.I. June 29, 2012) ........ 12

*Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767 (8th Cir. 2001) ........ 13

*FTC v. Broadway Global Master Inc.*, 2:12-cv-855 (E.D. Cal. April 5, 2012) ........ 17

*FTC v. Gill*, 265 F.3d 944 (9th Cir.2001) ........ 8

*FTC v. Loma Int'l Bus. Grp. Inc.*, No. MJG–11–1483, 2013 WL 2455986 (D. Md. June 5, 2013) ........ 14

*Gaetano v. Payco of Wisconsin, Inc.*, 774 F.Supp. 1404 (D. Conn. 1990) ........ 12

*Goins v. JBC & Assocs., P.C.*, 352 F. Supp. 2d 262 (D. Conn. 2005) ........ 13

*Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385 (5th Cir. 2002) ........ 6

*Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000) ........ 20

*Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28 (3d Cir. 2011) ........ 13

*Illinois v. CMK Invs., Inc.*, No. 14-CV-2783, 2014 WL 6910519 (N.D. Ill. Dec. 9, 2014) ........ 19

*In re Smith*, 866 F.2d 576 (3d Cir. 1989) ........ 6

*Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002)....10, 16

*Kuhn v. Account Control Tech., Inc.*, 865 F.Supp. 1443 (D. Nev. 1994) ....12

*Larsen v. JBC Legal Group, P.C.*, 533 F. Supp. 2d 290 (E.D.N.Y. 2008) ....13

*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010)....12

*Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d Cir. 2015)....10, 11

*Madison v. Motion Picture Set Painters & Sign Writers Local 729*, 132 F. Supp. 2d 1244 (C.D. Cal. 2000)....5

*McBride v. Soos*, 594 F.2d 610 (7th Cir. 1979)....15

*McGlinchy v. Shell Chemical Co.*, 845 F.2d 802 (9th Cir. 1988) ....5

*McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) ....13

*Papasan v. Allain*, 478 U.S. 265 (1986) ....5

*Pfennig v. Household Credit Servs., Inc.*, 286 F.3d 340 (6th Cir. 2002) ....6

*Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446 (8th Cir. 2001) ....13

*Russey v. Rankin*, 911 F.Supp. 1449 (D.N.M. 1995)....12

*Sanders v. Conine*, 506 F.2d 530 (10th Cir. 1974)....15

*Seeger v. AFNI, Inc.*, 548 F.3d 1107 (7th Cir. 2008) ....10

*Sibley v. Firstcollect, Inc.*, 913 F.Supp. 469 (M.D. La. 1995) ....11

*Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443 (6th Cir. 2014)....10, 11

*United Brotherhood of Carpenters and Joiners of America Local 586 v. NLRB*, 540 F.3d 957 (9th Cir. 2008)....14

*Veras v. LVNV Funding, LLC*, No. 13-1745, 2014 WL 1050512 (D.N.J. 2014)....12

*Wade v. Regional Credit Ass'n.*, 87 F.3d 1098 (9th Cir. 1996)....12

*Wirth v. Surles*, 562 F.2d 319 (4th Cir. 1977) ....15

*Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710 (6th Cir. 2015) ....10

**Statutes**

12 U.S.C. § 5481....11

12 U.S.C. § 5511....5

12 U.S.C. § 5517....18, 19

12 U.S.C. § 5531....7, 8, 18

12 U.S.C. § 5536 .......... 7, 11
12 U.S.C. § 5551 .......... 16
12 U.S.C. § 5552 .......... 16
12 U.S.C. § 5564 .......... 18
15 U.S.C. § 1601 .......... 5
15 U.S.C. § 1692 .......... 5, 9, 10
15 U.S.C. § 45 .......... 9
29 U.S.C. § 157 .......... 9, 15
29 U.S.C. § 158 .......... 15
42 U.S.C. § 1983 .......... 9, 15

**Rules**

Fed. R. Civ. P. 12(c) .......... 20

**Other Authorities**

CFPB Bulletin, 2013-07, *available at* http://files.consumerfinance.gov/f/201307_cfpb_bulletin_unfair-deceptive-abusive-practices.pdf .......... 18

FTC Press Release, "*FTC and Federal, State and Local Law Enforcement Partners Announce Nationwide Crackdown Against Abusive Debt Collectors*," Nov. 4, 2015, *available at* https://www.ftc.gov/news-events/press-releases/2015/11/ftc-federal-state-local-law-enforcement-partners-announce .......... 17

Pub. L. No. 111-203, 124 Stat. 1376 (July 21, 2010) .......... 20

## PRELIMINARY STATEMENT

The Consumer Financial Protection Bureau (Bureau) has sued CashCall, Inc., Delbert, Inc., WS Funding, LLC, and J. Paul Reddam (Defendants) for engaging in unfair, deceptive, and abusive acts that violate the Consumer Financial Protection Act of 2010 (CFPA). The First Amended Complaint alleges that Defendants violated the CFPA when they perpetrated a nationwide scheme to demand and collect full payment on small-dollar loans that state-licensing and usury laws had rendered wholly or partially void or uncollectible. Defendants took from consumers tens of millions of dollars that they did not owe.

