THOMAS J. NOLAN (State Bar No. 66992)
CAROLINE VAN NESS (State Bar No. 281675)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Thomas.Nolan@skadden.com
Caroline.VanNess@skadden.com

JOSEPH L. BARLOON (*Admitted Pro Hac Vice*)
AUSTIN K. BROWN (*Admitted Pro Hac Vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Joseph.Barloon@skadden.com
Austin.Brown@skadden.com

MATTHEW S. HELLMAN (*Admitted Pro Hac Vice*)
JENNER & BLOCK LLP
1099 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 639-6861
Facsimile: (202) 661-4983
MHellman@jenner.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>CASHCALL, INC., WS FUNDING, LLC, DELBERT SERVICES CORPORATION, and J. PAUL REDDAM,<br><br>Defendants. | CASE NO.: 2:15-cv-07522-JFW (RAOx)<br><br>DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>Date: January 11, 2016<br>Time: 1:30 p.m.<br>Judge: Hon. John F. Walter<br>Ctrm.: 16<br>Pre-Trial Conf.: September 9, 2016<br>Trial: September 27, 2016 |

# TABLE OF CONTENTS


INTRODUCTION .......... 1

ARGUMENT .......... 1

I. THE OTHERWISE LAWFUL CONDUCT ALLEGED HERE CANNOT BE DEEMED UNLAWFUL BASED SOLELY ON A DETERMINATION THAT STATE LAW WAS VIOLATED .......... 1

A. The Bureau's Claims Turn On State Law .......... 1

B. The CFPB Points To No Source Indicating That Congress Intended The CFPA To Incorporate State Law .......... 3

1. The FDCPA Is Not Analogous To The CFPA .......... 4

2. The Bureau's Reliance On Cases Involving Consumer-Protection, Labor, And Civil Rights Statutes Is Similarly Unavailing .......... 7

C. The Bureau's Theory Represents A Novel and Unprecedented Application Of UDAAP Law .......... 8

II. THE BUREAU'S THEORY CONSTITUTES AN IMPROPER DE FACTO ESTABLISHMENT OF FEDERAL USURY PROVISIONS .......... 9

CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Bond v. United States*,
134 S. Ct. 2077 (2014) .......... 3

*Brown v. Nutsch*,
619 F.2d 758 (8th Cir. 1980) .......... 8

*CFPB v. Hanna & Associates, P.C.*,
No. 1:14-CV-2211-AT,
– F. Supp. 3d – , 2015 WL 4282252 (N.D. Ga. July 14, 2015) .......... 11

*Draper v. Coombs*,
792 F.2d 915 (9th Cir. 1986) .......... 8

*FTC v. Loma International Business Group Inc.*,
Civil Action No. MJG-11-1483,
2013 WL 2455986 (D. Md. June 5, 2013) .......... 7

*Gaetano v. Payco of Wisconsin, Inc.*,
774 F. Supp. 1404 (D. Conn. 1990) .......... 6

*Hamilton v. United Healthcare of Louisiana, Inc.*,
310 F.3d 385 (5th Cir. 2002) .......... 4

*Illinois v. CMK Investments, Inc.*,
No. 14 C 2783,
2014 WL 6910519 (N.D. Ill. Dec. 9, 2014) .......... 10, 11

*Johnson v. Riddle*,
305 F.3d 1107 (10th Cir. 2002) .......... 5

*Jones v. United States*,
529 U.S. 848 (2000) .......... 3

*Kuhn v. Account Control Technology, Inc.*,
865 F. Supp. 1443 (D. Nev. 1994) .......... 6

*Madden v. Midland Funding, LLC*,
786 F.3d 246 (2d Cir. 2015) .......... 6

*McBride v. Soos*,
594 F.2d 610 (7th Cir. 1979), *aff'd*, 679 F.2d 1223 (7th Cir. 1982) .......... 8

*Pfennig v. Household Credit Services, Inc.*,
286 F.3d 340 (6th Cir. 2002), *rev'd*, 541 U.S. 232 (2004) .......... 4

