THOMAS J. NOLAN (State Bar No. 66992)
Thomas.Nolan@skadden.com
CAROLINE VAN NESS (State Bar No. 281675)
Caroline.VanNess@skadden.com
KASONNI M. SCALES (State Bar No. 301871)
Kasonni.Scales@skadden.com
JULIA M. NAHIGIAN (State Bar No. 307508)
Julia.Nahigian@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

JOSEPH L. BARLOON (Admitted *Pro Hac Vice*)
Joseph.Barloon@skadden.com
AUSTIN K. BROWN (Admitted *Pro Hac Vice*)
Austin.Brown@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>CASHCALL, INC., WS FUNDING, LLC, DELBERT SERVICES CORPORATION, and J. PAUL REDDAM,<br><br>Defendants. | CASE NO.: 2:15-cv-07522-JFW (RAOx)<br><br>DEPOSITION TESTIMONY OF DANIEL BAREN 30(B)(6) (JUNE 14, 2016) IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>Hearing Date: August 1, 2016<br>Time: 1:30 p.m.<br>Place: Courtroom 16<br>Judge: Hon. John F. Walter<br><br>Pre-Trial Conf.: September 9, 2016<br>Trial: September 27, 2016 |

29:19 A. You had asked about specific opinions that
29:20 Katten provided during my earlier deposition.
29:21 Q. Uh-huh.
29:22 A. I think I want to expand upon that here
29:23 and say that those opinions were just a very small
29:24 component of the overall legal advice that Katten
29:25 provided to us with respect to the Western Sky
30:1 loans and our ability to enforce the terms of those
30:2 loans. I had numerous, dozens of conversations,
30:3 maybe hundreds of conversations, with the lawyers
30:4 at Katten, including Ms. Callaway and her
30:5 associates, regarding CashCall's rights to purchase
30:6 those loans and enforce the terms of those loans
30:7 pursuant to the contracts and without interference
30:8 from state regulators.
30:9 I also know that Ms. Callaway had numerous
30:10 conversations with our lenders, as well as counsel
30:11 for our lenders, and communicated the same
30:12 conclusions, that the loans were subject to tribal
30:13 law and not state law.
30:14 Furthermore, I attended conferences where
30:15 Ms. Callaway spoke about our particular loan program
30:16 and how, as it was set up by her, the loans would be
30:17 subject to tribal law and not state law, and that the
30:18 tribal lender could assign the paper to CashCall and
30:19 CashCall could collect it.
30:20 I also had reports from our lenders and
30:21 their counsel that they had numerous conversations

30:22 with Ms. Callaway and even attended conferences or
30:23 seminars where she spoke on the subject, evidencing
30:24 the exact same opinion that these loans are subject
30:25 to tribal law and not state law.

31:22 I also note that Ms. Callaway had -- I saw
31:23 her put on a presentation. I can't recall if it was
31:24 on a -- just a whiteboard or if it was a PowerPoint
31:25 presentation which went through the model. On one
32:1 side it had an arm of the tribe model, and one side
32:2 she called it the "U.S. versus the Montana model,"
32:3 which was the model she had provided to us. She went
32:4 through the benefits of -- and legal theories of each
32:5 of them, and came to the conclusion that both models
32:6 work and both models should prevent states from
32:7 attacking the model.

32:13 Q. I think you said that you got some of this
32:14 information from conferences -- is that right? --
32:15 about this tribal lending model?
32:16 A. No. At the conferences, I -- I listened
32:17 to Ms. Callaway, and it reinforced the conclusions
32:18 that she had already represented to me on numerous
32:19 occasions.
32:20 Q. I see. At those conferences that you
32:21 attended, did you ever hear that this model was not
32:22 legal or appropriate?
32:23 A. No.

33:2 A. I stated this earlier, but in each of our
33:3 financing transactions, the lenders had very
33:4 sophisticated, very expensive counsel who drilled
33:5 very deep into this, and asked Ms. Callaway
33:6 numerous questions and asked Ms. Bogue numerous
33:7 questions. And on each of those occasions, they
33:8 came to the conclusion that the opinion was
33:9 correct, and they authorized their client to
33:10 participate in this financing.
33:11 So that gave me additional comfort that not
33:12 only was my counsel telling me this, but counsel for
33:13 lenders who -- it was their job to determine whether
33:14 the lender should participate in this financing --
33:15 had come to the same conclusion.

DATED: June 30, 2016

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: */s/ Thomas J. Nolan*
Thomas J. Nolan
*Attorneys for Defendants*