THOMAS J. NOLAN (State Bar No. 66992)
Thomas.Nolan@skadden.com
CAROLINE VAN NESS (State Bar No. 281675)
Caroline.VanNess@skadden.com
KASONNI M. SCALES (State Bar No. 301871)
Kasonni.Scales@skadden.com
JULIA M. NAHIGIAN (State Bar No. 307508)
Julia.Nahigian@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

JOSEPH L. BARLOON (Admitted *Pro Hac Vice*)
Joseph.Barloon@skadden.com
AUSTIN K. BROWN (Admitted *Pro Hac Vice*)
Austin.Brown@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>CASHCALL, INC., WS FUNDING, LLC, DELBERT SERVICES CORPORATION, and J. PAUL REDDAM,<br><br>Defendants. | CASE NO.: 2:15-cv-07522-JFW (RAOx)<br><br>DEPOSITION TESTIMONY OF DELBERT MEEKS 30(B)(6) (JUNE 14, 2016) IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Hearing Date: August 1, 2016<br>Time: 1:30 p.m.<br>Place: Courtroom 16<br>Judge: Hon. John F. Walter<br><br>Pre-Trial Conf.: September 9, 2016<br>Trial: September 27, 2016 |

16:2 California in, I believe, 2006. In 2009 they moved to
16:3 Anaheim, and in 2013 they moved to Orange where they
16:4 currently reside.

39:16 Does Mr. Reddam perform any function as an
39:17 officer of WS Funding?
39:18 A. He performs the functions required of that
39:19 role. There are no day-to-day operations of WS Funding.

46:25 A. Loan agents for CashCall only handled the
47:1 overflow for Western Sky applicants or borrowers calling
47:2 in, should the staff at Western Sky not be able to
47:3 handle the amount of calls.

55:7 Q. And how was that funding account funded?
55:8 A. In the beginning it was funded by a loan from
55:9 CashCall, and then a hedge fund, Longwood, provided a
55:10 [redacted] facility.
55:11 Q. The loan from CashCall, how much was that loan?
55:12 A. It varied based on the funding.
55:13 Q. Was it a line of credit?
55:14 A. Per the services agreement, it averaged two
55:15 days of funding because on the third day we would
55:16 purchase loans, which means cash would then go back into
55:17 the funding account from purchasing of the loans.
55:18 Q. And how was that funding represented on
55:19 CashCall's books, if at all?
55:20 A. It would have been as a note receivable from

55:21 Western Sky.

56:23 Do you know, was there ever a dispute with
56:24 regard to that funding?
56:25 A. Yes.
57:1 Q. Can you tell me the instance when there was --
57:2 A. A daily reconciliation would occur between what
57:3 was actually funded by Wells Fargo, what the system
57:4 showed that CashCall purchased and the actual operating
57:5 system that was being used. Those three things were
57:6 then reconciled. And occasionally where a loan might
57:7 not be able to fund because there was wrong account
57:8 information or wrong information on the borrower, those
57:9 things became discrepancies that then had to be worked
57:10 out and reconciled between Cash Call and Western Sky.

93:14 Q. Did Mr. Reddam ever review the employment
93:15 handbook?
93:16 A. No.
93:17 Q. Did he have any role in approving the
93:18 employment handbook?
93:19 A. No.

95:8 Q. Did Mr. Reddam ever review the servicing
95:9 policies and procedures?
95:10 A. No.
95:11 Q. Did he ever edit them?
95:12 A. No.

97:25 Q. Do you know if Mr. Reddam ever reviewed the IT
98:1 policies and procedures?
98:2 A. He did not.

DATED: July 11, 2016

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: *_/s/ Thomas J. Nolan_*
Thomas J. Nolan
*Attorneys for Defendants*