THOMAS J. NOLAN (State Bar No. 66992)
Thomas.Nolan@skadden.com
CAROLINE VAN NESS (State Bar No. 281675)
Caroline.VanNess@skadden.com
KASONNI M. SCALES (State Bar No. 301871)
Kasonni.Scales@skadden.com
JULIA M. NAHIGIAN (State Bar No. 307508)
Julia.Nahigian@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

JOSEPH L. BARLOON (Admitted *Pro Hac Vice*)
Joseph.Barloon@skadden.com
AUSTIN K. BROWN (Admitted *Pro Hac Vice*)
Austin.Brown@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

CASHCALL, INC., WS FUNDING, LLC, DELBERT SERVICES CORPORATION, and J. PAUL REDDAM,

Defendants.

CASE NO.: 2:15-cv-07522-JFW (RAOx)

DEPOSITION TESTIMONY OF DANIEL BAREN (JUNE 14, 2016) IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| Hearing Date: | August 1, 2016 |
| Time: | 1:30 p.m. |
| Place: | Courtroom 16 |
| Judge: | Hon. John F. Walter |
| Pre-Trial Conf.: | September 9, 2016 |
| Trial: | September 27, 2016 |

53:12 Q. Okay. So you said one of the things that
53:13 needed to happen on the reservation was the funding
53:14 of the loans.
53:15 A. Correct.
53:16 Q. And we were talking about it in the
53:17 context of this meetings in April 2009 where you
53:18 are deciding to go into business --
53:19 A. Sure.
53:20 Q. -- with Mr. Webb. When you ultimately did
53:21 go into business with Mr. Webb, how were those
53:22 loans funded?
53:23 A. Sure. Over the next 10 months, what --
53:24 what was -- eventually Western Sky was able to open
53:25 a bank account with Wells Fargo. And the loan
54:1 funding process was through that Wells Fargo
54:2 account that was owned and operated by Western Sky.
54:3 There were initially two types of employees. There
54:4 were more than two, but for purposes of this --
54:5 this question, there's two types of employees on
54:6 the reservation employed by Western Sky. There is
54:7 the underwriters and there's the funders. The
54:8 process, at that point, was the underwriter would
54:9 review all of the loans that were set to fund on
54:10 that particular day and provide a final approval
54:11 for those loans. And that would entail moving the
54:12 loans from what was called an underwriting queue
54:13 into the funding account, funding queue.
54:14 And then subsequent to that, another

54:15 Western Sky employee who was the funder, would go
54:16 through and perform a final audit and, like I said,
54:17 press the button to move the -- move the loan from a
54:18 -- the funding queue to a funded queue, which would
54:19 instruct Wells Fargo Bank to wire $2600 to this
54:20 person's bank account.

62:15 Q. Okay. What input did you give as far as
62:16 the products that were to be offered?
62:17 A. I'm not sure I gave input. I communicated
62:18 with Mr. Webb, so I would take input from the
62:19 CashCall team, and I was the liaison to Mr. Webb.
62:20 So I would -- I would meet with our people and say,
62:21 "Well, this is what we think the program should
62:22 look like," and I would have conversations with him
62:23 where he would give me his input. And at the end
62:24 of the day, you come up with an agreement.

163:17 Q. So, as far as you recall, was there a
163:18 Katten regulatory opinion issued with the April
163:19 2010 closing?
163:20 A. I'm certain of it, yes.
163:21 Q. And do you know if there were changes to
163:22 that regulatory opinion between -- that are
163:23 captured in this June 23rd, 2010 opinion?
163:24 A. I don't know if there are any changes to
163:25 the actual body of the opinion, but I can tell you
164:1 that I'm pretty certain that the assumptions in

164:2 that initial opinion are different than what I read
164:3 here.
164:4 Q. And what are the differences that you know
164:5 of?
164:6 A. I don't have it in front of me, but I'm
164:7 pretty sure that the assumptions in there were
164:8 actually accurate. I believe that it said Western
164:9 Sky was formed by a member of the CRST and is
164:10 licensed by the CRST as opposed to the language
164:11 here that says that Western Sky was actually
164:12 organized by the CRST, and the second paragraph --
164:13 excuse me, the second sentence where it says, "One
164:14 or more CRST tribal officers is an owner or
164:15 director of Western Sky, and CRST has the ability
164:16 to remove directors." I'm almost certain that that
164:17 also was not in the original opinion.
164:18 Q. So just focusing on Exhibit 18 that you
164:19 have in front of you, under "Assumption of Facts,"
164:20 is there anything inaccurate in that first full
164:21 paragraph?
164:22 A. Yes. Both sentences are entirely
164:23 inaccurate.
164:24 Q. Okay. Would you have reviewed this letter
164:25 from Katten before it was finalized?
165:1 A. I said it was possible, though not likely.
165:2 And it's probable that I didn't because that's
165:3 something that if I had read, I definitely would
165:4 have caught it.

165:5 Q. And do you know why they would have
165:6 included this inaccurate paragraph?
165:7 A. I have no idea. It looks like Claudia
165:8 made a mistake. Katten made a mistake.
165:9 Q. I know you said you don't know if you
165:10 reviewed this June 23rd, 2010 letter. Do you know
165:11 if anyone within your legal department would have
165:12 reviewed it before it was finalized?
165:13 A. No. I would have been the only person to
165:14 review it, if, in fact, anyone reviewed it.
165:15 Q. Do you recall seeing this inaccurate
165:16 paragraph at some point and it being corrected?
165:17 A. I recall seeing it at some point, and I
165:18 recall both Mark Conley and I notified Ms. Callaway
165:19 that she had a factual error in opinion. I don't
165:20 know if it was this one, but I know that both Mark
165:21 and I notified her that she did have a factual
165:22 error and that she needed to amend her next
165:23 opinion, or if it was a draft, amend the final
165:24 opinion to reflect the actual facts. And she in
165:25 essence said, oops, you're right, in response to
166:1 that.

DATED: July 18, 2016

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: */s/ Thomas J. Nolan*
Thomas J. Nolan
*Attorneys for Defendants*