Reuben Camper Cahn, State Bar No. 255158
**BIENERT KATZMAN**
**LITTRELL WILLIAMS LLP**
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile  (949) 369-3701
Email: rcahn@bklwlaw.com

*Attorneys for Defendants*
CashCall, Inc. and J. Paul Reddam

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>      Plaintiff,<br><br>v.<br><br>CASHCALL, INC.; WS FUNDING, LLC; DELBERT SERVICES CORPORATION; and J. PAUL REDDAM,<br><br>      Defendants. | Case No. 2:15-cv-07522-JFW (RAOx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR POST-JUDGMENT DISCOVERY IN AID OF RULE 60(b) MOTION FOR RELIEF FROM JUDGMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Filed concurrently with the Declaration of Reuben Camper Cahn; and [Proposed] Order*<br><br>Assigned to Hon. John F. Walter<br><br><u>Hearing Information:</u><br>Date: September 28, 2026<br>Time: 1:30 p.m.<br>Dept: 7A |

**TO THE COURT, ALL PARTIES HEREIN, AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on September 28, 2026, at 1:30 p.m., or as soon thereafter as may be heard before the Honorable John F. Walter in Courtroom 7A and alongside the co-pending Motion for Relief from the Post-Remand Judgment Pursuant to Fed. R. Civ. P. 60 (Dkt. 416), Defendants CashCall, Inc., and J. Paul Reddam (collectively, "CashCall" or "Defendants") will and hereby do move this Court pursuant to Federal Rules of Civil Procedure 26, 34, and 69(a)(2), and the Court's inherent authority to manage its docket and ensure fundamental fairness, for an order permitting post-judgment discovery directed to: (1) the Consumer Financial Protection Bureau ("CFPB" or "Bureau") as set forth in Exhibit A to the Declaration of Reuben Camper Cahn filed herewith, and (2) the Office of Management and Budget ("OMB") as set forth in Exhibit B to the Declaration of Reuben Camper Cahn filed herewith. This discovery is sought in direct aid of Defendants' concurrently filed Motion for Relief from the Post-Remand Judgment pursuant to Federal Rule of Civil Procedure 60(b)(5) and (6) ("Rule 60(b) Motion").

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Reuben Camper Cahn filed herewith; the pending Rule 60(b) Motion and all supporting declarations and exhibits; all pleadings and records on file in this action; and such other oral and documentary evidence as may be presented at the hearing.

This Motion is made after the conference of counsel under L.R. 7-3.

Dated:  August 13, 2026

Respectfully submitted,

**BIENERT KATZMAN
LITTRELL WILLIAMS LLP**

By: _____
    Reuben Camper Cahn

*Attorneys for Defendants
CashCall, Inc. and J. Paul Reddam*

2

Case No. 2:15-cv-07522-JFW (RAOx)

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR RELIEF
FROM THE POST-REMAND JUDGMENT

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF FACTS ...................................................................................1

    A.    Procedural Posture and the Pending Rule 60(b) Motion............................1

    B.    The Bureau's Formal Repudiation of Its Enforcement Theory ...................2

    C.    The Settlement Negotiations and Their Abandonment................................3

    D.    The Need for Discovery to Support the Rule 60(b) Motion .......................4

III.  LEGAL STANDARD ..........................................................................................4

    A.    Post-Judgment Discovery Is Available in Aid of Rule 60(b) .....................4

    B.    Discovery from Federal Agencies Is Governed by the Federal Rules of Civil Procedure..........................................................................................5

    C.    Discovery Directed at Senior Executive Officials Requires Special Consideration but Is Not Categorically Barred ............................................5

IV.   ARGUMENT .......................................................................................................5

    A.    Post-Judgment Discovery Is Necessary and Appropriate to Support Defendants' Rule 60(b) Motion ..................................................................5

    B.    The Requested Discovery Is Proportional to the Needs of the Case .............7

    C.    The Discovery Requests Do Not Implicate Executive Privilege or Other Recognized Privileges.........................................................................8

