CHRISTINA S. COLL (CA Bar #250712)
christina.coll@cfpb.gov
JOSEPH LAKE (CA Bar #246679)
joseph.lake@cfpb.gov
CONSUMER FINANCIAL PROTECTION BUREAU
445 12th Street, SW
Washington, DC 20024-2101
Telephone: (202) 309-9704
Facsimile: (202) 435-5468

Attorneys for Plaintiff
Consumer Financial Protection Bureau

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

CASHCALL, INC., WS FUNDING, LLC, DELBERT SERVICES CORPORATION, and J. PAUL REDDAM,

Defendants.

CASE NO.: 2:15-cv-07522-JFW (RAOx)

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RELIEF FROM THE POST-REMAND JUDGMENT PURSUANT TO FED. R. CIV. P. 60(B)(5) AND, IN THE ALTERNATIVE, RULE 60(B)(6)**

Date: September 14, 2026
Time: 1:30pm
Court: Hon. John F. Walter
Courtroom 7A

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 2

ARGUMENT AND AUTHORITIES ..... 5

1. CashCall is not entitled to relief under any prong of Rule 60(b)(5) ..... 6

   a) The Amended Judgment against CashCall has not been satisfied, and CashCall is not entitled to relief under the first two prongs of Rule 60(b)(5). ..... 6

   b) CashCall is not entitled to relief under the third prong of Rule 60(b)(5) because the Amended Judgment is not prospective, and it has not shown that the Amended Judgment "is no longer equitable." ..... 6

      (1) There is no "prospective enforcement" of the Amended Judgment, as CashCall is only obligated to pay money ..... 7

      (2) The "intervening change" in law occurred during the course of litigation, and no court was convinced by CashCall's arguments. ..... 9

      (3) The CFPB's exercise of discretion in other matters has no bearing on whether CashCall is entitled to relief under Rule 60(b)(5). ..... 13

      (4) Failed negotiations are not a basis for relief under Rule 60(b)(5). ..... 16

2. CashCall does not meet the standard for Rule 60(b)(6) relief. ..... 22

   a) CashCall does not cite, nor meet, the *BLOM Bank* test ..... 22

   b) CashCall cannot prevail even under the outdated *Phelps/Henson* Factors ..... 23

   c) *Baus* supports the CFPB's position, not CashCall's ..... 24

3. Discovery is inappropriate and immaterial to the outcome of this motion. ..... 24

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

## Cases

*Bellevue Manor Assocs. v. United States,*
165 F.3d 1249 (9th Cir. 1999) .......... 17

*BLOM Bank SAL v. Honickman*,
605 U.S. 204 (2025) .......... 1, 22

*Buck v. Davis*,
580 U.S. 100 (2017) .......... 22

*Casey v. Albertson's Inc.*,
362 F.3d 1254 (9th Cir. 2004) .......... 13

*CFPB v. CashCall,*
35 F.4th 734 (9th Cir. 2022) .......... 3, 4, 5, 10, 11

*CFPB. v. CashCall,*
135 F.4th 683 (9th Cir. 2025) .......... 4, 5, 12

*CFPB v. Townstone*,
350 F.R.D. 32 (N.D. Ill. 2025) .......... 14, 15

*CFPB v. Cmty. Fin. Serv.s Ass'n of Am., Ltd.*,
601 U.S. 416 (2024) .......... 11

*CFPB v. Freedom Debt Relief*,
3:17-cv-06484-EDL (N.D. Cal. July 9, 2019) .......... 8

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984) .......... 11

*Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*,
993 F.3d 880 (D.C. Cir. 2021) .......... 13

*Cmty. Fin. Servs. Ass'n of Am. v. CFPB*,
51 F.4th 616 (5th Cir. 2022) .......... 3

*FTC v. Hewitt*,
68 F.4th 461 (9th Cir. 2023) ....................................................................7, 8
*Gonzalez v. Crosby*,
545 U.S. 524 (2005)....................................................................................22
*Heckler v. Chaney*,
470 U.S. 821 (1985)....................................................................................13
*Henson v. Fidelity Nat'l Fin., Inc.*,
943 F.3d 434 (9th Cir. 2019) .......................................................................22
*Horne v. Flores*,
557 U.S. 433 (2009)..................................................................................6, 7
*In re Pac. Far E. Lines, Inc. v. Wyle*,
889 F.2d 242 (9th Cir. 1989) .......................................................................16
*Jarkesy v. SEC*,
34 F.4th 446 (5th Cir. 2022) ........................................................................12
*Loper Bright Enterprises v. Raimondo,*
603 U.S. 369 (2024) ...............................................................................11, 12
*Morgan v. Heckler*,
779 F.2d 544 (9th Cir. 1985).......................................................................21
*Phelps v. Alameida*,
569 F.3d 1120 (9th Cir. 2009) ..............................................................22-24
*Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship.*,
507 U.S. 380 (1993)....................................................................................22
*Rufo v. Inmates of Suffolk Cnty. Jail*,
502 U.S. 367 (1992)......................................................................................7
*Seila Law LLC v. CFPB,*
591 U.S. 197 (2020)....................................................................................10

*United States v. Baus*,
834 F.2d 1114 (1st Cir. 1987)........17, 24
*Wong as Tr. of Anaplex Corp. Emp. Stock Ownership Plan v. Flynn-Kerper*,
999 F.3d 1205 (9th Cir. 2021)........21

**Statutes**

11 U.S.C. § 362(b)(4)........1
12 U.S.C. § 5536(a)(1)(B)........3
12 U.S.C. § 5563(b)(3)........14
12 U.S.C. § 5565........7, 8
28 U.S.C. § 1961........4

**Other Authorities**

Exec. Order No. 14149........15
Paoletta Memo........13

**Regulations**

12 C.F.R. Part 1075........9

**Rules**

Federal Rule of Evidence 408........1
Federal Rule of Civil Procedure 60(b)........*Passim*

## INTRODUCTION

A Rule 60(b) motion is not an opportunity to relitigate lost arguments or complain about an opponent's unwillingness to settle. But after 13 years of litigation and exhausting every appeal available to them, the CashCall defendants (CashCall)[1] are out of options and facing enforcement of a $185 million judgment. So, in a desperate attempt to avoid paying what they owe, CashCall gathered old, unsubstantiated, and baseless arguments, and shoehorned them into a meandering Rule 60 motion. In its motion, CashCall applies the wrong legal standard for evaluating a Rule 60(b)(5) motion and ignores the Supreme Court's most recent decision emphasizing the exacting standard of Rule 60(b)(6), *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210-13 (2025).

CashCall's motion is not just wrong on the law—it is full of factual assertions and inferences that are simply false, as its own exhibits demonstrate. But even if every fact CashCall alleged in its motion were true, it would not be entitled to relief under Rule 60(b).