The Bureau's legal theory is unremarkable: taking and demanding money from consumers for purported loan debt that those consumers do not owe violates the CFPA's prohibition on unfair, deceptive, and abusive acts or practices (UDAAP). Defendants try to get off the hook because of the *reason* the debts were not owed—because *state* laws rendered the loans void. But the reason does not matter. The salient point is that the consumers did not owe the debts, and Defendants demanded and withdrew payment for them anyway; this conduct unquestionably violates the CFPA.

Defendants base their motion for judgment on the pleadings on two flawed premises. First, they fundamentally mischaracterize the Complaint, arguing that it alleges that a state-law violation constitutes a *per se* UDAAP violation. In fact, the Complaint alleges that Defendants' conduct—by causing unavoidable injury, making misrepresentations, and taking unreasonable advantage of consumers—satisfies each element of the federal UDAAP violations it cites. It does not matter that state law is what rendered the loans void. *Federal* law makes it unlawful to collect or demand payment for debts that consumers do not actually owe, whatever the reason. This straightforward legal theory does not present the federalism concerns that Defendants raise. Indeed, state law routinely undergirds federal-law violations, as long lines of case law in the consumer-protection, debt-collection, and other contexts

make clear. Second, Defendants argue that the causes of action are barred by the CFPA's proscription against the Bureau establishing a usury limit. But the Bureau has not attempted to establish a usury limit here. Rather, it simply contends that Defendants cannot take or demand payment for debts that consumers do not actually owe. Enforcing prohibitions on collecting unowed debts is wholly within the Bureau's authority.

In short, Defendants' motion seeks to obfuscate what is a run-of-the-mill UDAAP case through strawman arguments that misconstrue the Bureau's Complaint and mischaracterize the CFPA. Their arguments are unavailing, and their motion should be denied.

## SUMMARY OF COMPLAINT

The Bureau's Complaint alleges as follows: Beginning in late 2009, Defendants CashCall and WS Funding entered into an arrangement with Western Sky (an entity owned by a member of the Cheyenne River Sioux Indian Reservation, but not owned or operated by a tribe or tribal entity) through which high-cost, consumer-installment loans (WS Loans) were made in Western Sky's name, almost immediately sold and assigned to WS Funding, and then serviced and collected by Defendants CashCall and Delbert. (Complaint, ECF No. 27, ¶¶ 19-21.)

Between early 2010 and late 2013, Western Sky made hundreds of thousands of WS Loans to consumers nationwide. The loans ranged from $850-$10,000. They carried upfront fees, interest rates of up to 343%, and lengthy repayment terms. The total cost of WS Loans was substantial. For example, a consumer borrowing $2,600 would have to pay about $13,840 over a 47-month repayment term—more than five times the amount borrowed. (Compl. ¶¶ 22-25.)

WS Loans were made to consumers nationwide, regardless of the lending laws in their states. Western Sky, which did not hold a consumer-lending license in any

state, made WS Loans to consumers in 15 states where the laws voided (or otherwise vitiated consumers' obligation to repay) loans made without a license.[1] The loans also were made to consumers in six states where the laws voided (or otherwise vitiated consumers' obligation to repay) loans made in excess of the state's usury limit.[2] These two overlapping groups—a total of 16 states—are referred to collectively as the "Subject States." (Compl. ¶¶ 11, 26-31.)

All consumers, regardless of their states' lending laws, had to sign a standardized loan agreement that purported to obligate the consumer to repay the entire loan, including interest and fees. It also asserted that the agreement was not subject to any state's laws. (Compl. ¶¶ 32-33.)

After WS Funding acquired the loan, CashCall engaged in the full array of collection activity. It sent billing statements and extracted monthly payments from consumers' bank accounts. When consumers failed to make payments, CashCall called them repeatedly. CashCall did not disclose to consumers that their loans were void or that they were not obligated to make some or all of the payments. To the contrary, in calls and letters, CashCall often referred consumers back to their loan agreements with Western Sky, which affirmatively represented that the loans were not subject to any state's law. Delbert generally engaged in practices analogous to CashCall's in servicing and collecting on WS Loans. (Compl. ¶¶ 35-44.)

The Complaint details the lending laws of each Subject State, alleges that the laws applied to WS Loans, and explains how those laws impacted the loans, namely that they rendered the loans void or otherwise limited the consumer's obligation to repay all or part of the loan. (Compl. ¶¶ 9-31.) Accordingly, the Complaint alleges

[1]These states include: Alabama, Arizona, Colorado, Illinois, Indiana, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, and Ohio.

[2]These states include: Arkansas, Colorado, Minnesota, New Hampshire, New York, and North Carolina.

that Defendants demanded and collected from consumers money they did not actually owe, which caused significant financial harm to consumers. (Compl. ¶ 45-47.) The Complaint then alleges with specificity, as detailed below, how Defendants' conduct with respect to the WS Loans violates the CFPA's UDAAP prohibitions. (Compl. ¶¶ 58-71.)