*Picht v. John R. Hawks, Ltd.*,
236 F.3d 446 (8th Cir. 2001) .......... 5

*Russey v. Rankin*,
911 F. Supp. 1449 (D.N.M. 1995) .......... 6

*Sanders v. Conine*,
506 F.2d 530 (10th Cir. 1974) ........ 8

*Shaffer v. Board of School Directors*,
730 F.2d 910 (3d Cir. 1984) ........ 3

*Sibley v. Firstcollect, Inc.*,
913 F. Supp. 469 (M.D. La. 1995) ........ 6

*In re Smith*,
866 F.2d 576 (3d Cir. 1989) ........ 4

*United Brotherhood of Carpenters and Joiners of America Local 586 v. NLRB*,
540 F.3d 957 (9th Cir. 2008) ........ 7, 8

*Wade v. Regional Credit Association*,
87 F.3d 1098 (9th Cir. 1996) ........ 6

*Whitledge v. Carrington Mortgage Services, LLC*,
No. 15-CV-2686 (PJS/LIB),
2015 WL 6561731 (D. Minn. Oct. 5, 2015) ........ 9

**STATUTES**

12 U.S.C. § 5517 ........ 10, 11

12 U.S.C. § 5536 ........ 7

15 U.S.C. § 1692 ........ 5, 6

**REGULATIONS**

8 C.F.R. § 292.1 ........ 7

8 C.F.R. § 1292.1 ........ 7

**OTHER**

Order Granting TRO, *FTC v. Broadway Global Master Inc.*,
2:12-cv-855 (E.D. Cal. Apr. 5, 2012), ECF No. 15 ........ 8

*CFPB v. Moseley*,
4:14-cv-00789 (W.D. Mo. Sept. 9, 2014), ECF No. 8 ........ 8

Federal Trade Commission, *Operation Collection Protection – Federal Actions* (Nov. 4, 2015), https://www.ftc.gov/system/files/attachments/press-releases/ftc-federal-state-local-law-enforcement-partners-announce-nationwide-crackdown-against-abusive-debt/151102ocp-fedactionlist.pdf ........ 9

## INTRODUCTION

The Opposition[1] fails to overcome the arguments made in the Motion[2] establishing that the Bureau cannot transform a violation of state law into a violation of Federal UDAAP Law.[3] The Bureau attempts just that, but its newly minted theory runs contrary to Supreme Court precedent and lacks support in the plain language of the CFPA and under principles of statutory interpretation. As the Motion demonstrated, there is no indication that Congress intended to make state law violations a predicate for Federal UDAAP Law. Thus, the CFPA does not authorize the Bureau's prosecution of conduct that would not be unlawful *but for* a determination that state law was violated. The Bureau's unsuccessful efforts to analogize the CFPA to other federal statutes bolster this conclusion.

Moreover, the Bureau does not, and cannot, refute that this action is barred by Section 5517(o), which affirmatively prohibits the Bureau from establishing a usury limit. The Bureau's attempt to avoid the proscription by drawing a line between *establishing* and *enforcing* a limit falls short.

Accordingly, Defendants respectfully submit that the Bureau's sought after unprecedented expansion of its enforcement power should not be countenanced.

## ARGUMENT

### I. THE OTHERWISE LAWFUL CONDUCT ALLEGED HERE CANNOT BE DEEMED UNLAWFUL BASED SOLELY ON A DETERMINATION THAT STATE LAW WAS VIOLATED

#### A. The Bureau's Claims Turn On State Law

Despite the Bureau's strained attempt to characterize this action otherwise, the

---

[1] "Opposition" or "Opp'n" refers to the Bureau's Opposition to the Motion, filed with this Court on December 9, 2015. (ECF No. 107.)

[2] "Motion" or "Mot." refers to the Defendants' Motion For Judgment On The Pleadings, filed with this Court on November 18, 2015. (ECF No. 104.)