    D.    The Bureau's Own Conduct in the Townstone Financial Matter Supports the Propriety of Post-Judgment Discovery Here ...........................8

V.    CONCLUSION.....................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cheney v. United States Dist. Court*,
542 U.S. 367 (2004)..................................................................................5, 8

*Exxon Shipping Co. v. United States Dep't of Interior*,
34 F.3d 774 (9th Cir. 1994) ...........................................................................5

*Horne v. Flores*,
557 U.S. 433 (2009)..................................................................................1, 6

*Karnoski v. Trump*,
926 F.3d 1180 (9th Cir. 2019) ...................................................................5, 8

*Republic of Arg. v. NML Capital, Ltd.*,
573 U.S. 134 (2014)......................................................................................4

*Rutherford v. Baca*,
2009 WL 10653011 (C.D. Cal. Aug. 4, 2009) ..............................................4

**Rules**

Federal Rule of Civil Procedure 26(b)(1) ......................................................7, 8
Federal Rule of Civil Procedure 60(b)........................................................*passim*
Federal Rule of Civil Procedure 69(a)(2) ........................................................4

TABLES OF CONTENTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants' concurrently-filed Rule 60(b) Motion seeks vacatur of the Post-Remand Judgment on grounds that include the Bureau's formal repudiation of the enforcement theory underlying this action, the abandonment of settlement negotiations in bad faith, and changed legal and factual circumstances rendering prospective enforcement inequitable. Central to that motion are factual assertions regarding the Bureau's internal deliberations, communications with the Executive Office of the President, conduct during settlement negotiations, and treatment of comparable enforcement actions—matters to which only the government possesses responsive records. The requested discovery seeks records that will allow Defendants to test, corroborate, and expand upon the factual predicates for Rule 60(b) relief. Post-judgment discovery in aid of Rule 60(b) motions is warranted where, as here, the movant requires access to information uniquely within the opposing party's possession to establish grounds for relief. Indeed, the Supreme Court has observed that a proper Rule 60(b)(5) analysis "should include further factual findings" about whether changed circumstances warrant relief. *Horne v. Flores*, 557 U.S. 433, 461 (2009). This is particularly true where the government party's own conduct and policy reversals form the basis of the equitable claim. The discovery requests attached as exhibits to the Cahn Declaration identify the categories of records maintained by the CFPB and OMB. These requests are narrowly tailored to the legal and factual issues raised in the Rule 60(b) Motion and are essential to Defendants' ability to meet their burden of demonstrating extraordinary circumstances and inequitable prospective enforcement.

### II.    STATEMENT OF FACTS

#### A.    Procedural Posture and the Pending Rule 60(b) Motion

On July 8, 2026, Defendants filed their Notice of Motion and Motion for Relief from the Post-Remand Judgment pursuant to Federal Rule of Civil Procedure 60(b)(5) and (6). The Rule 60(b) Motion seeks vacatur of the February 2, 2023 Post-Remand Judgment, which awarded the Bureau approximately $23 million in additional civil penalties and

1

MEMORANDUM OF POINTS AND AUTHORITIES

$134 million in legal restitution. Defendants have posted a supersedeas bond in excess of $175 million, secured in significant part by Mr. Reddam's personal assets and residences, to stay execution pending appeal. The Rule 60(b) Motion rests on four interlocking developments: (1) Defendants' satisfaction of the original $10,283,886 judgment entered by this Court in January 2018; (2) the Bureau's mid-litigation reversal of its remedial theory to seek legal rather than equitable restitution; (3) intervening Supreme Court decisions that materially altered the doctrinal foundation of the Bureau's liability and remedial theories; and (4) the Bureau's formal repudiation of the enforcement priorities that produced this case, coupled with its bad-faith abandonment of advanced settlement negotiations.