CashCall attempts to point to four "interlocking developments" to support its Rule 60 motion. Each fails. The first "development" (CashCall's payment of this Court's now-vacated initial judgment) occurred in 2018 and was a known fact when this Court entered the Amended Judgment. The next two "developments" (the Bureau's request for legal relief, and four unrelated Supreme Court decisions) similarly occurred years ago, and their effect on the underlying litigation has been analyzed in hundreds of pages of briefs, exhibits, and decisions. And the fourth "development" (the "Bureau's acceptance of the settlement framework") did not occur and would not be legally relevant to the Rule 60(b) motion in any event. While the declarations proclaim the acceptance of a settlement

[1] CashCall filed a notice of bankruptcy and stay as to CashCall, Inc. on July 24, 2026. Dkt. No. 417. It is unclear to what extent CashCall believes the stay applies to this enforcement action, *see* 11 U.S.C. § 362(b)(4), but regardless, it does not affect J. Paul Reddam, who is jointly and severally liable for the judgment.

framework, the supporting documents show just the opposite—the Bureau never reached an agreement with CashCall on either the terms or any justification for a joint Rule 60(b) motion for this Court to adjudicate. CashCall also laments that the so-called "Paoletta Memorandum" did not stall the CFPB's resoluteness in pursuing this judgment, but it ignores that the Memorandum merely sets enforcement priorities. Moreover, as part of the Executive Branch, the Bureau retains enforcement discretion, and how it exercises this discretion in some matters does not affect its exercise of discretion in this case.

CashCall cannot meet the requirements to vacate a judgment under Rule 60(b)(5), nor can it demonstrate the extraordinary circumstances needed to prevail under Rule 60(b)(6). As such, the motion is without basis and should be denied.

## FACTUAL BACKGROUND

This Court is familiar with this case from over a decade of presiding over it. The CFPB has prevailed at every stage of litigation. The Bureau sued Defendants in 2013 alleging that they violated the CFPA's prohibition against unfair, deceptive, and abusive acts or practices by collecting and attempting to collect consumer-installment loans that were void or uncollectible because they violated either state-licensing requirements for lenders or state caps on interest rates (the loans carried interest rates ranging from 89 to 169 percent). After a change in venue, on August 31, 2016, this Court granted the Bureau's motion for partial summary judgment, concluding that Defendants engaged in deceptive acts or practices by demanding and collecting payment on debts that consumers did not owe. Dkt. No. 213.

Following a 2017 bench trial, this Court entered judgment in favor of the CFPB and against Defendants and ordered them to pay a civil money penalty of $10,283,886 to the Bureau. Dkt. No. 321 (Original Judgment). Defendants paid that amount in March 2018. Defs.' Mot. for Relief from Post-Remand J. (Motion) at 4, Dkt. No. 416.

The Parties cross-appealed the Original Judgment to the Ninth Circuit. *See*

*CFPB v. CashCall, Inc.* (*CashCall I*), 35 F.4th 734 (9th Cir. 2022). The Ninth Circuit agreed with this Court that CashCall had engaged in an "unfair, deceptive, or abusive actor of practice," in violation of 12 U.S.C. § 5536(a)(1)(B), by attempting to collect interest and fees to which it was not legally entitled. *CashCall I*, 35 F.4th at 743-47. The Ninth Circuit also held that the Original Judgment's denial of restitution and calculation of penalty rested on legal error, so the Court vacated the judgment and remanded it for further proceedings. *Id.* at 749.

Specifically, in *CashCall I*, the Ninth Circuit panel wrote: "After attracting unwanted attention from regulators, [CashCall] sought to avoid state usury and licensing laws by using an entity operating on an Indian reservation." *Id.* at 738. That entity "was formed for the purpose of making loans for CashCall, and it amounted to little more than a shell for CashCall's operations." *Id.* at 744-45. But, as CashCall was repeatedly warned, *see id.* at 748, the loans it made were void or uncollectible under the laws of more than a dozen states, *id.* at 745-46. As the Ninth Circuit noted, CashCall did not "dispute that it demanded payment from consumers under the pretense that the consumers had a valid obligation to pay." *Id.* at 746. Because CashCall "led borrowers to believe that they had an obligation to pay, when in fact under their States' laws they did not," the Ninth Circuit concluded that CashCall's conduct "clearly" violated the CFPA. *Id.* at 747.

Following remand, the parties filed briefs to address how the Court should implement the Ninth Circuit's mandate. *See* Dkt. No. 345. CashCall also filed a motion to enjoin the CFPB's prosecution of this action based on the Fifth Circuit's decision in *Community Financial Services Ass'n of America v. CFPB*, 51 F.4th 616 (5th Cir. 2022) (holding that the Bureau's funding mechanism violated the Appropriations Clause). This Court again ruled in favor of the CFPB, denying CashCall's motion to enjoin the CFPB and accepting the CFPB's proposed civil-penalty amount and restitution calculation. Feb. 10, 2023 Order, Dkt. No. 372.

The February 21, 2023 Amended Judgment (Amended Judgment) orders CashCall to pay an additional $22,992,378 civil money penalty, $134,058,600 restitution, and post-judgment interest[2] pursuant to 28 U.S.C. § 1961. Dkt. No. 374. The Amended Judgment does not include injunctive provisions.

The Parties filed a joint stipulation regarding a stay pending appeal (Joint Stipulation), Dkt. No. 405, and on July 19, 2023, this Court entered an order staying execution of the Amended Judgment "pending appeal to the Ninth Circuit Court of Appeals, any petitions for re-argument or rehearing, a writ of certiorari, any review by the United States Supreme Court, and any further appellate proceedings related to the Amended Judgment." Dkt. No. 406 (Stay Order). The Stay Order was supported by the parties' Joint Stipulation, which outlined the agreement on terms of a security package consisting of a pledged account initially funded with over $124 million and two deeds of trust for properties appraised in 2023 for a total value of over $40 million. Joint Stip. at 2. The Joint Stipulation stated that the parties "believe that the agreed-upon security package provides sufficient security for the unpaid amount of the Amended Judgment throughout the appeals process." *Id.* The Stay Order was to remain in effect for 60 days after the conclusion of all appellate proceedings related to the Amended Judgment. At that point, if the CFPB prevailed, the Joint Stipulation and its exhibits detailed how the CFPB could collect on the Amended Judgment, including giving the CFPB the right to have the pledged account's assets transferred to its account. Joint Stip. Ex. 1., Pledged Account Pledge Agreement at ¶ 8, Dkt. No. 405-1.