## ARGUMENT

Defendants' motion rests on two meritless arguments. First, Defendants argue that the Bureau's claims fail because federal UDAAP law does not explicitly federalize state-law violations. This argument fails because the Bureau does not seek to enforce state-law violations as *per se* CFPA violations, and because the Bureau's application of UDAAP here is consistent with long lines of case law in the consumer-protection, debt-collection, and other contexts. Second, Defendants argue that the CFPA's statutory proscription against "establish[ing] a usury limit" prevents the Bureau from challenging Defendants' unfair, deceptive, and abusive conduct. But the Bureau's claims do not establish a usury limit—and thus this argument, which finds no support in the statute or in the Complaint, also falls flat.

### I. Defendants fail to meet their burden, given the standard of review and the fact that the CFPA is a remedial statute.

Defendants' motion should be denied, even if it were improbable that the Bureau would be able to prove the alleged facts and even if the possibility of recovery were remote and unlikely. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (setting a standard for the review of Rule 12(b) motions).[3] If the pleaded facts of a complaint have "facial plausibility," the court may draw the reasonable inference that a defendant is liable for the alleged misconduct. *Ashcroft v.*

[3]Rule 12(b) and Rule 12(c) motions are functionally equivalent, and the same standard of review applies. *See Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

*Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). As set forth below, the Complaint easily states a claim on which relief can be granted and should not be dismissed.

The Court should not only accept as true all material allegations in the Complaint, but also construe the Complaint and resolve all doubts in the light most favorable to the Bureau. *See McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Defendants assert that the Court "need not assume the truth of legal conclusions pleaded in the complaint merely because they take the form of factual allegations." *See Madison v. Motion Picture Set Painters & Sign Writers Local 729*, 132 F. Supp. 2d 1244, 1259 (C.D. Cal. 2000). Although few courts have explained what constitutes a legal conclusion in the form of a factual allegation, the Supreme Court has suggested that it occurs when the parties "allege no actual facts in support of their assertion," but instead rely only on a legal conclusion. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). That is not the case here.

The Complaint's legal conclusions about the Subject States' laws and how they impact the challenged loans are firmly grounded in detailed factual allegations. Moreover, although Defendants deny that the relevant state laws applied to the WS Loans (Motion at 5 n.4, ECF No. 104), they appropriately do not base their motion on that argument. Accordingly, in deciding the motion, the Court should assume the truth of all of the Complaint's predicate allegations, including that the loans were void and that consumers had no obligation to make the demanded payments.

In addition, in deciding this motion, the Court should broadly construe the CFPA. In enacting the CFPA, Congress aimed to ensure that consumers are "protected from unfair, deceptive, and abusive acts and practices," and "provided with timely and understandable information to make responsible decisions about their financial transactions." 12 U.S.C. § 5511(b)(1)-(2). Because the CFPA is a remedial statute, like the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p, and the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667f, it

should be construed liberally in favor of the consumer. *See, e.g.*, *Pfennig v. Household Credit Servs., Inc.*, 286 F.3d 340, 344 (6th Cir. 2002) (TILA); *Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) (FDCPA). *See also In re Smith*, 866 F.2d 576, 581 (3d Cir. 1989) (noting that "[s]tatutes prohibiting unfair trade practices and acts have routinely been interpreted to be flexible and adaptable to respond to human inventiveness[;] [i]n construing section 5 of the Federal Trade Commission Act relating to unfair trade practices, for example, the Supreme Court determined that the Act was to be both broad in sweep and flexible in application").

## II. The Complaint alleges that Defendants' conduct satisfies the elements of the CFPA's prohibition of unfair, deceptive, and abusive practices.

Defendants' contention that the Complaint fails to state a claim because "Federal UDAAP law does not federalize all state consumer finance law" lacks merit. (*See* Motion at 7.) First, the argument rests on the flawed premise that the Bureau is claiming that Defendants' conduct violates federal UDAAP law simply because Defendants violated state law. Not so. Rather, the Bureau contends that Defendants violated the CFPA by taking and demanding payment for debts that, under the applicable state laws, consumers did not actually owe. This conduct easily satisfies each element of the three CFPA UDAAP claims—unfairness, deception, and abusiveness. Second, Defendants' argument that a state-law violation cannot support a federal-law violation is undermined by established lines of case law in the debt-collection and other contexts. This argument is particularly inapplicable here, where the alleged violations separately satisfy the elements of the federal-law violation.

### A. The Complaint alleges that Defendants' conduct satisfies each element of the CFPA UDAAP claims.

Defendants' federalization-of-state-law arguments rest on the flawed syllogism, that "(1) the Act prohibits 'unfair, deceptive, or abusive act[s]'; (2) acting

in violation of state law is 'unfair, deceptive, or abusive'; (3) therefore, violating state law violates the CFPA." (Motion at 2.) Nowhere however does the Complaint allege that state-law violations are *per se* CFPA violations. Rather, the Complaint painstakingly details how Defendants' conduct satisfies each element of UDAAP under the CFPA.