[3] Regarding citations, all emphasis is added, and all internal citations, quotations and alterations are omitted, unless otherwise noted. Unless otherwise defined, terms and abbreviations used herein have the same meaning as used in the Motion.

alleged conduct at issue here is lawful ***but for*** a determination that state law was violated. The Bureau does not allege that Defendants violated a federal rule or regulation in how they collected the loans, what they said to borrowers on phone calls or in letters, or any other conduct that would be unlawful apart from a determination that state law applied to, and was violated by, the Western Sky Loans. Instead, ***every count*** turns on a predicate conclusion that the Western Sky Loans were purportedly originated in violation of state law. (*See* Compl. ¶¶ 58-71 (alleging ***unfair, deceptive and abusive*** conduct by collecting on Western Sky Loans, because the Western Sky Loans were originated in violation of state law).)[4]

The Bureau nonetheless contends that is not actually enforcing violations of state law because any violation it alleges still must meet the federal requirement of being unfair, deceptive, or abusive. (Opp'n at 7-8.) According to the Bureau, its focus is on "the conduct with respect to the unowned debt, not merely the status of the debt." (Opp'n at 16.) But this is nothing more than word games. The Bureau cannot deny that under its Complaint, whether the alleged "conduct" is unlawful turns ***entirely*** on the status of the debt. The Bureau's theory is that conduct is unfair, deceptive, and abusive *because* it violates state law. After all, if state law permitted collection of the loans, there would be no violation of state law, and nothing to claim as unfair, deceptive, or abusive. For the same reasons, the Bureau's response to concerns about an inconsistent body of federal consumer law is deficient. (Opp'n at 16.) The validity of claims brought under this theory, which turns solely on the legal status of the debt as a matter of state law, would require assessing up to fifty different state standards to determine whether a federal violation had occurred.[5]

---

[4] To be sure, Defendants maintain that the alleged conduct fails to meet the Federal UDAAP elements. (*See* Opp'n at 7; Defs.' Answer to Compl., ECF No. 84.)

[5] The Bureau offers no response to Defendants' argument that the proposed theory of enforcement would lead federal courts to determine in the first instance whether a predicate violation of state law had occurred. (Mot. at 18-19.) As Defendants highlighted, there are unsettled "question[s] of first impression with important implications" regarding the scope and content of state consumer finance

*(cont'd)*

(Mot. at 20.)

In short, the Bureau's UDAAP theory rises and falls entirely on whether the conduct at issue violates state law. As Defendants demonstrated in the Motion, Federal UDAAP Law cannot be used to prosecute such conduct when there is no indication that Congress intended that the law could turn solely on a determination that state law was violated.

### B. The CFPB Points To No Source Indicating That Congress Intended The CFPA To Incorporate State Law

Defendants presented authorities establishing that Congress must clearly express its intent for a federal statute to incorporate state law in any fashion or to shift power traditionally exercised by the states to the federal government. (Mot. at 8-11.) Specifically, "when legislation affects the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision." *Bond v. United States*, 134 S. Ct. 2077, 2089 (2014) ("*Bond II*"). The Opposition does not address or even reference *Bond II*.[6] In fact, of the 30 cases cited in the Motion, the Bureau ignores and only cites to four cases.

The Opposition also misinterprets Defendants' federalism argument, which is intertwined with the core principles of the statutory interpretation of the Federal UDAAP Law. Here, the clear statement rule compels a finding that this action is barred as the Bureau attempts to force an interpretation of the CFPA that "touche[s] on several areas of traditional state responsibility." *Bond II*, 134 S. Ct. at 2089;

(cont'd from previous page)
law, which fall squarely within the state courts' purview. (Mot. at 18 (quoting *Shaffer v. Bd. of Sch. Dirs.*, 730 F.2d 910, 913 (3d Cir. 1984)).)

[6] The Bureau misconstrues Defendants' argument and the clear statement rule by asserting that a federal law violation may turn on the application of state law only if the federal law "explicitly federalizes an area of state regulation." (Opp'n at 9.) As the Motion established, what is required is that Congress "convey[] its purpose clearly." (Mot. at 9 (citing *Jones v. United States*, 529 U.S. 848, 859 (2000)).)

(Mot. at 8-9). The Bureau cannot contest that some states, in exercising their own police powers and prerogatives, have elected to not bring enforcement actions against Defendants. (Mot. at 9.) Nonetheless, the Bureau urges the Court, without supporting authority, to allow it to enforce "those state regulations as they exist." (Opp'n at 15.) The Bureau has failed to provide one reason demonstrating that the CFPA grants it the power to make this decision for the states. Nor does the Bureau cite to any language in the statute, or any legislative history, to evidence any intent by Congress to incorporate state law into the CFPA.[7]

Instead, the Bureau points to the Fair Debt Collection Practices Act ("FDCPA") and other statutes in the "labor[] and the civil-rights contexts" to support its position that a violation of the CFPA "can be predicated on state law." (*See* Opp'n at 9-15.) However, none of these statutes is analogous to the CFPA or supports the Bureau's position.