**B.      The Bureau's Formal Repudiation of Its Enforcement Theory**

On April 16, 2025, the Bureau's Chief Legal Officer Mark R. Paoletta issued a memorandum rescinding all prior enforcement and supervision priority documents and announcing that the Bureau would: (1) respect federalism and avoid duplicating state enforcement; (2) decline to pursue supervision under novel legal theories; (3) shift resources away from nonbank enforcement and toward redress of tangible harm by returning money to consumers rather than imposing penalties; and (4) decline to engage in price controls. The Paoletta Memorandum is attached as Exhibit A to the Baren Declaration filed in support of the Rule 60(b) Motion. *See* Dkt. 416-2. Consistent with that revised posture, the Bureau has, since January 2025, voluntarily dismissed enforcement actions or vacated settlements against SoLo Funds, Navy Federal Credit Union, Capital One, Walmart, Zelle, Rocket Homes, Heights Financial, Townstone Financial, and Reliant Holdings. In several of those matters, the Bureau also returned money to defendants that earlier leadership had collected. The conduct alleged against Defendants sits squarely within each of the categories the Bureau has now disclaimed: it is a nonbank action, premised on a self-described "novel legal theory," brought to police state-law usury and licensing limits the Bureau is statutorily forbidden from imposing directly, and parallel to enforcement actions filed by sixteen sovereign states.

2

MEMORANDUM OF POINTS AND AUTHORITIES

### C.    The Settlement Negotiations and Their Abandonment

Beginning in July 2025, Defendants engaged with senior Bureau personnel regarding a consensual disposition of this matter consistent with the Paoletta Memorandum and with the Bureau's contemporaneous treatment of comparable defendants. The parties exchanged written submissions, including a July 25, 2025 letter from Defendants' General Counsel transmitting a proposed framework under which the Bureau would retain the $10.3 million already paid and the parties would jointly seek vacatur of the Post-Remand Judgment under Rule 60(b). On December 11, 2025, Defendants' representatives met with the Bureau's Chief Legal Officer, Mark Paoletta, and his deputy, Victoria Dorfman. Paoletta told Defendants' counsel that he "never would have brought this case," and encouraged submission of a formal proposal. On December 12, 2025, CashCall submitted a proposal to resolve the enforcement matter by creating a $20.3 million fund (inclusive of the $10.3 million already paid) to pay potential victims. Over the ensuing months, the parties negotiated.

On March 4, 2026, CashCall's counsel conveyed to the Bureau a revised settlement framework under which the company would fund a restitution fund of $134 million to pay potential victims. At the conclusion of the claims process, any money not distributed to victims would be returned to the company. The civil penalties would be resolved on the basis of the $10.3 million already paid. *See* Dkt. 416-3 (Declaration of Y. David Scharf ("Scharf Decl.") ¶ 6, Ex. C). The Bureau provisionally accepted a settlement framework. Ms. Dorfman confirmed in emails that high-level settlement terms had been agreed upon and that the Bureau was moving through the approval process for the settlement. *Id*. The Bureau then unexpectedly became unresponsive. On May 1, 2026—the last business day before the date on which the Bureau would have been positioned to move against the collateral securing Defendants' supersedeas bond—Mr. Paoletta informed Defendants' counsel by electronic mail that the Bureau would not proceed with the agreed-upon vacatur and intended instead to commence collection on the Post-Remand Judgment.

MEMORANDUM OF POINTS AND AUTHORITIES

**D.      The Need for Discovery to Support the Rule 60(b) Motion**

The Rule 60(b) Motion asserts that the Bureau's conduct—its formal policy reversal, its engagement in settlement discussions, its provisional acceptance of a settlement framework, and its abrupt abandonment of those negotiations—demonstrates that continued prospective enforcement is no longer equitable and that extraordinary circumstances warrant vacatur. To meet their burden under Rule 60(b), Defendants require access to the Bureau's and OMB's internal records regarding: (1) the Bureau's deliberations concerning Rule 60(b) relief in this and comparable matters; (2) communications between the Bureau, OMB, and the Executive Office of the President concerning this matter and the dismissed or vacated enforcement actions; (3) the Bureau's engagement with Defendants and other similarly situated parties during settlement negotiations; and (4) the factual basis for distinguishing this matter from the actions the Bureau voluntarily dismissed or unwound. These records are uniquely within the government's possession and cannot be obtained from any other source. Without access to these materials, Defendants cannot fully develop the factual predicate necessary to demonstrate the inequity of continued enforcement or the extraordinary circumstances supporting vacatur.