Again CashCall appealed and lost. *See* *CFPB. v. CashCall*, 135 F.4th 683 (9th Cir. 2025) (*CashCall II*). After assuming without deciding that CashCall had a jury-trial right, the Ninth Circuit held that CashCall waived its right during the initial district-court proceedings. *Id.* at 689. The court also found that the Bureau's position on restitution

---

[2] As of this filing, $29,026,812 of post-judgment interest has accrued.

had "remained consistent throughout this case." *Id.* at 692. Citing the correctness of the district court's ruling, the Ninth Circuit stated: "whether the relief being sought was equitable or legal depends not on the [Bureau's] characterization, but rather on the nature of the underlying remedies sought." *Id.* (internal citations omitted). The court held: "[H]ere, the nature of the remedy is—and always has been—legal restitution: a money judgment to compensate borrowers for the money that CashCall collected but borrowers did not owe." *Id.* at 692-93. The Ninth Circuit also held that CashCall's other challenges to the Amended Judgment lacked merit. *Id.* CashCall sought en banc review of *CashCall II*, which the court denied. *Id.* at 686-87. Next, CashCall filed its petition for writ of certiorari on September 19, 2025. CashCall asked the Supreme Court to decide whether a claim for legal restitution triggers the right to a jury trial and whether they could have waived that right, stating that the questions "[c]ry [o]ut" for the Court's resolution. Pet. for Writ of Cert. at 31, *CashCall, Inc. v. CFPB*, No. 25-343 (Sep. 19, 2025).

On March 2, 2026, the Supreme Court denied CashCall's petition for a writ of certiorari. Docket No. 25-343. With that denial, CashCall exhausted its appeal rights. The Stay Order expired on May 1, 2026—60 days after the Supreme Court's decision. *See* Stay Order.

On July 8, 2026, CashCall filed this motion, seeking relief from the Amended Judgment. Dkt. No. 416.

## ARGUMENT AND AUTHORITIES

Federal Rule of Civil Procedure 60(b) permits a district court to grant relief from a final judgment in limited circumstances. *CashCall* claims that it is entitled to vacatur of the Amended Judgment under Rule 60(b)(5) on "three independent grounds" and under Rule 60(b)(6) because "extraordinary circumstances" justify relief. CashCall fails to establish entitlement to relief under either subsection of the rule.

**1. CashCall is not entitled to relief under any prong of Rule 60(b)(5)**

Rule 60(b)(5) allows a party to obtain relief from an order if "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). CashCall does not qualify for relief under any of those criteria.

a) The Amended Judgment against CashCall has not been satisfied, and CashCall is not entitled to relief under the first two prongs of Rule 60(b)(5).

While its argument is far from clear, CashCall appears to claim that the fact that it paid the Original Judgment somehow relieves it from its obligations under the Amended Judgment. CashCall cites no authority that supports this proposition. Under CashCall's apparent theory, any time a defendant pays a judgment while an appeal is pending (as it is required to do absent a stay), and an appellate court vacates that judgment and remands, the defendant is automatically relieved from any subsequent judgment. *See* Mot. at 11 (describing CashCall's interpretation as "textual and self-executing"). This is nonsense.

The Amended Judgment is the one presently at issue. Aside from giving CashCall credit toward the Amended Judgment penalty, Am. J. at ¶ 2, Dkt. No. 374, the $10 million penalty CashCall paid in 2018 has no bearing on these proceedings.

To the extent CashCall asserts that it is entitled to relief because the Amended Judgment "rests on a remedial theory the Bureau disclaimed," Mot. at 11-12, that claim is addressed below at 1(b)(3) and is meritless.

b) CashCall is not entitled to relief under the third prong of Rule 60(b)(5) because the Amended Judgment is not prospective, and it has not shown that the Amended Judgment "is no longer equitable."

The third prong of Rule 60(b)(5) allows modification or vacatur of a judgment involving prospective relief if a significant change in factual conditions or law renders continued enforcement detrimental to the public interest. *Horne v. Flores*, 557 U.S. 433

(2009). The moving party bears the burden of establishing that changed circumstances warrant relief. *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992).

CashCall cannot meet its burden. First, as the Ninth Circuit has held, an order merely requiring the payment of money is not "prospective" in nature. The analysis stops there.

But even if there were prospective requirements at issue, there is no basis for relief. CashCall's claimed "intervening" changes in the caselaw all happened during the pendency of this litigation. That is, CashCall had the opportunity to and indeed did brief these intervening changes—unsuccessfully—to the Ninth Circuit and the Supreme Court. Moreover, CashCall's failed attempt to convince the Bureau to excuse it from paying the Amended Judgment is not grounds for finding the Judgment no longer equitable.

(1) There is no "prospective enforcement" of the Amended Judgment, as CashCall is only obligated to pay money.

Defendants' argument that the Amended Judgment subjects them to "prospective" relief is simply wrong. In *FTC v. Hewitt*, the Ninth Circuit considered whether a defendant who was ordered to pay an "equitable monetary judgment" under section 13(b) of the FTC Act could avoid the final judgment following a Supreme Court decision that held the FTC was no longer entitled to such relief. 68 F.4th 461 (9th. Cir. 2023).[3] The court noted that Rule 60(b)(5) authorizes relief from a judgment only where "applying it prospectively is no longer equitable," and held that an unpaid monetary judgment did not qualify as "prospective." *Id.* at 466-67. In so holding, the court reasoned that paying the money awarded did not "compel Hewitt to perform or restrain him from performing a future act within the meaning of Rule 60(b)(5)." *Id.* at 467 (citation modified). The court also held that the challenged judgment, "which involves no court supervision of Hewitt other than ordering him to pay the money awarded," did not involve "supervision of

[3] Here, there has been no change in the relief available to the CFPB under the Consumer Financial Protection Act, 12 U.S.C. § 5565. Accordingly, CashCall's argument is even weaker than the defendant's argument in *Hewitt*.

changing conduct or conditions" within the meaning of Rule 60(b)(5). *Id.*

The Amended Judgment is a monetary judgment, currently unpaid, and therefore does not qualify as "prospective." *See Hewitt*, 68 F.4th at 466-67. Because the Amended Judgment only requires payment of money, it neither compels CashCall to perform nor restrains Defendants from performing a future act within the meaning of Rule 60(b)(5). *See id.* at 467. The Amended Judgment does not involve court supervision of CashCall, so it does not involve "supervision of changing conduct or conditions." *Id.*

In an attempt to distinguish this matter "from the simple 'order to pay money' at issue in *Hewitt*," Mot. at 13, CashCall manufactures without explanation or citation "prospective" aspects of this judgment. CashCall refers to "a court-supervised distribution process," "claims administration," "ongoing reporting obligations to the Bureau and the Court," and "[t]he presence of ongoing court-supervised distribution machinery." Mot. at 12-13. The Amended Judgment does not include any of these requirements or concepts, and CashCall does not cite to any document in this litigation to support the assertions. Instead, CashCall refers to an unrelated settlement between the CFPB and a different defendant. Mot. at 12-13 (citing *CFPB v. Freedom Debt Relief*, Stipulated Final J. & Order, No. 3:17-cv-06484-EDL (N.D. Cal. July 9, 2019) (Dkt. No. 91)). The CFPB's settlement agreements with other defendants have no effect on whether the Amended Judgment here contains "prospective" relief. The Amended Judgment contains only money judgments against Defendants, *see* Dkt. No. 374, and *Hewitt* makes clear that money judgments are not prospective relief.