The crux of the Complaint is that Defendants, in connection with collecting loan debt that state law had rendered void, violated the CFPA by causing unavoidable injury, making misrepresentations, and taking unreasonable advantage of consumers. The Complaint sets forth three causes of action under CFPA § 1036(a)(1)(B), which prohibits "unfair, deceptive, or abusive" acts or practices. 12 U.S.C. § 5536(a)(1)(B). The statute and case law specify the elements of each of these claims, and Defendants' conduct in demanding and collecting amounts that consumers did not actually owe easily satisfies each element of those claims. Indeed, Defendants have not argued that their conduct in collecting unowed debts somehow did not meet these well-recognized elements.

Count One alleges that Defendants' conduct was unfair. (Compl. ¶¶ 58-61.) Under the CFPA, an act or practice is unfair if it causes or is likely to cause consumers substantial injury, which is not reasonably avoidable and is not outweighed by countervailing benefits to consumers or to competition. 12 U.S.C. § 5531(c)(1). As Count One alleges, Defendants violated this prohibition by "servicing, extracting payments for, and collecting on those WS Loans or portions of WS Loans that laws in the Subject States render void or limit the consumer's obligation to repay." (Compl. ¶ 60.) These acts caused substantial injury—payment of unowed amounts—that consumers could not reasonably avoid, and that injury was not outweighed by any countervailing benefits. (Compl. ¶ 60.)

Count Two alleges that Defendants' conduct was deceptive. (Compl. ¶¶ 62-66.) An act or practice is deceptive if there was a representation, omission, or practice that was likely to mislead customers acting reasonably under the

circumstances, and the representation, omission, or practice was material. *CFPB v. Gordon*, No. 12-6147 at 4 (C.D. Cal. June 26, 2013) (ECF No. 180) (citing *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir.2001)), *available at* https://www.cfpbmonitor.com/wp-content/uploads/sites/5/2013/07/Gordon-Order.pdf. As Count Two explains, by extracting payments by ACH debit, sending billing notices, and otherwise demanding payment, "Defendants have represented, expressly or impliedly, that the entire loan balance was owed to them, that they were legally authorized to collect the associated payments, and that consumers were legally obligated to pay the full amount collected or demanded." (Compl. ¶ 64.) At the same time, Defendants did not disclose that the loans were void or not subject to a repayment obligation under the applicable laws of the Subject States. (Compl. ¶ 65.) These representations and omissions would mislead reasonable consumers to believe they owed the debt—a fact material to consumers in deciding whether to pay.

Count Three alleges that Defendants' conduct was abusive. (Compl. ¶ 67-71.) An act or practice is abusive under the CFPA if it "takes unreasonable advantage of . . . a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service." 12 U.S.C. § 5531(d)(2)(A). As Count Three alleges, Defendants violated this prohibition because "[c]onsumers generally do not know or understand the impact that [state usury and licensing laws] have on their loans," and thus typically did not know that the loans were void or that they otherwise had a limited obligation to pay. (Compl. ¶ 69.) By nonetheless demanding payment for these loans, and by directly debiting the amounts from consumers' bank accounts, Defendants took unreasonable advantage of consumers' lack of understanding about these key facts. (Compl. ¶ 70.)

In short, the Complaint does not allege that Defendants violated the CFPA *because* they violated state law, but because their conduct in taking and demanding

payment from consumers for purported loan debts that they did not owe satisfies the requisite elements of the UDAAP prohibitions under the CFPA.

**B. State-law violations may undergird federal-law violations.**

Defendants' federalism-based arguments are misguided. Courts have long held that violations of state law may undergird violations of federal law. Far from federalizing an area of state regulation, this approach respects states' regulation by accepting those state regulations as they exist and applying them in the context of a federal statute.

In fact, the very issue before the Court—how state law impacts the status and collectability of debt—provides several lines of analogous case law that each support the Bureau's Complaint. In addition to the debt-collection context, consumer-protection, labor, and the civil-rights contexts provide further examples of this commonplace application of state law to the federal-law context. Moreover, although courts routinely have found that violations of these various federal statutes may turn on the application of state law, none explicitly federalize an area of state regulation,[4] as Defendants argue they must. (Motion at 10.)

**1. The debt-collection context provides analogous case law.**

Courts routinely hold that a violation of the FDCPA, 15 U.S.C. §§ 1692-1692p, can turn on how state laws impact the character and collectability of debt. The relevant FDCPA prohibitions include "us[ing] any false, deceptive, or misleading representation or means in collection of any debt," 15 U.S.C. § 1692e; falsely representing "the legal status of any debt," among other things, 15 U.S.C. § 1692e(2)(A); using "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f; and attempting to collect amounts not permitted by

[4] *See* Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p; Federal Trade Commission Act, 15 U.S.C. § 45(a); National Labor Relations Act, § 7, 29 U.S.C. § 157; Civil Rights Act, 42 U.S.C. § 1983.

law, 15 U.S.C. § 1692f(1). The violation of these provisions can turn on various categories of state laws.