1. The FDCPA Is Not Analogous To The CFPA

The Bureau goes to great lengths canvassing cases under the FDCPA, which the Bureau claims demonstrate that it is common for state law to "undergird" a

[7] The CFPB's argument regarding the canon of construction that remedial statutes should be interpreted broadly does not counter Defendants' argument that the judicial incorporation of state law into the CFPA would violate the plain language of the statute, congressional intent, and principles of federalism. The authority in the Opposition does not compel a different result. For example, the holding in *Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385 (5th Cir. 2002), turned on the plain language of the FDCPA "enabl[ing] the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed [in the statute]." *Id.* at 392. No such broad language exists in the CFPA. The analysis employed by the Sixth Circuit in *Pfennig v. Household Credit Servs., Inc.*, 286 F.3d 340 (6th Cir. 2002), was reversed by the Supreme Court, 541 U.S. 232 (2004), and, nonetheless, the Sixth Circuit acknowledged that the authority of the agency implementing the regulations "is not without limits." 286 F.3d at 345. Finally, *In re Smith*, 866 F.2d 576 (3d Cir. 1989), described the breadth of the Federal Trade Commission Act ("FTC Act") in terms of the "variety of acts and practices" proscribed. *Id.* at 582 (collecting cases applying statute to insurance agreements, debt collection, and leasing of residences). None of the analysis in the aforementioned cases bears on whether the instant statute can be read broadly for the purpose of converting a violation of state law into a violation of the federal statute.

federal violation. (Opp'n at 9-14.) But the Bureau glosses over the fact that Congress *expressly authorized* the use of state law as a basis for an FDCPA violation. The FDCPA was enacted for the primary purpose of "eliminat[ing] abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It identifies prohibited conduct that constitutes an abusive practice with reference to state law. For example, the FDCPA specifically prohibits: misrepresenting the "character, amount, or **legal status** of any debt," 15 U.S.C. § 1692e(2); threatening to "take any action that cannot **legally** be taken," 15 U.S.C. § 1692e(5); and collecting any amount unless such amount is "expressly authorized by the agreement creating the debt or **permitted by law**," 15 U.S.C. § 1692f(1).[8]

These explicit references in the FDCPA to the "law" or "legal status" are clear references to state law. As *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002) notes, "every circuit court decision that has applied the 'permitted by law' standard has asked simply whether state substantive law permitted the FDCPA defendant to collect the money that it demanded." *Id.* at 1118; *see also Picht v. John R. Hawks, Ltd.*, 236 F.3d 446, 448 (8th Cir. 2001) (interpreting "[t]he threat to take any action that cannot legally be taken" to prohibit use of debt collection practices that "violate state law"). Though the Bureau concludes, without analysis, that these provisions are "hardly an express federalization of an area of state regulation" (Opp'n at 11), Defendants have shown that the subsections incorporate state law into the statute and clearly differentiate the FDCPA from the CFPA.

*Every FDCPA opinion* cited by the Bureau (*see* Opp'n at 10-13) involved alleged violations of an FDCPA provision that *incorporates state law* – i.e., misrepresentation of the "character, amount, or legal status" of a debt, threatening to

---

[8] The intent of Congress to incorporate state law into the FDCPA is further reflected in the stated statutory purposes, one of which is to "promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The Federal UDAAP Law lacks any enumerated purpose to advance enforcement of state law.

take an action that "cannot legally be taken," or collecting amounts not "permitted by law."[9] In many of these cases, the plaintiffs alleged that the defendant violated the FDCPA based on the defendant's failure to be licensed as a debt collector. (Opp'n at 11-12.) Again, unlike the provisions of the CFPA at issue here, which contain no trace of incorporation of state law, these actions involved alleged violations of FDCPA provisions that explicitly incorporate state law – most commonly the prohibition against threatening to "take any action that cannot legally be taken" under 15 U.S.C. § 1692e(5).[10] Thus, these FDCPA cases simply reflect the clear intent of Congress to incorporate state law into the FDCPA, which it did not do with the CFPA.