**III.   LEGAL STANDARD**

**A.      Post-Judgment Discovery Is Available in Aid of Rule 60(b)**

Federal Rule of Civil Procedure 69(a)(2) provides that "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in [the Federal Rules] or by the procedure of the state where the court is located." *Republic of Arg. v. NML Capital, Ltd*., 573 U.S. 134, 138-39 (2014). The Supreme Court has stated that the discovery rules governing post-judgment proceedings are "quite permissive," allowing parties to discover "any nonprivileged matter that is relevant to any party's claim or defense." *Id*. at 138.  While Rule 69(a)(2) by its terms authorizes discovery by the judgment creditor, courts have recognized that judgment debtors and movants under Rule 60(b) may also obtain discovery where

4

necessary to support a motion for relief from judgment. *See, e.g.*, *Rutherford v. Baca*, 2009 WL 10653011, at *2 (C.D. Cal. Aug. 4, 2009), *clarified on denial of reconsideration*, 2009 WL 10653010 (C.D. Cal. Sep. 22, 2009) ("Where parties seek to terminate or modify a consent decree or injunction, for example, post-judgment discovery or hearings may be warranted.").

**B.    Discovery from Federal Agencies Is Governed by the Federal Rules of Civil Procedure**

Discovery requests directed to federal agencies are governed by the Federal Rules of Civil Procedure, not by agency housekeeping statutes or internal regulations. *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 777–80 (9th Cir. 1994).

**C.    Discovery Directed at Senior Executive Officials Requires Special Consideration but Is Not Categorically Barred**

While discovery directed at high-level government officials—including the President, Vice President, and senior advisors—implicates separation-of-powers concerns, such discovery is not categorically prohibited. *Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019), *Cheney v. United States Dist. Court*, 542 U.S. 367 (2004). Courts have long recognized that "the President [is] not immune from civil discovery and that courts have permitted discovery directed at the President where he is a party or has information relevant to the issues in dispute." *Karnoski*, 926 F.3d at 1197 (quotation marks omitted). While Courts must consider whether proposed discovery orders "constitute[] an unwarranted impairment of another branch in the performance of its constitutional duties" (*Cheney*, 542 U.S. at 390), where "discovery requests are narrowly tailored to seek evidence that is directly relevant to central issues in the litigation and is not available with due diligence elsewhere, Plaintiffs have met their preliminary burden" of showing that discovery is warranted. *Karnoski*, 926 F.3d at 1205. As discussed *infra*, the discovery requests here clearly meet this standard.

MEMORANDUM OF POINTS AND AUTHORITIES

## IV.   ARGUMENT

### A.   Post-Judgment Discovery Is Necessary and Appropriate to Support Defendants' Rule 60(b) Motion

The discovery sought here is directly relevant to, and necessary for, the adjudication of Defendants' Rule 60(b) Motion. That motion asserts that the Bureau has formally repudiated the enforcement theory that produced this judgment, engaged Defendants in advanced settlement negotiations, provisionally accepted a settlement framework, and then abandoned that framework without explanation—all while dismissing or unwinding enforcement actions against materially comparable defendants. These factual assertions are supported by the declarations filed with the Rule 60(b) Motion, but the government possesses additional records that will confirm, expand upon, or potentially refute those assertions. Post-judgment discovery is appropriate where a Rule 60(b) motion raises factual issues that require development through discovery. Indeed, the Supreme Court has observed that a proper Rule 60(b)(5) analysis "should include further factual findings" about whether changed circumstances warrant relief. *Horne v. Flores*, 557 U.S. 433, 461 (2009).