Although it does not explain the legal significance, CashCall speculates that some consumers "have died, relocated, or become untraceable," and thus "it is virtually certain that a substantial portion of the $134 million fund will never be claimed" or that "persons not entitled to recover" will make "fraudulent and erroneous claims." Mot. at 13. CashCall does not explain how these assertions, even if true, would convert the judgment

into one with prospective requirements. Regardless, the CFPB (as well as other federal regulators, such as the FTC) are well accustomed to administering redress to consumers for harms that occurred years—or even more than a decade—earlier.[4] And far from the free-for-all that CashCall imagines, the Bureau has standard and established processes for administering redress that are designed to ensure that eligible—and only eligible—harmed consumers are made whole.[5] These processes do not involve any court supervision and do not convert the Amended Judgment into one involving prospective relief. Once CashCall pays the total amount due under the Amended Judgment, it will have met its obligations under that judgment.

(2) The "intervening change" in law occurred during the course of litigation, and no court was convinced by CashCall's arguments.

Even if the judgment involved prospective relief, CashCall cannot establish that it would be inequitable to enforce the judgment. CashCall first attempts to argue there has been an intervening change it law. It argues that "three doctrinal pillars" have been

---

[4] Currently, there are 27 cases in which the Bureau is administering millions of dollars in redress to hundreds of thousands of consumers. *See* CFPB, Payments to Harmed Consumers by Case, *available at* https://www.consumerfinance.gov/enforcement/payments-harmed-consumers/payments-by-case/#ongoing-cases. For example, in one case, the Bureau is administering redress to more than 100,000 consumers harmed since 2011. *See CFPB v. U.S. Equity Advantage, Inc.*, No. 2020-BCFP-0022 (Nov. 20, 2020). In another, the Bureau is administering redress to consumers harmed between 2011 and 2015. *See CFPB v. Universal Debt & Payment Sols., LLC*, No. 1:15-cv-0859 (N.D. Ga.). In a third, the Bureau is administering redress to consumers harmed between 2012 and 2015. *See CFPB v. SMART Payment Plan, LLC*, No. 2020-BCFP-0020 (Nov. 2, 2020). The list goes on.

[5] *See*, *e.g.*, 12 C.F.R. Part 1075 (regulations "establish[ing] procedures and guidelines for allocating funds from the Consumer Financial Civil Penalty Fund to classes of victims and distributing such funds to individual victims"); CFPB, Privacy Impact Assessment: Civil Penalty Fund and Bureau-Administered Redress Program v.3 (Nov. 2024) (discussing consumer information collected to provide Bureau-administered redress to consumers), *available at https://files.consumerfinance.gov/f/documents/cfpb_civil-penalty-fund_pia_2024-11.pdf*.

"materially altered" since this Court entered the Amended Judgment. Mot. at 14. This is nothing more than an attempt to relitigate failed arguments it has already presented to this Court, to the Ninth Circuit, and to the Supreme Court. CashCall misstates the relevance of the four Supreme Court decisions and ignores that it did raise or could have raised these decisions in this long-running litigation.

*Seila Law*

*Seila Law LLC v. CFPB* addressed the constitutionality of the CFPA's for-cause Director-removal provision. 591 U.S. 197 (2020). The Supreme Court granted certiorari in *Selia Law* on October 18, 2019, while the Original Judgment was on appeal to the Ninth Circuit. On October 21, 2019, the CFPB wrote to the Ninth Circuit clerk to inform the Court of that development, noting that CashCall "raised a similar constitutional challenge in their cross-appeal." *CFPB v. CashCall, Inc.*, Nos. 18-55407, 18-55479, Letter from CFPB Plaintiff-Appellant/Cross-Appellee, October 21, 2019, Dkt. No. 58. Later the same day, the Ninth Circuit withdrew submission of the appeal and stayed further proceedings pending the Supreme Court's decision in *Seila Law*. *CFPB v. CashCall, Inc.*, Nos. 18-55407, 18-55479, Order, October 21, 2019, Dkt. No. 59.

The Supreme Court issued its decision on June 29, 2020, and held that having a single director only removable "for cause" violated the Constitution's separation of powers. *Seila Law*, 591 U.S. 197. But the Court also held that the statute's language about the CFPB director was severable from the rest of the statute, and the agency continued operating with a director removable by the President at will. *Id.* at 235. Upon the Ninth Circuit's order, the parties submitted supplemental briefs following the *Seila Law* decision. And in *CashCall I*, the Ninth Circuit directly resolved the issue, holding that *Seila Law* did not affect the validity of the CFPB's enforcement action and litigation in this case. 35 F.4th at 743.

*CFPB v. CFSA*

In *CFPB v. Community Financial Services Ass'n of America, Ltd.*, 601 U.S. 416 (2024) (CFSA), the Supreme Court held that the CFPB's funding mechanism—in which Congress allocated funds from the combined earnings of the Federal Reserve System rather than through periodic appropriations—is constitutional under the Appropriations Clause. CashCall first articulated its theory that the Bureau's funding structure violated the Appropriations Clause while the first Ninth Circuit appeal was pending but waited until long after oral argument to raise the issue. The Ninth Circuit addressed CashCall's delayed argument:

> [O]ffering a new theory months after oral argument—and more than eight years after this litigation first began—CashCall asks us to hold that the Bureau's structure violates the Appropriations Clause of the Constitution. CashCall forfeited that argument twice over by failing to present it to the district court or in its briefing before us on appeal.

*CashCall I*, 35 F.4th at 743 (internal citations omitted). The Ninth Circuit's *CashCall* decision has already resolved Defendants' position as to the relevance of the Appropriations Clause arguments. And regardless, in *CFSA* the Supreme Court held that the Bureau's funding mechanism is constitutional. That decision has no relevance here.

*Loper Bright*

In *Loper Bright Enterprises v. Raimondo*, the Supreme Court addressed how courts should consider agency interpretations of "ambiguous statutory provisions[.]" 603 U.S. 369, 374 (2024). Broadly speaking, the Court held that courts should not give deference to agency statutory interpretations, overturning *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Defendants' suggestion that *Loper Bright* calls into question the underlying judgment in this case, however, is puzzling, as this Court did not rely on, or even refer to, *Chevron* deference in its 2016 liability decision,

and this matter never turned on interpretations of ambiguous statutory language. And Defendants had the opportunity to raise any arguments related to *Loper Bright* previously, including in their September 19, 2025 certiorari petition, but failed to do so.