**a. Collecting amounts not authorized under state law can predicate FDCPA violations.**

Several circuits have held that a debt collector's attempts to collect amounts that would be impermissible to collect under state law violate the FDCPA's prohibition on false representation of the amount of debt (§ 1692e(2)) or on collecting amounts not permitted by law (§ 1692f(1)), or both. *See, e.g.*, *Madden v. Midland Funding, LLC*, 786 F.3d 246, 254 (2d Cir. 2015) (petition for cert. pending on different issue) (holding that attempt to collect interest higher than that allowed under New York usury law would violate FDCPA if the law of New York (rather than another state) governed the contract); *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 713-14 (6th Cir. 2015) (petition for cert. pending on different issue) (holding that attempt to collect attorney's fees not permissible under Ohio law would violate FDCPA if the law of Ohio (rather than another state) governed the agreement); *Johnson v. Riddle*, 305 F.3d 1107, 1121 (10th Cir. 2002) (holding that attempt to collect shoplifting penalty impermissible under Utah law would violate FDCPA); *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 445 (6th Cir. 2014) (attempt to collect interest amounts prohibited by Kentucky law violated FDCPA); *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1109 (7th Cir. 2008) (attempts to collect a "collection fee" not authorized by Wisconsin law violated FDCPA).

The Bureau's claims here are directly analogous. Just as it violates the FDCPA to collect amounts that consumers do not actually owe by virtue of underlying state law, so too does it violate the CFPA. Defendants miss the mark in suggesting that the FDCPA is different because it expressly "incorporate[s] state law" by prohibiting false representations of "the legal status of any debt," 15 U.S.C. § 1692e(2).

(Motion at 14.) This phrase is hardly an express federalization of an area of state regulation.

Moreover, cases hold that collecting amounts not owed under state law violates not only this provision, but also other FDCPA provisions that do not "incorporate" state law even to that degree. *See, e.g.*, *Stratton*, 770 F.3d at 451 (holding that attempting to collect interest amounts not permitted under state law was "a 'false representation' of the 'character' and 'amount' of [the consumer's] debt" in violation of § 1692e(2)); *Madden*, 786 F.3d at 254 (addressing claim that collecting interest made usurious under state law violated, among other things, prohibition on the "use of any false representation or deceptive means to collect or attempt to collect any debt").

Indeed, it would not make sense on the one hand for the FDCPA to prohibit as "deceptive" and "unfair" the collection of debts that consumers do not actually owe, but, on the other hand, for the identical conduct not to violate the CFPA even when it meets the elements required for a claim under that statute. And it would be particularly strange given that when a covered person under the CFPA (like Defendants, *see* 12 U.S.C. § 5481(6)) violates the FDCPA, the covered person also necessarily violates the CFPA's prohibition on covered persons "commit[ting] any act or omission in violation of a Federal consumer financial law," 12 U.S.C. § 5536(a)(1)(A). *See also* 12 U.S.C. § 5481(12)(H), (14) (defining "Federal consumer financial law" to include the FDCPA).

**b. Other state-law violations can predicate FDCPA violations.**

Several other types of state-law violations can predicate an FDCPA violation as well, including licensing requirements, statutes of limitations, and prohibitions on collection procedures. Several district courts have held that debt collectors' violations of state-licensing requirements constitute *per se* violations of the FDCPA. *See, e.g.*, *Sibley v. Firstcollect, Inc.*, 913 F.Supp. 469, 471-72 (M.D. La. 1995);

*Russey v. Rankin*, 911 F.Supp. 1449, 1459 (D.N.M. 1995); *Kuhn v. Account Control Tech., Inc.*, 865 F.Supp. 1443, 1452 (D. Nev. 1994); *Gaetano v. Payco of Wisconsin, Inc.*, 774 F.Supp. 1404, 1414-15 (D. Conn. 1990); *Fiorenzano v. LVNV Funding, LLC*, No. 11-178M, 2012 WL 2562415, at *4-5 (D.R.I. June 29, 2012); *Veras v. LVNV Funding, LLC*, No. 13-1745, 2014 WL 1050512, at *6 (D.N.J. 2014). Other courts have held that, although a state-licensing violation is not a *per se* FDCPA violation, depending on the facts, a collector's failure to secure the requisite state license could give rise to an FDCPA violation. *See, e.g.*, *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190, 1192 (11th Cir. 2010). Notably, as the Eleventh Circuit indicated in *LeBlanc*, "[t]he federal district courts which have analyzed this issue within the context of the FDCPA and the respective state consumer protection registration or licensing statutes have all held that [a] violation of state law may support a federal cause of action under the FDCPA." 601 F.3d at 1190 n.9 (citations omitted). Likewise, in this case, the state licensing violations may properly support a federal cause of action under the CFPA.