Put simply, the Bureau has cited *no* decision finding a violation predicated on state law where the primary allegation was a freestanding unfair or deceptive act or

---

[9] Moreover, the Bureau misstates the holding of *Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d Cir. 2015), which did not make any holding regarding whether an attempt to collect interest higher than that allowed under New York usury law would violate the FDCPA, but rather suggested that "the District court may need to revisit" whether "the defendants ***may*** have made a false representation or engaged in an unfair practice" regarding whether "they were legally entitled to charge interest in excess of that permitted by New York law." *Id.* at 254.

[10] In defending its theory that a violation of a state *licensing* provision violates the CFPA, the Bureau relies upon a line of cases that has been rejected specifically by this Circuit, a fact not noted in the Opposition. *See Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1101 n.3 (9th Cir. 1996). In *Wade*, the plaintiffs alleged that a debt collector violated numerous provisions of the FDCPA by sending a collection notice to the debtor and making a collection call to the debtor before obtaining a license to collect debt under Idaho law. *Id.* at 1100. The Ninth Circuit held that this action did not violate the FDCPA because there was no false representation that the debt collector had the power to collect in Idaho, and that the debt collection notice was "relatively innocuous" and not unconscionable. *Id.* The Ninth Circuit considered and explicitly rejected four of the cases cited by the Bureau (Opp'n at 11-12 (citing *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 471-72 (M.D. La. 1995); *Russey v. Rankin*, 911 F. Supp. 1449, 1459 (D.N.M. 1995); *Kuhn v. Account Control Tech., Inc.*, 865 F. Supp. 1443, 1451-52 (D. Nev. 1994); *Gaetano v. Payco of Wisconsin, Inc.*, 774 F. Supp. 1404, 1414-15 (D. Conn. 1990))), on the grounds that they were "inapposite or unpersuasive" generally. *Wade*, 87 F.3d at 1101 n.3. Thus, *Wade* stands for the proposition that the failure to obtain proper licensing under state law does not render otherwise lawful conduct violative of the FDCPA.

practice under the FDCPA, untethered to a claim alleging a violation of an FDCPA provision involving incorporated state law.[11] And yet that is precisely the violation the CFPB alleges here.

2. The Bureau's Reliance On Cases Involving Consumer-Protection, Labor, And Civil Rights Statutes Is Similarly Unavailing

The Bureau's contention that certain cases in the consumer-protection, labor, and civil rights contexts undermine Defendants' federalism arguments is flawed. Of particular note, the Bureau misstates the facts and holding of its lead case in this section. In *FTC v. Loma Int'l Bus. Grp. Inc.*, Civil Action No. MJG-11-1483, 2013 WL 2455986 (D. Md. June 5, 2013), the FTC alleged that the defendants violated Section 5(a) of the FTC Act "by expressly and impliedly misrepresenting to consumers that they were authorized immigration service providers." *Id.* at *1. But contrary to the Bureau's assertion, the court did not pin its violation on "failure to disclose that [defendants] did not have the requisite state license" but rather on a violation of *federal* regulations and providing false forms to a federal government agency. (*See* Opp'n at 14); *FTC*, 2013 WL 2455986, at *2 n.5 (citing 8 C.F.R. §§ 292.1, 1292.1).

In addition, the Bureau's other cases involve highly specific facts and legal regimes that do not present the type of federalism concerns at issue here. *United Brotherhood of Carpenters & Joiners of America Local 586 v. NLRB*, 540 F.3d 957 (9th Cir. 2008), is inapposite. There, the Supreme Court addressed lawfulness under

[11] Facing a dearth of support in case law, the Bureau argues that because the FDCPA prohibits collection of debts that "consumers do not actually owe," it "would make no sense" that the CFPA would not also prohibit such conduct. (Opp'n at 11.) In support of this assertion, the Bureau notes that violating the FDCPA would constitute a violation of 12 U.S.C. § 5536(a)(1)(A). But the Bureau does not acknowledge two crucial facts. First, the Complaint does not allege that Defendants violated the FDCPA. Second, the Complaint does not allege that Defendants violated Section 5536(a)(1)(A); rather, it alleges that Defendants violated only Section 5536(a)(1)(B), which is the UDAAP provision. (*See* Compl. ¶¶ 61, 66, 71.) Moreover, the FDCPA has elements and legal standards separate and apart from those of the Federal UDAAP Law.

the National Labor Relations Act of an employer's ejecting union members from private property. *Id.* at 960-61. Under longstanding Supreme Court precedent and theories of property rights, "the rights of nonemployee union representatives to access an employer's private property are *based in state law*." *Id.* at 962.