Here, Defendants' Rule 60(b) Motion rests on the assertion that the Bureau's conduct—its policy reversal, its engagement in settlement discussions, and its treatment of comparable enforcement actions—demonstrates that continued enforcement is no longer equitable and that extraordinary circumstances warrant vacatur. To meet their burden, Defendants require access to the Bureau's internal deliberations concerning Rule 60(b) relief in this and other matters; communications between the Bureau, OMB, and the Executive Office of the President; and records reflecting the Bureau's engagement with Defendants and other similarly situated parties during settlement negotiations. The requested discovery is narrowly tailored to the legal and factual issues raised in the Rule 60(b) Motion. Each of the categories of records identified in the attached discovery requests corresponds directly to a factual predicate for relief:

MEMORANDUM OF POINTS AND AUTHORITIES

- Category 1 seeks records of the Bureau's internal deliberations concerning Rule 60(b) relief in this and comparable matters, which will show whether the Bureau applied consistent standards or treated Defendants differently from other enforcement targets.

- Category 2 seeks communications between the Bureau (or OMB) and the Executive Office of the President concerning this matter and the dismissed enforcement actions, which will illuminate the decision-making process underlying the Bureau's policy reversal and its treatment of Defendants.

- Categories 3 and 4 seek records concerning Victoria Dorfman, a key participant in the settlement negotiations, to test Defendants' assertion that the Bureau acted in bad faith in abandoning the settlement.

- Category 5 seeks communications with and concerning the identified defendants in the dismissed or vacated enforcement actions, which will allow Defendants to demonstrate whether the Bureau applied consistent criteria or selectively targeted Defendants.

- Category 6 seeks records concerning Christina Coll's internal communications regarding this case and other enforcement actions, as well as her communications that mention Russell Vought or Mark R. Paoletta. Ms. Coll is also a key participant in this case and the attendant settlement negotiations, and has been a part of the litigation team in this matter since 2015.

Without access to these records, Defendants cannot fully develop the factual record necessary to meet their burden under Rule 60(b). The information sought is not available from any other source, and the Bureau and OMB are uniquely positioned to produce responsive materials.

**B.      The Requested Discovery Is Proportional to the Needs of the Case**

The requested discovery satisfies the proportionality requirements of Federal Rule of Civil Procedure 26(b)(1) and (2)(C). The Rule 60(b) Motion seeks vacatur of a $157 million judgment that threatens Defendants with financial ruin. The issues at stake—the

equitable application of federal enforcement authority, the government's obligation to act in good faith in settlement negotiations, and the systemic consequences of the Bureau's selective enforcement—are of significant public importance. The discovery requests are narrowly tailored in both scope and time. The CFPB requests seek records created during one discrete period: January 20, 2025 through the date the Bureau commences its search (reflecting the period of the Bureau's policy reversal and settlement negotiations). The OMB requests likewise seek records from January 20, 2025 through the date OMB commences its search (the current policy period). Each category of records is defined by specific search criteria—identified parties, identified enforcement actions, specific time periods, and specific topics directly relevant to the Rule 60(b) Motion. The requests do not seek broad categories of agency records or require extensive manual review; they seek discrete communications and deliberative materials that should be readily identifiable through electronic search. The burden on the agencies is minimal in comparison to the stakes of the Rule 60(b) Motion. The agencies maintain their records in searchable electronic formats, and the search criteria are sufficiently specific to permit efficient retrieval. The importance of the discovery in resolving the issues raised in the Rule 60(b) Motion far outweighs any burden or expense associated with production.

**C.     The Discovery Requests Do Not Implicate Executive Privilege or Other Recognized Privileges**

The requested discovery does not seek communications protected by executive privilege. While some of the requested records may reflect deliberations involving senior Executive officials, as discussed *supra*, the "discovery requests are narrowly tailored to seek evidence that is directly relevant to central issues in the litigation and is not available with due diligence elsewhere." *Karnoski*, 926 F.3d at 1205. Under this standard, Defendants have met their preliminary burden of showing that discovery is warranted. If the CFPB or OMB nevertheless invokes privilege, the privilege must be asserted and substantiated on a document-by-document basis. *Karnoski*, 926 F.3d at 1205. Only then would the court be "forced into the difficult task of balancing the need for information in

8

a judicial proceeding and the Executive's Article II prerogatives." *Id*. at 1204 (quoting *Cheney*, 542 U.S. at 389-90).