*Jarkesy*

In *SEC v. Jarkesy*¸ the Supreme Court analyzed in which situations the Seventh Amendment guarantees the right to a jury trial. 603 U.S. 109 (2024). CashCall cited the underlying circuit-court decision, *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), in its July 26, 2023 Ninth Circuit appeal brief. Br. for Appellants at 23, *CFPB v. CashCall*, No. 23-55259 (9th Cir. 2023). But the Ninth Circuit had the benefit of the Supreme Court's decision when it issued its *CashCall II* decision in 2025 and cited it. 135 F.4th at 689. Importantly, the Ninth Circuit's *CashCall II* decision did not decide whether CashCall had a right to a jury trial: "[i]nstead, assuming *without deciding* that CashCall had a Seventh Amendment right to a jury trial, [the Court] conclude[d] that it waived that right." *Id.* (emphasis added). So the *Jarkesy* analysis of whether a jury right attaches was never relevant to CashCall's litigation losses. CashCall again raised the *Jarkesy* decision in its unsuccessful certiorari petition. Pet. for Writ of Cert. at 1, 14, 15, 17, 31, and 32, *CashCall, Inc. v. CFPB*, No. 25-343 (Sep. 19, 2025).

CashCall argues that these "intervening" case decisions are a "significant change…in law for purposes of Rule 60(b)(5)" but cites only one Rule 60(b)(5) case in the entire section. Mot. at 16 (citing *Horne*, 557 U.S. at 447). In *Horne*, the Court identified four "factual and legal changes that may warrant the granting of relief from the judgment." 557 U.S. at 459. But each of these changes occurred *after* enforcement of the declaratory judgment's injunctive provisions.[6] *Id.*

The Ninth Circuit has made clear that Rule 60(b) is not to be used to "relitigate" an

[6] The *Horne* court also emphasized "the dynamics of institutional reform litigation differ from those of other cases." 557 U.S. at 448. This case is not one of institutional reform but of government action against a private actor.

issue central to the merits of a case, as "the merits of a case are not before the court on a Rule 60(b) motion." *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1261 (9th Cir. 2004) (affirming the denial of a motion under Rule 60(b)(1) and (3)). Where, as here, a party has had every opportunity to argue the effect of new case law and has continued to lose, the party cannot relitigate those same arguments in a Rule 60(b) motion. *Id*.

(3) The CFPB's exercise of discretion in other matters has no bearing on whether CashCall is entitled to relief under Rule 60(b)(5).

CashCall also argues that the Bureau's exercise of discretion in unrelated matters somehow makes enforcing the Amended Judgment here inequitable, pointing to a recent CFPB priorities memo (the "Paoletta Memo") and the CFPB's recent actions in certain other enforcement matters. It argues that these statements and actions by the CFPB should somehow disrupt the agency's enforcement of the Amended Judgment in this case. But CashCall fails to cite any authority (because none exists) for its proposition that the Bureau's exercise of enforcement discretion in other matters affects its exercise of discretion in this case. As the Supreme Court and other courts have recognized, it is a fundamental principle that executive agencies, such as the Bureau, have discretion in their handling of enforcement actions. *See* *Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985) ("The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities."); *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 993 F.3d 880, 888 (D.C. Cir. 2021) ("Civil enforcement actions are presumptively committed to the agency's discretion, consistent with the Article II power to take care of faithful execution of the laws."). This long-standing principle should end this line of argument.

CashCall seems to conflate an agency setting priorities with an agency abandoning legal theories. The Paoletta Memo sets forth the areas where the CFPB will focus its resources going forward and makes no statement regarding the validity of any legal

theory. Contrary to CashCall's assertions concerning the Paoletta Memo describing the "CashCall theory" as "novel," Mot. at 14, it merely says the Bureau will not pursue novel legal theories and says nothing of the legal theory underlying this or any other matter.

In any event, this matter is easily distinguishable from the other Bureau matters cited by CashCall. The Bureau has litigated this case for more than a decade, pursuing it through every possible appeal, concluding with the Supreme Court's denial of certiorari, and obtained a final judgment.

The matters CashCall identified for comparison involve very different procedural histories, with *none* involving a final judgment: *SoLo Funds, Inc.* (lawsuit voluntarily dismissed less than a year after filing), *Capital One* (lawsuit voluntarily dismissed six weeks after filing), *Walmart* (lawsuit voluntarily dismissed less than five months after filing), *Zelle* (lawsuit voluntarily dismissed less than three months after filing), *Rocket Homes* (lawsuit voluntarily dismissed less than two months after filing), *Heights Financial* (lawsuit voluntarily dismissed a year and a half after filing and without any court rulings), *Reliant Holdings* (lawsuit voluntarily dismissed seven months after filing), *Navy Federal Credit Union* (an administrative, not judicial, consent order, entered less than eight months earlier, and terminated pursuant to statutorily granted discretion of the Director under 12 U.S.C. § 5563(b)(3)). CashCall referred to *In the Matter of Enova International, Inc.* as "a Bureau enforcement action similar to its action in CashCall," Mot. at 18, but did not identify any similarities and failed to acknowledge that the Enova matter was an administrative consent order entered without litigation and that Enova already paid the money it owed under the order.

Nor is *CFPB v. Townstone* similar. The CFPB filed a joint motion to vacate the parties' settlement agreement. *Bureau of Consumer Fin. Prot. v. Townstone Fin., Inc.*, Mot. to Set Aside J. Under Rule 60(b), No. 1:20-cv-4176 (N.D. Ill. Mar. 26, 2025) (Dkt. No. 145). In that case, the CFPB and Townstone negotiated a stipulated final judgment and

order following the Seventh Circuit's remand to the district court after appeal. *Townstone*, Stip. Final J. & Order, No. 1:20-cv-4176 (N.D. Ill. Nov. 7, 2024) (Dkt. No. 138). After the President issued an Executive Order requiring agency heads to "identify and take appropriate action to correct past misconduct by the Federal Government related to censorship of [constitutionally] protected speech," Exec. Order No. 14149 § 2(d), 90 Fed. Reg. 8,243 (Jan. 20, 2025), the CFPB identified that the litigation targeted Townstone based on constitutionally protected speech. *Townstone*, Mem. in Supp. of Mot. to Set Aside J. Under Rule 60(b) at 2, No. 1:20-cv-4176 (N.D. Ill. Mar. 26, 2025) (Dkt. No. 145-1). The CFPB then moved with Townstone to vacate the parties' negotiated settlement. Unlike in *Townstone*, where the CFPB disavowed the decision to pursue this case, at no point did the CFPB state that it would have never brought this case, as CashCall claims. *See* Mot. at 16-17. Notably, the *Townstone* court found that the parties had *not* "met their substantial burden of showing an extraordinary circumstance that justifies vacatur of the final judgment and consent decree," *Townstone*, 350 F.R.D. 32, 38 (N.D. Ill. 2025), and the court denied the parties' Rule 60(b)(6) motion. *Id*. at 39.

CashCall also repeatedly states that "[i]n several matters, the Bureau returned funds previously collected." Mot. at 18. *See also* Mot. at 2, 6. Yet, CashCall cites no examples of these matters. There are, in fact, none. The Bureau did not return funds it previously collected in any cases.