Defendants' reliance on *Wade v. Regional Credit Ass'n.*, 87 F.3d 1098, 1100 (9th Cir. 1996) and *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLP*, 480 F.3d 470 (7th Cir. 2007), to suggest otherwise is unpersuasive. Both cases simply reject the proposition "that debt collection practices in violation of state law are per se violations of the FDCPA." *Wade*, 87 F.3d at 1100; *accord* *Beler*, 480 F.3d at 473 (rejecting argument that "it is 'unfair' or 'unconscionable' for a debt collector to violate any other rule of positive law"). Neither case supports the proposition that a violation of state law cannot support a violation of federal law. Both cases only support the principle that violating state law is not a *per se* violation of federal law, and that under the particular facts of those cases, the plaintiffs had not made out an FDCPA claim. Again, the Bureau's Complaint does not allege that the state-law violations constitute a *per se* violation of federal law, but instead that Defendants' conduct violates each element of the cited CFPA violations.

State statute-of-limitation laws can also predicate an FDCPA violation. For example, the Sixth and Seventh Circuits have held that a debt collector violates the FDCPA by sending a dunning letter that would mislead a consumer into believing that time-barred debt is legally enforceable, regardless of whether the letter actually threatens litigation. *Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 395 (6th Cir. 2015); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1012 (7th Cir. 2014). The Third and Eight Circuits also have found that an FDCPA violation can turn on the application of the state's statute of limitations when a collector explicitly threatens litigation. *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 33 (3d Cir. 2011); *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001). *See also* *Larsen v. JBC Legal Group, P.C.*, 533 F. Supp. 2d 290, 303 (E.D.N.Y. 2008) (threatening to sue on time-barred debts violates the FDCPA); *Goins v. JBC & Assocs., P.C.*, 352 F. Supp. 2d 262, 271-72 (D. Conn. 2005) (same). All of these cases contradict Defendants' point and show instead that state laws that affect the collectability of debt can support federal deception and unfairness claims.

Finally, courts also have found that FDCPA violations can hinge on a violation of state law with respect to the procedure used for debt collection. In finding an FDCPA violation that stemmed from the filing and failing to release a judgment lien in violation of state law, the Sixth Circuit opined:

> We agree that Congress did not turn every violation of state law into a violation of the FDCPA. But that does not mean that a violation of state law can never *also* be a violation of the FDCPA. The proper question in the context of an FDCPA claim is whether the plaintiff alleged an action that falls within the broad range of conduct prohibited by the Act.

*Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 537 (6th Cir. 2014) (emphasis in original); *see also* *Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001) (holding that the collector's use of a garnishment procedure that was unauthorized under Minnesota state law violated the FDCPA). These cases provide further

examples that state laws that impact debt-collection practices can underpin an FDCPA violation.

### 2. Various federal-law violations can be predicated on state law.

Case law in the consumer-protection, labor, and civil-rights contexts further undermine Defendants' federalism arguments. At least one district court has upheld the appropriateness of predicating a federal unfair or deceptive practices claim on a state-licensing violation. In *FTC v. Loma Int'l Bus. Grp. Inc.*, the court found that an immigration service's failure to disclose that it did not have the requisite state license underpinned the company's violation of the FTC Act's prohibition on unfair and deceptive acts. No. MJG–11–1483, 2013 WL 2455986, at *4 (D. Md. June 5, 2013).

In addition, in the context of federal labor law, the rights of nonemployee union representatives to access an employer's private property turn on state law. For example, in *United Brotherhood of Carpenters and Joiners of America Local 586 v. NLRB*, the Ninth Circuit explained that "[w]here state law grants nonemployee union organizers the right to access the employer's property, a violation of these state rights will also be a violation of the NLRA." 540 F.3d 957, 962 (9th Cir. 2008). Thus, whether an employer "engaged in unfair labor practices by excluding [a union's] representatives turns on whether California state law grants union representatives the right to access [the employer's property]." *Id*.

By the same token, the Ninth Circuit also has recognized in the civil rights context, that a §1983 claim may turn on a violation of state law. *See, e.g.*, *Draper v. Coombs*, 792 F.2d 915, 921 (9th Cir. 1986). In *Draper*, the Ninth Circuit held that a § 1983 claim could be based on the police officers' failure to comply with an Oregon law that required a timely hearing on the propriety of the challenged arrest. *Id*. In so holding, the court "agree[d] with the four circuits that have held that a violation of state extradition law can serve as the basis of a section 1983 action '[w]here the violation of state law causes the deprivation of rights protected by the Constitution and statutes of the United States.'" *Id.* (citing *Wirth v. Surles*, 562 F.2d 319, 322

(4th Cir. 1977); *accord* *Brown v. Nutsch*, 619 F.2d 758 (8th Cir. 1980); *McBride v. Soos*, 594 F.2d 610 (7th Cir. 1979); *Sanders v. Conine*, 506 F.2d 530 (10th Cir. 1974)).[5] In each of these varying contexts, the federal violation appropriately turned on the application of state law.