Similarly, the importation of state law into Section 1983 – a civil rights statute enacted in the Reconstruction Era – has no similarities to the CFPA. Indeed, beyond the dissimilar historical context and statutory purpose, *Draper v. Coombs*, 792 F.2d 915 (9th Cir. 1986), noted the narrow bounds of when a violation of state extradition law can give rise to a violation of 42 U.S.C. § 1983, confining it to applications only where "the violation of state law causes the deprivation of rights protected by the Constitution and statutes of the United States." *Id.* at 921; *Brown v. Nutsch*, 619 F.2d 758, 761-64 & 764 n.8 (8th Cir. 1980) (same); *McBride v. Soos*, 594 F.2d 610, 613 (7th Cir. 1979), *aff'd*, 679 F.2d 1223 (7th Cir. 1982) (same); *Sanders v. Conine*, 506 F.2d 530, 532 (10th Cir. 1974) (same).

In sum, the Bureau makes no attempt to draw parallels between these statutes and the CFPA, nor do any exist.

### C. The Bureau's Theory Represents A Novel and Unprecedented Application Of UDAAP Law

Though the Bureau claims that "[c]ollecting unowed debt is ***routinely*** treated as a UDAAP violation," it presents no binding precedent to support this proposition – because none exists. (Opp'n at 17-18.) Instead, the Bureau cites to two temporary restraining orders in cases with vastly distinguishable facts from this case. *See CFPB v. Moseley*, 4:14-cv-00789 (W.D. Mo. Sept. 9, 2014), ECF No. 8 (granting TRO where defendants were alleged to have deposited loans into consumers' bank accounts without their knowledge or authorization); Order Granting TRO at 2, *FTC v. Broadway Global Master Inc.*, 2:12-cv-855 (E.D. Cal. Apr. 5, 2012), ECF No. 15 (entering TRO where defendants operated a fraudulent scheme in which callers harassed consumers to pay loans that the consumers never took out). These

temporary restraining orders are not findings of liability that establish that "collecting unowed debt is routinely treated as a UDAAP violation." (Opp'n at 17.) Similarly, the Bureau does little more than identify "12 actions in which federal UDAAP charges ***were brought*** against entities seeking to collect unowed debt." (*Id.* (citing Federal Trade Commission, *Operation Collection Protection – Federal Actions* (Nov. 4, 2015), https://www.ftc.gov/system/files/attachments/press-releases/ftc-federal-state-local-law-enforcement-partners-announce-nationwide-crackdown-against-abusive-debt/151102ocp-fedactionlist.pdf).) These cases, which are still pending or have settled, do not contain a single order imposing liability under Federal UDAAP Law for any of the challenged conduct.

Finally, the Bureau's citation to its own informational bulletin does not support its assertion that the status of the debt, as a matter of state law, and not the conduct used to collect the debt, can constitute a UDAAP violation. (*See* Opp'n at 17-18.) The CFPB's bulletin is not binding or determinative precedent, nor can it expand the Bureau's powers beyond those granted by the statute. *See* *Whitledge v. Carrington Mortg. Servs., LLC*, Court File No. 15-CV-2686 (PJS/LIB), 2015 WL 6561731, at *5 (D. Minn. Oct. 5, 2015), *report and recommendation adopted*, Civil No. 15-2686 (PJS/LIB), 2015 WL 6561493 (D. Minn. Oct. 29, 2015) (noting that "[t]he CFPB's informational bulletin does not . . . trump the plain statutory language of the FDCPA"). The Bureau's assertion that "Defendants have no basis to argue that they lacked notice that the conduct challenged here could constitute a federal UDAAP violation" (Opp'n at 18 n.8) ignores the wholesale absence of any binding authority imposing liability based solely on conduct unlawful under state law.