### D. The Bureau's Own Conduct in the Townstone Financial Matter Supports the Propriety of Post-Judgment Discovery Here

The Bureau's own recent conduct demonstrates that post-judgment discovery in aid of Rule 60(b) motions is appropriate and that the Bureau recognizes its obligation to produce records when a party seeks to establish grounds for vacatur. On March 26, 2025, the Bureau and Townstone Financial, Inc. filed a joint Rule 60(b)(6) motion for relief from and vacatur of the stipulated final judgment and order in *Bureau of Consumer Financial Protection v. Townstone Financial, Inc., et al.*, Case No. 1:20-cv-04176 (N.D. Ill.), Dkt. 145. In support of that motion, the Bureau submitted a declaration by Dan Bishop, Senior Advisor to OMB and detailed part-time to the CFPB, in which he disclosed the results of an internal review of the Bureau's case files in the *Townstone* matter. *Id.*, Dkt. 145-2.

The Bishop Declaration revealed that "the CFPB lacked a sufficient factual predicate for the seven-year saga to which it subjected Defendant Townstone," that "agency lawyers misled their superiors in enforcement decisions and were affected by animus toward the publicly expressed viewpoints of Townstone's owner," and that the Bureau's investigation commenced and continued without a substantial predicate of actionable facts and targeted Townstone and Townstone President and CEO, Barry Sturner, based on constitutionally protected speech. *Bureau of Consumer Financial Protection v. Townstone Financial, Inc., et al.*, Case No. 1:20-cv-04176 (N.D. Ill.), Dkt. 145-2, ¶ 4.

The Bureau and Townstone jointly moved for vacatur, arguing that "the judgment is inequitable and undermines confidence in the judicial process." *Bureau of Consumer Financial Protection v. Townstone Financial, Inc., et al.*, Case No. 1:20-cv-04176 (N.D. Ill.), Dkt. 145-1 at p. 2. The Bureau's position in *Townstone* establishes that: (1) internal agency records are relevant and material to Rule 60(b) motions alleging government misconduct or changed circumstances; (2) the Bureau recognizes its obligation to review and produce such records when a party seeks vacatur; and (3) the Bureau itself has

9

MEMORANDUM OF POINTS AND AUTHORITIES

invoked Rule 60(b) to correct enforcement actions that, upon internal review, are revealed to have been improvidently brought or maintained.

Here, Defendants seek discovery of the very type of records the Bureau voluntarily reviewed and disclosed in *Townstone*: internal deliberations concerning enforcement decisions, communications with senior officials, and the factual basis for initiating and maintaining enforcement actions. The Bureau cannot contend that such discovery is inappropriate or unduly burdensome when it has recently undertaken precisely such a review and relied on the results to support a joint Rule 60(b) motion.

## V.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order:

1.  Granting Defendants' Motion for Post-Judgment Discovery in Aid of Rule 60(b) Motion for Relief from Judgment;

2.  Directing the Consumer Financial Protection Bureau to produce all records responsive to the discovery requests set forth in the CFPB discovery requests attached as Exhibit A to the Cahn Declaration, within thirty (30) days of the Court's order;

3.  Directing the Office of Management and Budget to produce all records responsive to the discovery requests set forth in the OMB discovery requests attached as Exhibit B to the Cahn Declaration, within thirty (30) days of the Court's order;

4.  Requiring the agencies to assert any claim of privilege on a document-by-document basis and to produce a privilege log describing each withheld document with sufficient specificity to permit Defendants to assess the privilege claim;

5.  Scheduling a status conference to address any disputes concerning the scope of production, privilege assertions, or the adequacy of the agencies' responses; and

6.  Granting such other and further relief as this Court deems just and proper.

///

///

///

MEMORANDUM OF POINTS AND AUTHORITIES

Respectfully submitted,

Dated:  August 13, 2026

**BIENERT KATZMAN
LITTRELL WILLIAMS LLP**

By: _____
Reuben Camper Cahn

*Attorneys for Defendants
CashCall, Inc. and J. Paul Reddam*

MEMORANDUM OF POINTS AND AUTHORITIES