CashCall did not—because it cannot—identify a single other matter that the CFPB litigated through multiple administrations and all the way to the Supreme Court but now has recently dismissed. The CFPB pursued this case at every stage of litigation for more than a decade and stands behind it now to enforce the Amended Judgment. The Bureau has also continued with other cases, both at district court and appellate level.[7] And it is

[7] *See, e.g.*, *CFPB v. FDATR*, No. 25-2607 (7th Cir.); *CFPB v. Nationwide Biweekly Admin.*, No. 24-5940 (9th Cir.); *CFPB v. Experian Info. Sols., Inc.*, No. 8:25-cv-00024 (C.D. Cal.); *CFPB v. Noh*, No. 8:21-cv-00488 (C.D. Cal.); *CFPB v. StratFS, LLC*, No.

monitoring compliance with multiple consent orders, both judicial and administrative, notwithstanding the entities' requests for their termination. This is quintessential exercise of enforcement discretion by the Executive Branch.

(4) Failed negotiations are not a basis for relief under Rule 60(b)(5).

CashCall next argues that the so-called settlement conversations between the CFPB and CashCall "creat[e] grounds for equitable estoppel."[8] Mot. at 20. That is baseless for four separate reasons: (1) CashCall fails to cite any legal authority that supports its position; (2) while the parties discussed a potential Rule 60(b) motion seeking to modify the judgment for this Court to adjudicate, CashCall's factual assertions about having reached agreement on the main terms are flat out wrong, which is obvious from the face of its filings; (3) CashCall has failed to allege any cognizable injury, a requirement for equitable estoppel; and (4) CashCall has failed to allege any affirmative misconduct, a requirement for equitable estoppel against the government.

*First*, CashCall admits that "[s]tanding alone, an abandoned negotiation does *not* provide a Rule 60(b)(5) ground," Mot. at 20 (emphasis added), although the case it cites does not even involve Rule 60(b)(5) or refer to settlement negotiations. *See In re Pac. Far E. Lines, Inc. v. Wyle*, 889 F.2d 242 (9th Cir. 1989). CashCall also does not cite any cases where abandoned settlement negotiations serve as a ground for Rule 60(b)(5) relief.

The "accord" citations CashCall includes at the end of its Rule 60(b)(5) section similarly do not support the statement they follow.[9] Nor is CashCall helped by *United*

---

1:24-cv-00040 (W.D.N.Y.); *CFPB v. Portfolio Recovery Assocs., LLC*, No. 2:23-cv-110-JKW-DEM (E.D. Va.); *CFPB v. Manseth*, No. 1:22-cv-29 (W.D.N.Y.).

[8] It is unclear what CashCall is seeking to estop the Bureau from doing or how estoppel relates to a motion under Rule 60(b).

[9] CashCall states that the CFPB's alleged abandoned settlement "is the asymmetric and unexplained governmental conduct equity will not countenance and that the courts have considered probative when evaluating Rule 60(b) relief." Mot. at 22. The *Horne* citation discusses the importance of Rule 60(b)(5) in "institutional reform litigation" notes that "[f]ederalism concerns are heightened when…a federal court decree has the effect of

*States v. Baus*, where the parties settled, and the government allegedly materially breached the settlement agreement that had been incorporated into the judgment entered by the court. Mot. at 22 (citing 834 F.2d 1114 (1st Cir. 1987)). This case does nothing to advance CashCall's argument that it is due relief under Rule 60(b)(5).

*Second*, putting aside that abandonment of settlement negotiations is not legally relevant for the Rule 60(b)(5) motion, and whether such "compromise" negotiations are admissible under Federal Rule of Evidence 408, documents attached to the Motion belie CashCall's claim of any agreement. CashCall refers to those conversations throughout their briefing, *see, e.g.*, Mot. at 1, 2, 14, 20-22, as "settlement" negotiations that would conclude the matter. By contrast, the CFPB consistently took the position that any proposed resolution would need this Court's approval, so the CFPB centered its discussions around a potential Rule 60(b) motion, which the CFPB would consider joining. Indeed, in multiple emails that are attached to CashCall's declarations, the CFPB displayed concern about CashCall's failure to address at all, let alone convincingly, the issues that this Court would need to resolve on a Rule 60(b) motion.[10] Thus, the CFPB

---

dictating state or local budget priorities. 557 U.S. at 447-48. No such issues are present here.

*Bellevue Manor Assocs. v. United States* was a case in which a group of private landlords sought a declaratory judgment related HUD's method for calculating federal rent subsidies. 165 F.3d 1249 (9th Cir. 1999). Neither the facts nor the holding in *Bellevue* support CashCall's assertion about settlement negotiations.

[10] *See, e.g.*, Scharf Decl. Ex. C, Dkt. No. 416-3 (An April 1, 2026 email from a CFPB official to CashCall's counsel: "[Y]our proposed motion uses a wrong legal standard throughout, as if there were no final judgment and the case were still at the prosecution/enforcement stage. Because this is a final order, any request to modify would have to satisfy Rule 60(b). Under Rule 60(b)(5), relief is available only when applying a judgment prospectively is no longer equitable, with courts typically requiring a showing of significant change either in factual conditions or in law. Rule 60(b)(6) requires 'extraordinary circumstances.'"); Scharf Decl. Ex. D, Dkt. No. 416-3 (A May 1, 2026 email from a CFPB official to CashCall's counsel: "At this procedural stage, the

made clear that, even if the parties had agreed on terms, that agreement would need to be approved by this Court. And, in the Bureau's view, a compelling Rule 60(b) motion was not possible. As explained below, the parties never agreed to proposed modifications, nor how to justify them to the Court.

Contrary to CashCall's assertion that "the Bureau provisionally accepted a complete settlement framework on terms it itself prescribed," Mot. at 20, CashCall's exhibits demonstrate that, while government officials allowed CashCall to plead its case and propose alternative resolutions, the parties never agreed to terms. Even CashCall's own presentation of facts fails to show any agreement. At most, CashCall claims the parties were "actively discussing terms of a settlement," there was a "provisional[] accept[ance of] a settlement framework," and an agreement on "high-level settlement terms," albeit all without any final approvals. *See* Mot. at 2, 7, 21-22. But frameworks and provisional acceptance—assuming they occurred (and they did not)—without final approval, are not an agreement.

CashCall's own presentation of facts shows that Defendants consistently pursued negotiations, while the Bureau was unenthusiastic in its response,[11] and, more importantly, no agreement on key terms was reached. Even after the Bureau engaged with CashCall, CFPB personnel repeatedly told CashCall there was no agreement. After a December 2025 meeting, a CFPB official emailed CashCall on January 20, 2026, stating

---

appropriate vehicle for modifying the judgment would be a motion under Rule 60, which would require a district court judge to approve it. That would be the same district court judge who presided over this case for over a decade and issued adverse rulings in this matter. We do not believe there is a credible basis for such a motion for several reasons, which we have also discussed with you at various points.").