* * *

These lines of cases demonstrate that, notwithstanding Defendants' attempts to show otherwise, state-law violations routinely undergird violations of federal statutes, including federal statutes that contain no explicit incorporation of state law.

**3. Predicating UDAAP violations on state law is consistent with federalism.**

Defendants raise a handful of other unavailing federalism-related arguments. For example, Defendants argue that state authorities should enforce their own laws and that this action is somehow impinging on state prerogatives. (Motion at 2-3, 10.) Far from intruding on states' territory, this approach *respects* states' regulation by accepting those state regulations as they exist. Federal UDAAP law makes it unlawful to cause injury, make misrepresentations, and take unreasonable advantage of consumers, including in connection with attempts to collect debts that consumers do not owe. In this action, the Bureau is enforcing that federal proscription.

Moreover, the Complaint cites clear and settled state laws whose application is readily ascertainable. Defendants' arguments that this case requires the Court to "adjudicate multiple open questions regarding the scope and content of state-law prohibitions" are unfounded. (Motion at 18.) Indeed, they base their argument on the laws of two states (Georgia and Florida) that are not Subject States and thus whose laws are in no way implicated by this action. (*Id*. at 18-19.) Defendants have not so

---

[5]Neither the NLRA nor §1983 expressly "incorporates" state law, as Defendants suggest is required for federal-law violations to be predicated on underlying state law. *See* 29 U.S.C. §§ 157, 158(a)(1) (NLRA); 42 U.S.C. § 1983.

much as identified a hard question of any relevant state law, much less demonstrated that it is problematic. In any event, federal courts are entirely competent, and regularly are called upon, to decide questions of state law.[6]

Defendants point to various CFPA provisions that relate to states or state laws (Motion at 14-18), but none advances their federalism argument. The cited provisions ensure that the CFPA does not preempt more consumer-protective state laws (12 U.S.C. § 5551), authorize states to bring their own UDAAP actions (12 U.S.C. § 5552(a)(1)), and require states to consult with the Bureau before bringing UDAAP actions (12 U.S.C. § 5552(b)). As is clear from the provisions themselves, they are designed to enhance consumer protection and in no way limit the Bureau's ability to protect consumers from UDAAP violations, even if those violations partially hinge on underlying state law.

Finally, Defendants' arguments about the need for consistent application of the CFPA reflect a core misunderstanding of the legal theories at issue in these cases. (Motion at 3, 20.) Federal cases involving unowed debt focus on the conduct with respect to the unowed debt, not merely the status of the debt. This approach applies in cases like this one, where the underlying reason a debt is not owed turns on state law. In other words, in the case of a void loan, it is the states that designate whether the loan is categorized as void. UDAAP law is then applied consistently to any defendant's *conduct* with respect to all loans that have been categorized as void: Did the defendant engage in unfair conduct with respect to void loans, such that they caused a substantial injury that could not be reasonably avoided? Did the defendant misrepresent the loan or debt obligation such that the elements of deception are satisfied? Did the defendant treat consumers abusively with respect to void loans,

---

[6] *See, e.g.*, *Johnson*, 305 F.3d at 1118 ("When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule.").

such that they took unreasonable advantage of them as defined by the statute? Again, this approach ensures a consistent application of federal law that simultaneously gives due deference to state law.

**C. Collecting unowed debt is routinely treated as a UDAAP violation.**

Taking from consumers money that they do not owe, or otherwise misrepresenting the legal status or amount of the debt, are practices that are routinely treated as unfair or deceptive acts that violate federal law. The debt-collection context detailed above provides only one rich source of precedent for this approach. Cases brought by the FTC and the Bureau under UDAAP law offer yet more examples. *See, e.g.*, Order Granting TRO at 2, *FTC v. Broadway Global Master Inc.*, 2:12-cv-855 (E.D. Cal. April 5, 2012), ECF No. 15 (Entering TRO and finding likelihood of success on the merits against entity seeking to collect unowed debt, alleged as federal UDAAP); Order Granting TRO at 2, *CFPB v. Moseley et al.*, 4:14-CV-00789 (W.D. Mo. Sept. 9, 2014), ECF No. 8 (same); Federal Trade Commission, *Operation Collection Protection Federal Actions* (Nov. 4, 2015), https://www.ftc.gov/system/files/attachments/press-releases/ftc-federal-state-local-law-enforcement-partners-announce-nationwide-crackdown-against-abusive-debt/151102ocp-fedactionlist.pdf (identifying 12 actions in which federal UDAAP charges were brought against entities seeking to collect unowed debt).[7]

Moreover, in its guidance materials, the Bureau has highlighted certain FDCPA violations that could constitute UDAAP violations regardless of whether the offender was covered by the FDCPA, including "falsely representing . . . the legal status of a debt." CFPB Bulletin 2013-07 at 5, *available at*

[7]Courts may take judicial notice of facts which are publicly available and "not subject to reasonable dispute in that [they are] ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See Daniels-Hall v. Nat'l Ed. Ass'n*, 629 F.3d 992, 998-999 (9th Cir. 2010) (citing Fed. R. Evid. 201).

http://files.consumerfinance.gov/f/201307_cfpb_bulletin_unfair-deceptive-abusive-practices.pdf.