## II. THE BUREAU'S THEORY CONSTITUTES AN IMPROPER DE FACTO ESTABLISHMENT OF FEDERAL USURY PROVISIONS

In a thinly veiled attempt to avoid the CFPA's clear prohibition on establishing a usury limit (Mot. at 21-23), the Bureau argues that the CFPA "on its face does not prohibit the Bureau from *enforcing* a usury limit established

elsewhere," such as by the states. (Opp'n at 18.) And, according to the Bureau, "[e]ven if it did" so prohibit, "this case would not be barred, because the Bureau is not seeking to enforce any usury limits here" but rather "to enforce the CFPA's UDAAP prohibitions, which the CFPA explicitly authorizes the Bureau to do." *Id.*

In short, the Bureau attempts to distinguish "establishing" a usury limit from "enforcing" a usury limit. This is a distinction without a difference. (*See* Mot. at 22.) Section 5517(o) states that the CFPA cannot be construed as conferring authority on the Bureau "to establish a usury limit applicable to an extension of credit offered or made by a covered person to a consumer." By declaring as illegal any attempt to collect on or seek to enforce a loan with an interest rate higher than the applicable usury limit in the state where the borrower resides, the Bureau is "establishing" a usury rate as surely as it would by promulgating a regulation stating that the usury limit for every loan originated in the United States is equivalent to the usury limit in the state where the borrower resides, notwithstanding any choice-of-law provision in the loan agreement stating otherwise.

The fact that the Bureau seeks to establish usury limits indirectly rather than directly does not make the attempt any less prohibited by Section 5517(o). The Bureau states that it is not contending that collecting on the loans is unlawful under federal law because the loans are usurious, but that collecting on the loans is unlawful under federal law because the consumers do not owe anything because the loans are usurious.[12] (Opp'n at 19.) This characterization is misleading and attempts to mask the true basis of the Bureau's claims. The court in *Illinois v. CMK Invs., Inc.*, No. 14 C 2783, 2014 WL 6910519 (N.D. Ill. Dec. 9, 2014) ("*CMK*"),

---

[12] Similarly, the Bureau's protestation that it "is not enforcing a cap on interest rates, but rather a prohibition on collecting [unowed] amounts," which "depends not just on the state-law usury cap, but also on the state law provisions that void or otherwise limit consumers' obligation to pay" is hollow. (Opp'n at 19.) The Bureau presents no details to explain how its efforts to impose multi-million dollar penalties and enjoin collection activity on loans purportedly exceeding state-law usury caps are anything but an attempt to enforce a cap on interest rates.

acknowledged the limitations on the CFPB's authority to regulate usury rates indirectly, just as the Bureau attempts to do here. (Mot. at 22.) In *CMK*, the CFPA's prohibition on *establishing* a usury rate applied to bar the government's attempt to *enforce* a particular interest rate. *CMK*, 2014 WL 6910519, at *7 n.5. The Bureau seeks to downplay Judge Ellis's decision in *CMK* by referring to it as "dictum from a footnote in a single unreported and inapposite decision." (Opp'n at 19.) But the Bureau does not – because it cannot – explain why the decision is inapposite.

The Bureau also fails to present reasoning, consistent with its attempted enforcement theory, to explain the fact that Congress considered and rejected an amendment to the CFPA that barred the CFPB from the exact authority to set usury rates that it seeks to exercise here. (*See* Mot. at 23.) The Bureau cites to *CFPB v. Hanna & Assocs., P.C.*, Civil Action No. 1:14-CV-2211-AT, – F. Supp. 3d – , 2015 WL 4282252 (N.D. Ga. July 14, 2015), for the unremarkable proposition that "reliance on legislative history is inappropriate" where it would undermine the plain meaning of the statute. (Opp'n at 20.) Here, however, the legislative history is consistent with the plain language of the statute, which does not incorporate state law and which makes clear on its face that the CFPB has no authority "to establish a usury limit." 12 U.S.C. § 5517(o); (*see also* Mot. at 23). The legislative history reinforces Defendants' argument.

## CONCLUSION

Accordingly, for the reasons stated herein and in the Motion, Defendants respectfully ask the Court to grant the Motion and dismiss this action with prejudice.

DATED: 12/21/2015 SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: */s/ Thomas J. Nolan*
Thomas J. Nolan
*Attorneys for Defendants CashCall, Inc., WS Funding, LLC, Delbert Services Corporation, and J. Paul Reddam*