[11] Baren declared that "repeated calls" to the CFPB's Chief Legal Officer and Director "were ignored," Baren Decl. ¶ 2, Dkt. No. 416-2, and CashCall "contacted various other officials in hopes of getting [Bureau leaders] to agree to a meeting," *id*. ¶ 3. After a July 2025 meeting with CFPB staff, "the CFPB went radio silent." *Id*. ¶ 9. After a December 2025 meeting and a follow-up email exchange, "the CFPB went silent"; "several calls and e-mails" to CFPB officials "all were ignored." *Id*. ¶ 15.

"[a]t this time, we do not believe that additional efforts at settlement would be productive." Baren Decl. Ex. F. On March 4, 2026, CashCall's counsel acknowledged that the parties did not have agreement on terms. Scharf Decl. Ex. B ("I appreciate that you can't go to the Director until we have a full agreement on terms."). The March 5, 2026 email from a CFPB official acknowledged the incompleteness of CashCall's proposal, stating: "[w]e look forward to hearing the rest of the proposal and then we can engage on the substance of all terms." *Id*. On March 30, 2026, a CFPB official wrote to CashCall, after reviewing the proposed Rule 60(b) motion: "Upon the initial review, there are issues that we are seeing both with the factual description and with the legal arguments." Scharf Decl. Ex. C.

On April 1, 2026, a CFPB official emailed CashCall stating that its proposed claims process was "a redline for [the CFPB]" and was "not acceptable," that CashCall had used the "wrong legal standard throughout" its proposed motion, and concluded that it appeared the parties might be "at an impasse, and the judgment should be effectuated." Scharf Decl. Ex. C. The email also explained: "On the waiver of post-judgment interest, [CashCall's proposal] does not acknowledge that the court expressly ordered post-judgment interest from the effective date of the judgment…. Nor does it grapple with the fact that victims have waited 13 years for their redress and the post-judgment interest's function in making them whole." *Id.*

That same email makes clear that the parties disagreed on the civil penalty amount, with the CFPB's official writing: "[CashCall's] discussion of reducing the penalty does not address that the penalty was imposed following a remand or that CashCall did not appeal the penalty. We anticipate the judge would be skeptical about reducing the penalty given the history, but the draft does not even discuss the history, much less justify a modification." *Id.* While CashCall implies in its motion that the Bureau considered

reducing the penalty *to* $10 million,[12] the rest of the brief and exhibits demonstrate that, at most, the Bureau considered supporting a reduction of the penalty *by* $10 million.[13]

Ending the discussions, on May 1, 2026, a CFPB official wrote to CashCall, "At this procedural stage, the appropriate vehicle for modifying the judgment would be a motion under Rule 60, which would require a district court judge to approve it…. We do not believe there is a credible basis for such a motion for several reasons, which we have also discussed with you at various points." Scharf Decl. Ex. D. The CFPB official made clear that the Bureau had decided it would not join in any action to modify the judgment.

Despite the consistent refrain of Bureau's concerns, as reflected in the exhibits, Scharf's declaration self-servingly asserts that between the April 1 email and May 1 email "the Bureau provisionally accepted a settlement framework on terms it itself prescribed." Scharf Decl. ¶ 8. The declaration claims that a CFPB official "confirmed by email that high-level settlement terms had been agreed upon and that the Bureau was moving through its internal approval process for the settlement." *Id.* Tellingly, however, the declaration fails to reference a specific email or attach an exhibit. *See id.* And none of the emails attached to CashCall's motion support this statement. *See id.* As noted above, the parties disagreed on multiple issues, ranging from the standard the Court would use to evaluate the motion, to the level of explanation required for modification (such as for post-judgment interest), to the terms, such as the amount of penalty and how redress would be administered. There was thus no agreement that the Bureau "abandoned," *see* Mot. at 20, to support CashCall's equitable-estoppel claim.

---

[12] Mot. at 2 ("Defendants and the Bureau entered into resolution discussions beginning in December 2025 directed at a consent disposition under which (a) the Bureau would retain the $10.3 million penalty already paid…").

[13] *See, e.g.*, Mot. at 2 ("Reducing the amount of the civil penalty from $33M by $10M" (citation omitted)); Scharf Decl. ¶ 7 ("[R]educing the $33 million civil penalty by $10 million"); Scharf Decl. Ex. C ("Reducing the amount of the civil penalty from $33M by $10M.").

*Third*, CashCall has also failed to show that the discussions caused them any harm. *See* *Wong as Tr. of Anaplex Corp. Emp. Stock Ownership Plan v. Flynn-Kerper*, 999 F.3d 1205, 1211 (9th Cir. 2021) ("Equitable estoppel applies… if the party asserting estoppel . . . relied on the other party's conduct to her injury."). Despite initiating the negotiations themselves, CashCall now claims those negotiations were to their detriment because they prevented them "from pursuing alternative avenues of relief that the negotiations were intended to obviate." Mot. at 22. CashCall doesn't identify any such avenue for relief. Nor can they, because as CashCall admits, they have been diligent in "pursu[ing] every available avenue of direct review," even seeking Supreme Court review during the negotiations. *Id*. at 23. CashCall further asserts that because of the negotiations "they maintained at substantial ongoing cost the $175 million-plus supersedeas bond." *Id*. at 21. But CashCall posted that bond to stay execution of the judgment while they appealed and were required to maintain the bond as part of their Joint Stipulation regarding the stay. Dkt. No. 405. If CashCall had failed to maintain that bond, it would have violated this Court's Stay Order.

*Fourth*, equitable estoppel against the government "must rest upon affirmative misconduct." *See, e.g.*, *Morgan v. Heckler*, 779 F.2d 544, 545 (9th Cir. 1985). CashCall cannot satisfy its heavy burden to show that the Bureau engaged in "affirmative misconduct" because there was none. The parties' discussions never resulted in an agreement, and the Bureau merely proceeded with enforcing the judgment that became final.

In yet another assertion without support, CashCall claims that "where the government…that procured a public-interest judgment has disavowed the enforcement theory underlying it, the presumption favoring finality is at its weakest and the 'no longer equitable' inquiry is satisfied…by the Bureau's own published and litigated positions." Mot. at 10. CashCall cites no case, and there is none. As explained above, the Bureau, as part of the Executive Branch, has enforcement discretion, and none of the matters that

CashCall cites involved final judgments. There is no basis for equitable estoppel here.

**2. CashCall does not meet the standard for Rule 60(b)(6) relief**

a) CashCall does not cite, nor meet, the *BLOM Bank* test

Rule 60(b)(6) contains a catchall provision allowing the court to relieve a party from a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Rule 60(b)(5) and (6) are mutually exclusive—Rule 60(b)(6), as a residual catchall, applies only if the other specifically enumerated rules do not. *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 (2025). This 2025 Supreme Court decision—that CashCall does not even cite, let alone apply to these facts—emphasized that Rule 60(b)(6) is reserved for cases that present "extraordinary circumstances" and is a "rigorous standard." *Id*. at 206.