Neither the agency nor any of its representatives have made any statements suggesting that the Bureau would not vigorously enforce its UDAAP authority to protect consumers from the type of harm that Defendants caused through their challenged actions. And nothing in the extensive materials for which Defendants sought judicial notice suggests otherwise.[8]

## IIII. Pursuing UDAAP violations for taking and demanding unowed money does not implicate the CFPA's usury-setting proscription.

Defendants' argument that this action contravenes § 1027(o) of the CFPA also lacks merit. *See* 12 U.S.C. § 5517(o). That section provides quite plainly, in both its title—"NO AUTHORITY TO IMPOSE USURY LIMIT"—and its text, that the Bureau does not have authority "to establish a usury limit." *Id.* Simply put, the Bureau's claims in this case do not seek to "impose" or "establish" any usury limit.

Defendants contend that the Bureau is violating § 1027(o) by *enforcing* the limits that states have established. *See id.* But § 1027(o) on its face does not prohibit the Bureau from enforcing a usury limit established elsewhere. *See id.* Even if it did, this case would not be barred, because the Bureau is not seeking to enforce any usury limits here. Rather, the Bureau seeks to enforce the CFPA's UDAAP prohibitions, which the CFPA explicitly authorizes the Bureau to do. *See* 12 U.S.C. § 5531(a) ("The Bureau may take any action authorized under subtitle E to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice . . ."); 12 U.S.C. § 5564(a) (providing authority to the CFPB to commence a civil action for violations of Federal consumer laws).

---

[8]Violations of state law and the collecting of unowed debt both routinely undergird violations of federal consumer-protection law. Defendants have no basis to argue that they lacked notice that the conduct challenged here could constitute a federal UDAAP violation.

To support their argument, Defendants rely on dictum from a footnote in a single unreported and inapposite decision, *Illinois v. CMK Invs., Inc.*, No. 14-CV-2783, 2014 WL 6910519 (N.D. Ill. Dec. 9, 2014). In that case, the Illinois Attorney General brought state claims as well as claims under the CFPA relating to the charging of undisclosed fees. *Id*. The court noted that, in light of § 1027(o), 12 U.S.C. § 5517(o), the plaintiff could not challenge the undisclosed fee as usurious under the CFPA. *See* *Illinois v. CMK Invs., Inc.*, No. 14-CV-2783, 2014 WL 6910519, at *7 n.5 (N.D. Ill. Dec. 9, 2014). But even this interpretation of § 1027(o) would not undermine the Bureau's claims. *See* 12 U.S.C. § 5517(o). The Bureau does not contend that the underlying loans violate the CFPA because they are usurious. Rather, the Bureau challenges Defendants' efforts to collect purported debts that consumers do not owe because state licensing or usury laws had rendered them void.

Defendants' reliance on a failed amendment to the CFPA is similarly unavailing. That Congress considered and rejected a provision that would have capped interest rates at the usury rate of the consumer's state does not matter here. As an initial matter, Defendants err in suggesting that the Bureau is now doing what this rejected amendment would have done. The Bureau is not enforcing a cap on interest rates, but rather a prohibition on collecting amounts that consumer do not owe. (This claim depends not just on the state-law usury cap, but also on the state law provisions that void or otherwise limit consumers' obligation to pay loans made in violation of those caps.)

And proposed amendments fail for many reasons. Testimony from bill-sponsor Senator Dodd suggests that there were concerns that the amendment could have unintended consequences, that it had not been fully thought through, and that time was of the essence. 156 Cong. Rec. 8676 (daily ed. May 19, 2010) (statement of Sen. Dodd), Ex. 2 to Declaration of Thomas J. Nolan in Support of Defendant's

Request for Judicial Notice, Docket No. 105. The failure of this amendment lends no support to Defendants' argument.

In any event, reliance on legislative history is inappropriate where the statute is clear, particularly if it would, as it would here, "undermine the plain meaning of the statutory language." *CFPB v. Hanna & Assocs., P.C.*, No. 1:14-CV-221, 2015 WL 4282252, at *8 (N.D. Ga. July 14, 2015) (citing *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) (en banc). The CFPA aims to, among other things, "protect consumers from abusive financial services practices." Pub. L. No. 111-203, 124 Stat. 1376 (July 21, 2010). The Bureau is seeking to do just that here—to protect consumers from the taking of fees and interest that they do not owe. And nothing in the CFPA prohibits the Bureau from doing so.

## CONCLUSION

For the foregoing reasons, the Bureau respectfully requests that this Court deny Defendants' motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).

Respectfully submitted,

DATED: 12/09/2015 CONSUMER FINANCIAL PROTECTION BUREAU

By: /s/ Lisa Diane Rosenthal
Lisa Diane Rosenthal (CA Bar #179486)
*Attorney for Plaintiff*
*Consumer Financial Protection Bureau*