A "very strict interpretation of Rule 60(b) is essential if the finality of judgment is to be preserved." *Id.* at 213 (citing *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)) (additional cite omitted). Courts may consider a wide range of factors in determining whether such circumstances exist, including the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process. *Buck v. Davis*, 580 U.S. 100, 103 (2017). "Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *BLOM*, 605 U.S. at 216 (citing *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship.*, 507 U.S. 380, 393 (1993)).

The Ninth Circuit held "a court's ultimate charge in evaluating a Rule 60(b)(6) motion remains to 'intensively balance' all the relevant factors, 'including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts.'" *Henson v. Fidelity Nat'l Fin., Inc.*, 943 F.3d 434, 446 (9th Cir. 2019) (citing *Phelps v. Alameida*, 569 F.3d 1120, 1133, 1135 (9th Cir. 2009)). CashCall has not met its burden under Rule 60(b)(6), and it cannot.

"[J]ustice" here, "in light of all the facts" is for CashCall to pay the judgment and for consumers who have been harmed to be made whole.

Claiming otherwise, CashCall states that its Rule 60(b)(6) argument does not "rest on any single development." Mot. at 22. Instead CashCall restates its grab bag of grievances and asserts that in "aggregate" they justify Rule 60(b)(6) relief. *Id.* But like their Rule 60(b)(5) arguments, the reasons CashCall asserts here do not satisfy the exacting standard of Rule 60(b)(6).

b) CashCall cannot prevail even under the outdated *Phelps/Henson* Factors

Ignoring the controlling standard for Rule 60(b)(6) motions, CashCall instead refers to the outdated *Phelps/Henson* factors. Mot. at 22-24. But even assuming their relevance here, those cases do not support CashCall's position.

In *Phelps*, the court granted relief from dismissal of a habeas petition when "fifteen months after the petitioner's unsuccessful appeal of the dismissal became final, the Ninth Circuit favorably changed the law on which the petition's dismissal had been predicated." 569 F.3d at 1126-27. In *Henson*, the court analyzed "whether Plaintiffs, equitably, should suffer the consequences of the unfavorable change in law." 943 F.3d at 447. The *Henson* plaintiffs voluntarily dismissed certain claims with prejudice to be able to access appellate review of class-certification denial. *Id.* at 440. The change in the law meant they could not seek appellate review and could not revive voluntarily dismissed claims. *Id.* Their Rule 60(b)(6) motion sought to undo their dismissal with prejudice, because they would not have voluntarily dismissed claims if they knew a future unfavorable change in the law would bar review of their claims. *Id*.

The Rule 60(b)(6) motions in *Phelps* and *Henson* were the only vehicle through which the parties could ask the court to evaluate in the first instance whether the changed law should relieve them of final judgment. CashCall has already had that opportunity, for years in some instances, to ask this court, the Ninth Circuit, and the Supreme Court to

weigh the effect on this case of Supreme Court decisions. Each court CashCall asked for relief already said no. *See supra* Section 1(b)(2). CashCall cannot relitigate the impact of Supreme Court decisions under the guise of a Rule 60(b)(6) motion.

c) *Baus* supports the CFPB's position, not CashCall's

CashCall attempts to rely on *United States v. Baus*, 834 F.2d 1114 (1st Cir. 1987), to support its argument that the Bureau's so-called change in remedial theory and "abandonment of settlement negotiations" warrant Rule 60(b)(6) relief. Mot. at 24. But the *Baus* facts are inapposite and only help the CFPB. The parties in *Baus*—a federal agency and a private company—settled the lawsuit between them, and the court entered judgment against the private party. 834 F.2d at 1115-16. The government then waited seven years to execute its judgment. In response, the private party filed its Rule 60(b)(6) motion alleging that the government had materially breached its own obligations under the stipulation. *Id*. at 1116, 1124. By contrast, the Bureau attempted to enforce the Amended Judgment as soon as it was permitted to do so.[14] Additionally, as is clear from CashCall's own version of the facts, there was no settlement incorporated into the judgment of a court in this matter. And unlike the stipulated judgment in *Baus*, the Amended Judgment does not impose any obligations on the CFPB.

**3. Discovery is inappropriate and immaterial to the outcome of this motion.**

CashCall separately filed a motion seeking leave to conduct discovery to support its Rule 60(b) arguments. Dkt. No. 422. The CFPB will file a motion with the Magistrate

[14] As this Court is aware, CashCall is attempting to interfere with the CFPB's collection of that judgment. After the CFPB demanded turnover of the Pledged Account pursuant to the Joint Stipulation and Stay Order, shortly after the CFPB could legally begin collections, CashCall made a baseless request to the bank to not comply with the CFPB's demand to enforce a final judgment. As a result, the bank filed an interpleader action, which is pending before this Court. *See Merchs. Bank of Indiana v. CFPB*, Compl. in Interpleader, No. 2:26-cv-7259 (C.D. Cal. July 2, 2026) (Dkt. No. 1). Although the CFPB agreed to a waiver of service, the plaintiff in the interpleader has failed to provide a waiver of service form or otherwise serve the Bureau, which appears to be another delay tactic.

Judge to hold that the discovery motion in abeyance until this Court has had an opportunity to conduct at least a preliminary review of CashCall's Rule 60(b) motion and the Bureau's opposition to determine whether the discovery motion should proceed at all.

CashCall acknowledges in their discovery motion that they have no idea whether there is any basis for alleging bad faith as part of their Rule 60(b) arguments. *See* Dkt. No. 422 at 6 (the records CashCall seeks may "confirm, expand upon, or potentially refute those assertions"). Yet, they demand an exhaustive catalog of *internal* government communications from the highest levels of the federal government so they can go fishing for some support. *Id*. at 4; Dkt. Nos. 422-2 (CFPB requests) and 422-3 (OMB requests).

As is this motion, CashCall's motion for discovery is facially insufficient, and discovery should be denied for at least four independent reasons: (1) CashCall does not cite any legal authority that permits post-judgment discovery in this scenario, and undersigned counsel is not aware of any; (2) the documents CashCall is seeking are immaterial to the outcome of this Rule 60(b) motion—even if all the facts CashCall alleged were true, they would not be entitled to relief; (3) every single document CashCall seeks is likely protected by one or more privilege or protection, including executive privilege, such that they would not be entitled to them in any event; and (4) any theoretical benefit of the documents to CashCall's motion is easily outweighed by the burden and expense of collecting, reviewing, privilege logging, and producing these documents. The discovery motion is yet another indefensible effort by CashCall to further delay paying what it owes.

## CONCLUSION

Defendants' motion is legally and factually baseless, and should be denied.

Dated: August 19, 2026

Respectfully submitted,

*/s/ Christina S. Coll*
Christina S. Coll (CA Bar #250712)
Joseph Lake (CA Bar #246679)
Consumer Financial Protection Bureau
445 12th Street, SW
Washington, DC 20024-2101
Telephone: (202) 309-9704
Facsimile: (202) 435-5468

Attorneys for Plaintiff
Consumer Financial Protection Bureau